**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | Case No. 1:21-cv-06546 |
| Plaintiff, | The Honorable John R. Blakely |
| v. | |
| VINTAGE BRAND, LLC, | |
| Defendant. | |

## DEFENDANT VINTAGE BRAND, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE AND FOR A MORE DEFINITE STATEMENT

057538.023 \ 28831329v3

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 2

III. AUTHORITY ....................................................................................................... 3

    A. The University's Failure to Provide Adequate Notice of Its Claims ..................... 4

    B. Other Pleading Deficiencies Supporting Dismissal ................................................ 8

        1. Count I – The University Improperly Pleaded a Claim Under Section 32 of the Lanham Act ...................................................... 8

        2. Count II – The University Improperly Pleaded Counterfeiting Under Section 35 of the Lanham Act ............................... 9

        3. Count III – The University Cannot, and Does Not, Establish the Element of "Fame" to Support a Dilution Claim under Section 43(c) of the Lanham Act ............................................... 10

        4. Count V(a) – The University Lacks Standing to Assert a Claim for Trademark Infringement under Illinois State Law .................. 12

        5. Count V(b) – The University Cannot Maintain a Claim for Dilution under Illinois State Law ............................................. 13

        6. The University has not Pleaded Protectable Trade Dress ......................... 14

    C. Motion to Strike Allegation of a "Family" of Trademarks .................................. 14

    D. Alternative Motion for a More Definite Statement ............................................. 15

IV. CONCLUSION .................................................................................................... 15

057538.023 \ 28831329v3

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Adobe Sys. Inc. v. Software Speedy*,
   2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ........................................................... 6, 7

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*,
   1 F.3d 611 (7th Cir. 1993) ........................................................................................ 13

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*,
   940 F. Supp. 2d 850 (C.D. Ill. 2013) ........................................................................ 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 4, 8, 11

*AstraZeneca AB v. Dr. Reddy's Labs., Inc.*,
   209 F. Supp. 3d 744 (D. Del. 2016) ......................................................................... 10

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) .................................................................................... 11

*Bautista v. Los Angeles Cnty.*,
   216 F.3d 837 (9th Cir. 2000) ..................................................................................... 4

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*,
   550 F. Supp. 2d 657 (W.D. Tex. 2008) .................................................................... 12

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 3, 4

*Best Vacuum, Inc. v. Ian Design, Inc.*,
   2005 WL 1185817 (N.D.Ill. Jan. 18, 2005) .............................................................. 9

*Black & Decker Corp. v. Positec USA Inc.*,
   2015 WL 1543262 (N.D. Ill. Mar. 31, 2015) ........................................................... 11

*Boink Sys., Inc. v. Las Vegas Sands Corp.*,
   2008 WL 11389198 (D. Nev. Dec. 10, 2008) ........................................................... 6

*Chapman v. Yellow Cab Coop.*,
   875 F.3d 846 (7th Cir. 2017) .................................................................................... 15

*Chicago Mercantile Exch. Inc. v. ICE Clear US, Inc.*,
   2020 WL 1905760 (N.D. Ill. Apr. 17, 2020) ........................................................... 10

057538.023 \ 28831329v3

**Cases (cont.)**                                                    **Page(s)**

*Cincinnati Life Ins. Co. v. Beyrer*,
722 F.3d 939 (7th Cir. 2013) ........................................................................ 4

*Coach Servs., Inc. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012) .............................................................. 11, 12

*Coach, Inc. v. Celco Customs Servs. Co.*,
2013 WL 12122691 (C.D. Cal. Jan. 28, 2013) ............................................. 6

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...................................................................................... 9

*Davis v. Anderson*,
718 Fed. Appx. 420 (7th Cir. 2017) ............................................................ 15

*Desmond v. Chicago Boxed Beef Distributors, Inc.*,
921 F. Supp. 2d 872 (N.D. Ill. 2013) .......................................................... 13

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ........................................................................ 3

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) ...................................................................... 11

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*,
393 F.3d 755 (8th Cir. 2005) ...................................................................... 11

*Fair Wind Sailing, Inc. v. Dempster*,
764 F.3d 303 (3d Cir. 2014) ....................................................................... 14

*Forest River, Inc. v. Winnebago Indus., Inc.*,
2017 WL 590245 (N.D. Ind. Feb. 14, 2017) .............................................. 14

*Gucci Am., Inc. v. Guess?, Inc.*,
868 F. Supp. 2d 207 (S.D.N.Y. 2012) ........................................................ 10

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*,
2017 WL 495869 (N.D. Tex. Feb. 7, 2017) ............................................... 11

*J & J Snack Foods Corp. v. McDonald's Corp.*,
932 F.2d 1460 (Fed. Cir. 1991) .................................................................. 14

*Killingsworth v. HSBC Bank Nev., N.A.*,
507 F.3d 614 (7th Cir. 2007) ........................................................................ 4

                                 057538.023 \ 28831329v3

**Cases (cont.)**                                                                                                      **Page(s)**

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997) ........................................................................ 14

*Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*,
   2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ............................................. 6

*Manley v. Boat/U.S., Inc.*,
   75 F. Supp. 3d 848 (N.D. Ill. 2014) ........................................................... 13

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
   642 F. Supp. 2d 1001 (N.D. Cal. 2009) ...................................................... 6

*P.M.F. Servs., Inc. v. Grady*,
   681 F. Supp. 549 (N.D. Ill. 1988) ............................................................... 7

*Plumeus, Inc. v. Intersog LLC*,
   2013 WL 5609331 (N.D. Ill. Oct. 11, 2013) ............................................. 11

*Spraying Sys. Co. v. Delavan, Inc.*,
   975 F.2d 387 (7th Cir. 1992) ..................................................................... 14

*Stanard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ................................................................... 4, 5

*Total Compliance Network, Inc. v. Total Compliance Servs., LLC*,
   2018 WL 4426065 (S.D. Fla. June 8, 2018) .............................................. 12

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
   328 F.3d 374 (7th Cir. 2003) ....................................................................... 5

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
   2019 WL 2208435 (N.D. Ill. May 22, 2019) ......................................... 5, 15

*Valoro, LLC v. Valero Energy Corp.*,
   2014 WL 3920035 (S.D. Fla. Aug. 11, 2014) ............................................. 6

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) ......................................................... 8

*Warner Bros. Entm't Inc. v. Random Tuesday, Inc.*,
   2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ........................................... 6

057538.023 \ 28831329v3

**Cases (cont.)**                                                                            **Page(s)**

*Williams v. Dart,*
    967 F.3d 625 (7th Cir. 2020) .............................................................................. 5

*Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div., Standard Brands Inc.,*
    261 F. Supp. 200 (N.D. Ill. 1966) ...................................................................... 5

*Yeftich v. Navistar, Inc.,*
    722 F.3d 911 (7th Cir. 2013) .............................................................................. 4

**Statutes**

15 U.S.C. § 1114 ....................................................................................................... 2, 8

15 U.S.C. § 1117 ....................................................................................................... 2, 9

15 U.S.C. § 1119 ........................................................................................................... 5

15 U.S.C. § 1125(a) ....................................................................................................... 2

15 U.S.C. § 1125(c) ............................................................................................ 2, 10, 11

15 U.S.C. § 1127 ........................................................................................................... 9

765 ILCS 1036 *et seq.* ............................................................................................. 2, 13

815 ILCS 510 ................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................ Passim

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 3, 4, 15

Fed. R. Civ. P. 12(f) ..................................................................................... 1, 14, 15

Fed. R. Civ. P. 12(e) ........................................................................................... 1, 15

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed., Dec. 2021) ...................................... 11

057538.023 \ 28831329v3

## I.  INTRODUCTION

Defendant Vintage Brand, LLC respectfully requests that the Court dismiss Plaintiff The Board of Trustees of the University of Illinois's Complaint *in toto* for failure to comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure and for failure to state cognizable claims under Rule 12(b)(6) or, in the alternative, to strike certain allegations under Rule 12(f) and to order a more definite statement under Rule 12(e). In short, as written, Vintage Brand is unable to ascertain which alleged marks the University claims are at issue, and what Vintage Brand is alleged to have done. Before this proceeding may continue, that central omission must be addressed.

The University brought this lawsuit to preclude Vintage Brand from selling items decorated with historic public domain artwork copied and enhanced from vintage memorabilia, such as game tickets and brochures. Now that consumers are celebrating such historic designs, the University hopes to secure a monopoly over this burgeoning market by asserting rights long ago expired, abandoned, or never acquired in the first place. Put another way, the University's lawsuit is not intended to "protect the substantial goodwill that the University has developed in its trademarks and trade dress", ECF 1 ¶ 2, but, rather, is an anticompetitive attempt to claim non-existent property rights and punish consumers with grossly overpriced products.

The University's deficient pleading is a symptom of a fundamentally overexpansive understanding of trademark rights.[1] This defective understanding has led to a Complaint that does not withstand the scrutiny imposed by Rules 8 and 12, and the University's failure to allege its claims with sufficient particularity leaves Vintage Brand unable to assess the dispute and properly defend itself. The Court should require that the University allege its grievances against Vintage Brand with the requisite particularity, so the parties may begin on a level playing field.

---

[1] If read literally, the University's Complaint pleads a claim for dilution of the word ILLINOIS.

057538.023 \ 28831329v3

## II.  BACKGROUND

The University initiated this lawsuit on December 7, 2021, bringing claims against Vintage Brand for (i) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) counterfeiting under Section 35 of the Lanham Act, 15 U.S.C. § 1117; (iii) dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iv) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) trademark infringement and dilution under Illinois's Trademark Registration and Protection Act, 765 ILCS 1036 *et seq.*; (vi) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*; and (vii) unfair competition under Illinois common law. ECF 1 ¶¶ 63-124.

Vintage Brand has not answered the Complaint and, if further pleading is required, intends on denying the University's salient allegations and lodging counterclaims for cancellation of the University's pleaded trademark registrations. *See* ECF 19. By way of example, the University alleges that Vintage Brand infringed a design of the University's former mascot, Chief Illiniwek, which is the subject of U.S. Registration No. 2,232,024. ECF 1 ¶ 21. However, as a result of sanctions imposed by the NCAA, the University very publicly abandoned Chief Illiniwek in 2007.[2] Extensive

---

[2] *See, e.g.*, Daniel McClurg, *Locker Room Politics: The Role of Sports Leagues in Shaping (Anti-)social Legislation*, 17 VA. SPORTS & ENT. L.J. 82, 87 (2017) ("[T]he University of Illinois refused to change its mascot from 'Chief Illiniwek' until it was not permitted to host the 2006 NCAA Tennis Championships. Thus, the NCAA policy effectively eliminated the use of discriminatory imagery aimed at Native Americans by its member institutions."); Laura Sigler, *The Saga Continues: The Redskins, Blackhorse, and the Future of Native American Trademarks in Sports*, 62 WAYNE L. REV. 73, 103 (2016) ("Illinois' Chief Illiniwek fell victim to the ban, and he was officially retired in 2007[.]"); Nathaniel T. Noda, *Perpetuating Cultures: What Fan-Based Activities Can Teach Us About Intangible Cultural Property*, 44 CREIGHTON L. REV. 429, 437-38 (2011) ("The NCAA ultimately agreed with the latter group, ruling Chief Illiniwek 'an offensive use of Native American imagery,' and imposed sanctions on the University of Illinois that led to the university's retirement of the mascot."); Adam Epstein & Bridget Niland, *Exploring Ethical Issues and Examples by Using Sport*, 13 ATLANTIC L.J. 19, 44 (2011) ("The University of Illinois at Urbana-Champaign abandoned its use of Chief Illiniwek after the NCAA rejected its 2006 appeal that the mascot was neither hostile nor abusive."); Kristen A. Carpenter et al., *In Defense of Property*, 118 YALE L.J. 1022, 1106 (2009) ("One of the most marked examples was the decision of the University of Illinois to discontinue its use of Chief Illiniwek, the mascot for the Illinois Illini."); Spencer D. Kelly, *What's in A Name: The Controversy Surrounding the NCAA's Ban on College Nicknames and Mascots*,

057538.023 \ 28831329v3

media coverage and public statements from University representatives themselves support the conclusion that this abandonment was actualized and continued for years, while the University disclaimed any association with the Chief Illiniwek symbol.[3] Therefore, among other counterclaims, Vintage Brand intends on asserting a counterclaim for abandonment of the Chief Illiniwek design and fraudulent renewal of the '024 Registration. Should the Complaint survive this motion and once the University's alleged "marks" are defined in the detail required by the Federal Rules, Vintage Brand is confident that discovery will reveal that other rights asserted by the University are likewise problematic.

## III.  AUTHORITY

Federal Rules of Civil Procedure 8 and 12 set the conditions for a sufficient pleading. Rule 8(a)(2) says a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." That is, each claim must be described "in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp v.*

---

5 WILLAMETTE SPORTS L.J. 17, 30 (2008) ("After careful consideration the school decided to retire Chief Illiniwek."); André Douglas Pond Cummings & Seth E. Harper, *Wide Right: Why the NCAA's Policy on the American Indian Mascot Issue Misses the Mark*, 9 U. MD. L.J. RACE, RELIGION, GENDER & CLASS 135, 174 (2009) ("[T]he NCAA required that the university not only retire Chief Illiniwek, but eliminate its logo which contained an elaborate portrait of a Native American chief in feathered headdress within an orange and blue circle.").

3  *See, e.g.*, Craig Chamberlain, *Chief Illiniwek Performs Last Dance Amid Continued Controversy*, ILL. NEWS BUREAU (Mar. 1, 2007), https://perma.cc/4V5V-MKRC (noting that, as a result of a resolution of the University's Board of Trustees, "[t]he university also will discontinue any use of the Chief Illiniwek name, as well as any related Native American imagery"); Sharita Forrest, *Board Takes Final Vote, Retires Chief Illiniwek*, ILL. NEWS BUREAU (Mar. 15, 2007), https://perma.cc/XS89-66H7 ("The names 'Chief Illiniwek' and 'Chief,' and the related logo and regalia will be retired as well."); Sharita Forrest, *UI Retains Trademark Rights to Chief Illiniwek Imagery*, ILL. NEWS BUREAU (Apr. 5, 2007), https://perma.cc/PZQ8-QEF8 (The Chair of the University's Board of Trustee's "announcement of the decision to retire the symbol immediately made the UI eligible to host postseason events, but its continued removal from the sanction list would be provisional upon its not using the name Chief Illiniwek and the related Native American imagery, the NCAA said in a Feb. 15 letter."); Jim Meadows, *UIUC Chancellor: Chief Illiniwek's Retirement is Permanent*, ILL. PUB. RADIO (Feb. 26, 2013), https://perma.cc/3DL6-F9DD (quoting the University's Chancellor: "The symbol of Chief Illiniwek has been part of our past … but it is not coming back").

057538.023 \ 28831329v3

*Twombly*, 550 U.S. 544, 555 (2007)). If a complaint falls short of this requirement, it risks dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A claim satisfies Rule 8(a)(2)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts that show the claim is "plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 8(a)(2) prescribes what a pleading must show: facts establishing a plausible—not merely "conceivable"—entitlement to relief. *Iqbal*, 556 U.S. at 683. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P 8(a)(2)). That means a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, courts may reject sheer speculation, bald assertions, and unsupported conclusory statements. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

A.      **The University's Failure to Provide Adequate Notice of Its Claims**

"The primary purpose of [Rules 8(a) and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citing *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)). The pleading rules are intended to "'frame[] the issue[s] and provide the basis for informed pretrial proceedings.'" *Id*. (quoting *Bautista v. Los Angeles Cnty*., 216 F.3d 837, 841 (9th Cir. 2000)). "If neither the adverse party nor the court can make out the essence of the claims 'dismissal of a complaint on the ground that it is unintelligible is unexceptionable.'" *Cincinnati Life Ins. Co. v.*

*Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). Put another way, "judges and adverse parties need not try to fish a gold coin from a bucket of mud." *Lockheed-Martin Corp.*, 328 F.3d at 378.

In the context of intellectual property infringement litigation, Rule 8(a)(2) requires a plaintiff to identify the property that is the subject of the alleged trespass. *See Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, 2019 WL 2208435, at *4 (N.D. Ill. May 22, 2019). For example, in *Ubiquiti Networks*, the Northern District of Illinois dismissed a plaintiff's copyright infringement claims where the complaint failed to put the defendant on adequate notice of the portions of the allegedly infringed software that were not the subject of open source software licenses. *Id.* The court reasoned that the plaintiff's "acknowledgement that … open source software licenses limit its rights and therefore the scope of its claims … makes the scope of Defendants' allegedly unlawful conduct 'unintelligible,' thereby violating Rule 8(a)(2)." *Id.*

Although it does not appear that a court in the Seventh Circuit has decided whether Rule 8(a)(2) requires identification of all trademarks alleged to have been infringed in a complaint alleging trademark infringement, such a rule is consistent with, and required by, the Seventh Circuit's broader interpretations of Rule 8(a)(2).[4] *See Williams v. Dart*, 967 F.3d 625, 638 (7th Cir. 2020) ("The questions under Federal Rule of Civil Procedure 8(a)(2) are whether the defendant has fair notice of what he must defend himself against and whether there is some reason to believe he could be found liable at the end of the case."); *Stanard*, 658 F.3d at 799 ("To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims

---

[4] Additionally, allowing the University to plead its case without identifying the trademark registrations at issue could affect Vintage Brand's ability to timely interpose counterclaims for cancellation. *See* 15 U.S.C. § 1119; *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div., Standard Brands Inc.*, 261 F. Supp. 200, 208 (N.D. Ill. 1966).

asserted against him."). Indeed, a number of "[o]ther district courts[5] have granted motions to dismiss or motions for a more definite statement when a plaintiff does not identify all marks at issue in the operative complaint." *Warner Bros. Entm't Inc. v. Random Tuesday, Inc.*, 2020 WL 12762735, at *5 (C.D. Cal. Nov. 9, 2020).

The University's attempt at identifying the alleged trademarks at issue in this proceeding violates Rule 8(a)(2). Most significant is the Complaint's prolix definition of the term "Illinois Marks":

> In connection with its educational services, athletic events, and related services, apparel, and merchandise, Illinois has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress ***including, but not limited to***, registered and unregistered marks that comprise ***in whole or in part***, ILLINOIS, Fighting Illini, Illini , , , , , , and  ***each alone, and in combination with the colors orange and blue*** (collectively, ***including the marks also illustrated in Paragraphs __ through __*** (sic) ***the "Illinois Marks"***). Together with the colors orange and blue, the Illinois Marks define a consistent and unique trade dress for the University's products and services.

---

[5] *See, e.g.*, *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014) ("[A] general allegation that Defendants have infringed [Plaintiff's] 'marks' or 'copyrights' is insufficient.... Mr. Harrison is entitled to clear notice of the alleged trademarks or copyrights he is alleged to have infringed[.]"); *Valoro, LLC v. Valero Energy Corp.*, 2014 WL 3920035, at *4-5 (S.D. Fla. Aug. 11, 2014) (finding pleading deficient where "allegations in Valero's Counterclaim ... present a plurality of marks Valero contends it uses, rather than specifying which marks (either registered or unregistered) are infringed"); *Coach, Inc. v. Celco Customs Servs. Co.*, 2013 WL 12122691, at *5 (C.D. Cal. Jan. 28, 2013) (Where "Coach failed to identify the trademarks at issue or describe the allegedly infringing goods[,] [t]he court concluded … that Coach had failed to plead the basic background facts necessary to allege a trademark infringement claim."); *Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012) (holding that plaintiff was required to "identify every trademark which was allegedly infringed"; stating that this requirement "is necessary to provide Defendant with adequate notice" because, where the complaint only identifies some of the allegedly infringed marks, this "leaves Defendant to guess at the others"); *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (requiring the plaintiff "provide a more definite statement … identifying each of its marks, whether registered or unregistered, that have allegedly been infringed."); *Boink Sys., Inc. v. Las Vegas Sands Corp.*, 2008 WL 11389198, at *5 (D. Nev. Dec. 10, 2008) ("Las Vegas Sands must apprise Plaintiffs of the trademarks that are at issue and give more details about how Plaintiffs violated the Lanham Act … in order for Plaintiffs to meaningfully respond to the counterclaim.").

ECF 1 ¶ 15 (emphasis added). This definition is incomprehensible. *First*, the University qualifying this term with the phrase "including, but not limited to" renders the term indefinite and, therefore, incompatible with Rule 8(a)(2) because it does not properly put Vintage Brand on "clear notice of the alleged trademarks … [it] is alleged to have infringed." *Adobe Sys. Inc.*, 2014 WL 7186682, at *6. *Second*, the University's attempt to shoehorn into the definition each of the enumerated words and designs "in whole or in part" is perplexing at best. Read literally, the University is claiming exclusive rights to portions of words (*e.g.*, "ILL" in the text ILLINOIS) and portions of designs (*e.g.*, ). *Third*, the University's claim of rights to the enumerated marks "in combination with the colors orange and blue" does not put Vintage Brand on notice of how any such colors would appear with the alleged marks—there is neither reference to pantone nor shade. *Fourth*, the University incorporates into the already-indefinite definition "the marks also illustrated in Paragraphs __ through __[.]" Vintage Brand is left to guess at the scope of the University's intellectual property at issue in this litigation. The ill-defined term "Illinois Marks" does not allow Vintage Brand to properly respond, nor is it capable of properly guiding discovery or Vintage Brand's pleading of affirmative defenses and counterclaims. *See P.M.F. Servs., Inc. v. Grady*, 681 F. Supp. 549, 550 n.1 (N.D. Ill. 1988) ("Such sloppy pleading and briefing are inexcusable as a matter of courtesy as well as because of their impact on defendants' ability to respond.").

This pleading deficiency goes to the heart of the University's claims. The term "Illinois Marks" appears over 70 times in the Complaint. ECF 1 ¶¶ 15, 22, 26-34, 40, 44, 46-50, 52, 55-62, 69, 70, 73, 75, 78, 79, 82, 86-89, 91, 95, 101, 105, 108, 109, 114, 116, 117, 119 & pp.31-32. And the term is incorporated into the definition of "Infringing Designs," *id*. ¶ 47. which is used roughly 50 times in the Complaint to describe Vintage Brand's purportedly actionable conduct, *id*. ¶¶ 47, 51-62, 75, 76, 80-82, 91, 93, 96-100, 105-07, 112, 115-17, 121 & pp.31-32. Each of the

057538.023 \ 28831329v3

University's claims are premised on either the term "Illinois Marks" or the term "Infringing Designs." *See, e.g.*, *id.* ¶ 70 ("Defendant has marketed, advertised, and sold products incorporating the Illinois Marks …."), ¶ 79 ("Defendant uses in interstate commerce marks that are identical with and/or substantially indistinguishable from the Illinois Marks …."), ¶ 89 ("Defendant's acts constitute dilution by blurring of the University's famous Illinois Marks …."), ¶ 96 ("Defendant uses in interstate commerce the Infringing Designs."), ¶ 105 ("Defendant's use of the Infringing Designs constitutes trademark infringement …."), ¶ 115 ("Defendant has, without consent or authorization from the University, used and continues to use the Infringing Designs …."), ¶ 121 ("Defendant's use of Infringing Designs and the solicitation of customers in competition with the University deprive the University of sales of merchandise or other prospects."). Additionally, the University's requests for relief are premised on these terms. *See id.* at pp.31-32.

The indefinite, kitchen-sink definition of "Illinois Marks" is a quintessential example of an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The University's overextension is inconsistent with Rules 8(a) and 10(b), as well as Rule 11(b). Vintage Brand cannot properly answer the Complaint, lodge counterclaims, conduct an investigation, or participate in discovery when the foundation of the University's factual allegations, claims, and requested relief is an incomprehensible "defined" term.

**B.**     **Other Pleading Deficiencies Supporting Dismissal**

    **1.**     **Count I – The University Improperly Pleaded a Claim Under Section 32 of the Lanham Act**

The University's first claim is one for federal trademark infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). ECF 1 ¶¶ 63-76. "Section 32 of the Lanham Act … expressly protects against infringement of a 'registered mark.'" *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 770 (N.D. Ill. 2008). Absent a federal registration, a cause of "action

under Section 32 of the Lanham Act has no likelihood of success."[6] *Best Vacuum, Inc. v. Ian Design, Inc.*, 2005 WL 1185817, at *2 (N.D.Ill. Jan. 18, 2005). Despite this, by premising Count I on allegations such as "[t]he University owns, has the exclusive right to use, and actively uses the Illinois Marks," ECF 1 ¶ 69, and "Defendant has marketed, advertised, and sold products incorporating the Illinois Marks," *id*. ¶ 70, the University is attempting to state a claim under Section 32(1) of the Lanham Act for infringement of "registered *and unregistered* marks," *id*. ¶ 15 (emphasis added).

## 2. Count II – The University Improperly Pleaded Counterfeiting Under Section 35 of the Lanham Act

The University's second claim is for counterfeiting pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117. ECF 1 ¶¶ 77-84. The statutory elements of a counterfeit claim are as follows:

> (1) a spurious mark which is *identical with*, or substantially indistinguishable from, *a registered mark*, 15 U.S.C. § 1127; (2) that is registered with the U.S. Patent and Trademark Office's principal register for use on *the same goods or services* for which the defendant uses the mark; and (3) the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced.

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc*., 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (emphasis added). Despite the markedly narrow scope of actionable counterfeiting under Section 35 of the Lanham Act, the University alleges in support of its claim that "Defendant uses in interstate commerce marks that are identical with and/or substantially indistinguishable from

---

[6] Many of the pleading deficiencies described in this memorandum give rise to objectively baseless claims. It is not Vintage Brand's responsibility to properly identify the University's rights (or lack thereof). Vintage Brand intends on initiating the Rule 11(c) sanctions mechanism (i) if the Complaint is not voluntarily amended, or (ii) if the Complaint is amended but nonetheless contains similar deficiencies. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (making "clear that the central purpose of Rule 11 is to deter baseless filings in district court").

*the Illinois Marks* in connection with Defendant's promotion and sale of Defendant's apparel *and other goods.*" ECF 1 ¶ 79 (emphasis added).

The University does not attempt to identify the registrations, alleged spurious marks, or precise goods or services necessary to support its counterfeiting claim. At any rate, because a mark must be registered to assert a counterfeiting claim, the University's counterfeiting allegations with respect to its alleged common-law marks fails as a matter of law.

More generally, the Complaint is devoid of facts that would support holding Vintage Brand liable for counterfeiting even one of words or designs alleged to be trademarks. *See id.* ¶ 15. For example, the University does not identify any designs printed by Vintage Brand that only have "minor differences that would not be apparent to the typical consumer." *Chicago Mercantile Exch. Inc. v. ICE Clear US, Inc.*, 2020 WL 1905760, at *20 (N.D. Ill. Apr. 17, 2020) (quoting *AstraZeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 755 (D. Del. 2016)); *see also Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) ("Courts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand."). At minimum, it is unclear and unspoken which, if any, of the alleged marks Vintage Brands supposedly counterfeited, as required by the Federal Rules and the applicable statute. As such, the University has failed to state a counterfeiting claim.

### 3. Count III – The University Cannot, and Does Not, Establish the Element of "Fame" to Support a Dilution Claim under Section 43(c) of the Lanham Act

The University's third claim is for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). ECF 1 ¶ 85-93. To state a valid dilution claim, the University must show (1) that the alleged mark which is the subject of dilution is famous; (2) that Vintage Brand adopted the same alleged mark after it became famous; (3) that Vintage Brand's use of the alleged mark will dilute the University's alleged mark; and (4) Vintage Brand uses the alleged mark in

commerce for commercial purposes. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000).

For purposes of a dilution claim, "a mark is famous if it is widely recognized *by the general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(1) (emphasis added). "It is well-established that dilution fame is difficult to prove." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).[7] To reach the requisite level of fame, a mark must generally be a "household name." *Coach Servs.* 668 F.3d at 1373 (citation omitted). National or even international publicity is not enough. *See Plumeus, Inc. v. Intersog LLC*, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (finding "substantial resources" invested in "numerous national and international marketing campaigns" insufficient to state a plausible claim). Nor are millions of dollars spent on marketing. *See Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 1543262, at *34 (N.D. Ill. Mar. 31, 2015) (finding $150 million spent on promoting trade dress and $20 billion in sales of power tools was insufficient).

Here, the University makes vague, conclusory allegations to establish the supposed fame of its alleged marks. *See, e.g.*, ECF ¶¶ 32, 24, 87. However, it is axiomatic that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678. Indeed, district courts regularly find that such conclusory pleading is inappropriate in the context of pleading a dilution claim. *See, e.g., Hillstone Rest. Grp.,*

---

[7] *See also Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 763 (8th Cir. 2005) ("The judicial consensus is that 'famous' is a rigorous standard."); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) ("To qualify as famous, the asserted mark must have "such powerful consumer associations that even non-competing uses can impinge on their value."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:104 (5th ed., Dec. 2021) ("Under both state and federal antidilution laws, the general rule is that only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws.").

057538.023 \ 28831329v3

*Inc. v. Hillstone Mgmt., LLC*, 2017 WL 495869, at *3 (N.D. Tex. Feb. 7, 2017) ("The court concludes that these allegations are too conclusory to plausibly plead that [the asserted] mark is famous."); *Total Compliance Network, Inc. v. Total Compliance Servs., LLC*, 2018 WL 4426065, at *4 (S.D. Fla. June 8, 2018) ("Although Plaintiff alleges that its mark is 'famous and distinctive,' the count containing the trademark dilution claim is nothing more than a 'formulaic recitation of the elements' supporting this cause of action, which has been held to be insufficient under the pleading standard mandated by Rule 8."). Simply, the Rule 8(a) pleading standard (in addition to Rule 11(b) requirements) precludes the University from showing the requisite level of recognition by the general consuming public.[8]

Additionally, the University has failed to identify which of the ill-defined "Illinois Marks" it is attempting to claim are famous. *See, e.g.*, ECF ¶ 34 ("Many of the Illinois Marks have become famous …."), ¶ 50 ("many of the Illinois Marks had become famous …."), ¶ ("many of the Illinois Marks have become famous"). The Complaint fails to allege any facts specific to any single alleged mark—much less those sufficient to meet the rigorous federal dilution standard. Again, Vintage Brand would have to rely on mere speculation to respond to these allegations, guessing at which of the amorphous package of "Illinois Marks" are supposedly diluted, and which are not.

### 4.    Count V(a) – The University Lacks Standing to Assert a Claim for Trademark Infringement under Illinois State Law

The first portion of the University's fifth cause of action is for trademark infringement under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/60. ECF ¶¶ 104-07.

---

[8]  *See Coach Servs.* 668 F.3d at 1373 (COACH mark not famous despite evidence of use over a period of fifty years, approximately 400 retail stores, between $30 to $60 million in annual advertising expenditures, and sales of approximately $3.5 billion); *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (finding that University of Texas longhorn logo, despite University's millions of dollars in licensing royalties, retail sales of nearly $400 million, and the logo's prominent display during nationally televised sports, had only acquired niche fame).

Illinois state law provides a cause of action for a "registrant" against "uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation *of a mark registered under this Act* …." 765 ILCS 1036/60(a) (emphasis added). Similarly, the TRPA defines "registrant" to mean "the person to whom the registration of a mark is issued *under this Act*[.]" 765 ILCS 1036/5(f) (emphasis added). As the University has not pleaded any registrations issued under the Illinois Trademark Registration and Protection Act, this claim fails as a matter of law. *See Desmond v. Chicago Boxed Beef Distributors, Inc*., 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013) (noting that the plaintiff "satisfie[d] the registration requirement of [765 ILCS 1036/60]" by "alleg[ing] that it filed and obtained Illinois state trademark registrations").

### 5. Count V(b) – The University Cannot Maintain a Claim for Dilution under Illinois State Law

The second portion of the University's fifth cause of action is for trademark dilution under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65. ECF ¶¶ 108-12. First, as described *supra* at Part III.B.3, the University has not pleaded fame beyond conclusory allegations related to the indefinite "Illinois Marks." *See* 765 ILCS 1036/65 (creating a cause of action in favor of "a mark which is famous in this State"). Therefore, this claim is insufficiently pleaded under Rule 8(a).

Second, the University cannot maintain a claim under Illinois's anti-dilution statute because it alleges that the University and Vintage Brand are in competition. *See, e.g.*, ECF ¶¶ 3, 58, 121. It is well-settled that "the protection of the Illinois Anti-Dilution statute is not available to competitors under Illinois case law." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993). Therefore, this claim must be dismissed. *See Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 857 (N.D. Ill. 2014) (dismissing Illinois dilution claim because "the allegations establish[ed] that [the litigants] are competitors").

057538.023 \ 28831329v3

### 6. The University has not Pleaded Protectable Trade Dress

"In trade dress actions, 'it is the plaintiff's duty to articulat[e] the specific elements which comprise its distinctive dress.'" *Forest River, Inc. v. Winnebago Indus., Inc*., 2017 WL 590245, at *2 (N.D. Ind. Feb. 14, 2017) (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014)). "This enhanced burden is meant to avoid exceedingly general claims that seek coverage for something that is unprotectable." *Id.* (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

Here, the University defines its trade dress to be the ill-defined Illinois Marks "[t]ogether with the colors orange and blue[.]" ECF ¶ 15. However, "'[i]t will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list.'" *Forest River, Inc.*, 2017 WL 590245, at *2. Therefore, to the extent the University's claims are for trade dress infringement, they are insufficiently pleaded and subject to dismissal.

### C. Motion to Strike Allegation of a "Family" of Trademarks

The Complaint makes reference to "a family of trademarks." ECF ¶ 15. "A family of marks is a group of marks having a *recognizable common characteristic*, wherein the marks are comprised and used in such a way that the consuming public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991) (emphasis added); *see also Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 395 (7th Cir. 1992) ("A number of cases have explained that possession of several marks with a common suffix, prefix or syllable can give rise to a protected 'family' of marks; the common element is the family 'surname.'").

The enumerated Illinois Marks do not constitute a family of trademarks because they do not share a common characteristic. *See* ECF ¶ 15. Further, the University does not allege that the

14

consuming public associates the (non-existent) common characteristic with solely the University. Therefore, Vintage Brand respectfully requests that the Court strike this allegation as immaterial and irrelevant pursuant to Rule 12(f).

**D.     Alternative Motion for a More Definite Statement**

As described above, the University's pleading—in particular, the term "Illinois Marks"—does not "lay out details that enable [Vintage Brand] to respond intelligently and the court to handle the litigation effectively." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 849 (7th Cir. 2017). Therefore, if Vintage Brand's Motion to Dismiss is not granted, Vintage Brand respectfully requests that the Court order a more definite statement pursuant to Rule 12(e). However, Vintage Brand notes that, in the context of failure to comply with Rule 8(a), "it's usually preferable to require repleading rather than ordering a more definite statement so that a plaintiff's allegations are not split between the complaint and the more definite statement." *Davis v. Anderson*, 718 Fed. Appx. 420, 424 (7th Cir. 2017); *see also Ubiquiti Networks, Inc.*, 2019 WL 2208435, at *4.

## IV.  CONCLUSION

For the foregoing reasons, Vintage Brand respectfully requests that the Court dismiss the University's Complaint *in toto* for its failure to comply with Rules 8(a) and 10(b) and for its failure to state cognizable claims under Rule 12(b)(6) or, in the alternative, to strike the allegations related to the University's "family" of alleged marks under Rule 12(f) and order a more definite statement under Rule 12(e). If this motion is granted, Vintage Brand respectfully requests that the Court deem this case exceptional under 15 U.S.C. § 1117(a) and award Vintage Brand its fees and costs.

\\

\\

\\

057538.023 \ 28831329v3

DATED this 24th day of January, 2022.

/s/ Theresa H. Wang
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Email: theresa.wang@stokeslaw.com
Email: joshua.harms@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP
122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
Email: rboonstra@htlaw.com
Email: tpostma@htlaw.com

*Attorneys for Defendant Vintage Brand, LLC*

057538.023 \ 28831329v3