**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

                    Plaintiff,

     v.

VINTAGE BRAND, LLC,

                    Defendant.

Case No. 1:21-cv-06546

The Honorable John R. Blakely

## <u>DEFENDANT VINTAGE BRAND, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN PART AND TO STRIKE</u>

057538.023 \ 103029766v2

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ................................................................................................... 1

III. AUTHORITY ..................................................................................................... 4

    A.     The University's Failure to Adequately Plead Protectable Trade Dress ................ 4

    B.     The University Improperly Pleaded a Claim for Infringement Under Section 32(1) of the Lanham Act on the Basis of Unregistered Trade Dress .............................................................................................................. 9

    C.     The University Cannot, and Does Not, Adequately Plead the Element of "Fame" to Support a Dilution Claim under Section 43(c) of the Lanham Act ........................................................................................................ 10

    D.     The University Cannot Maintain a Claim for Trademark Infringement Under Illinois State Law .................................................................................. 13

    E.     Motion to Strike Allegations of "Fame" in Connection with Illinois State Law .................................................................................................................. 14

    F.     Motion to Strike Allegations of a "Family" of Trademarks ................................ 14

IV. CONCLUSION .................................................................................................... 15

057538.023 \ 103029766v2

## **TABLE OF AUTHORITIES**

**Cases**                                                                         **Page(s)**

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
   280 F.3d 619 (6th Cir. 2002) ................................................................. 5

*Adobe Sys. Inc. v. Software Speedy*,
   2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ......................................... 7

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
   311 F.3d 796 (7th Cir. 2002) ......................................................... 5, 6, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 4

*Best Vacuum, Inc. v. Ian Design, Inc.*,
   2005 WL 1185817 (N.D.Ill. Jan. 18, 2005) .......................................... 10

*Black & Decker Corp. v. Positec USA Inc.*,
   2015 WL 1543262 (N.D. Ill. Mar. 31, 2015) ........................................ 11

*Boink Sys., Inc. v. Las Vegas Sands Corp.*,
   2008 WL 11389198 (D. Nev. Dec. 10, 2008) ......................................... 7

*Cincinnati Life Ins. Co. v. Beyrer*,
   722 F.3d 939 (7th Cir. 2013) ............................................................... 4

*Coach Servs., Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ..................................................... 10, 11

*Coach, Inc. v. Celco Customs Servs. Co.*,
   2013 WL 12122691 (C.D. Cal. Jan. 28, 2013) ....................................... 7

*Desmond v. Chicago Boxed Beef Distributors, Inc.*,
   921 F. Supp. 2d 872 (N.D. Ill. 2013) .................................................. 13

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
   233 F.3d 456 (7th Cir. 2000) .............................................................. 10

*Fair Wind Sailing, Inc. v. Dempster*,
   764 F.3d 303 (3d Cir. 2014) ............................................................. 5, 9

057538.023 \ 103029766v2

**Cases** (cont.)                                                                                          **Page(s)**

*Forest River, Inc. v. Winnebago Indus., Inc.*,
 2017 WL 590245 (N.D. Ind. Feb. 14, 2017) ................................................................. 5

*H-D U.S.A., LLC v. Affliction Holdings, LLC*,
 2020 WL 5913850 (C.D. Cal. June 8, 2020) ............................................................... 13

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*,
 883 F.2d 1286 (7th Cir. 1989) ................................................................................... 14

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*,
 2017 WL 495869 (N.D. Tex. Feb. 7, 2017) ............................................................... 12

*J & J Snack Foods Corp. v. McDonald's Corp.*,
 932 F.2d 1460 (Fed. Cir. 1991) ................................................................................. 15

*Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*,
 667 F. Supp. 1221 (N.D. Ill. 1987) .......................................................................... 6, 8

*Killingsworth v. HSBC Bank Nev., N.A.*,
 507 F.3d 614 (7th Cir. 2007) ...................................................................................... 4

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
 113 F.3d 373 (2d Cir. 1997) .................................................................................... 5, 6

*Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*,
 703 F. Supp. 2d 777 (N.D. Ill. 2010) ........................................................................ 15

*Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*,
 2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ........................................................... 7

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
 703 F. Supp. 2d 671 (W.D. Ky. 2010)...................................................................... 10

*Manley v. Boat/U.S., Inc.*,
 75 F. Supp. 3d 848 (N.D. Ill. 2014) .......................................................................... 14

*McCauley v. City of Chicago*,
 671 F.3d 611 (7th Cir. 2011) ...................................................................................... 4

*Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*,
 845 F. Supp. 2d 1241 (M.D. Fla. 2012)...................................................................... 7

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
 642 F. Supp. 2d 1001 (N.D. Cal. 2009)...................................................................... 7

                                              057538.023 \ 103029766v2

**Cases** (cont.)                                                                                     **Page(s)**

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
  2009 WL 3570387 (S.D. Tex. Oct. 30, 2009) ........................................................ 13

*Nike, Inc. v. Nikepal Int'l, Inc.*,
  2007 WL 2782030 (E.D. Cal. Sept. 18, 2007) ...................................................... 11

*P.M.F. Servs., Inc. v. Grady*,
  681 F. Supp. 549 (N.D. Ill. 1988) ......................................................................... 7

*Pepsico, Inc. v. #1 Wholesale, LLC*,
  2007 WL 2142294 (N.D. Ga. July 20, 2007) ....................................................... 11

*Plumeus, Inc. v. Intersog LLC*,
  2013 WL 5609331 (N.D. Ill. Oct. 11, 2013) ........................................................ 11

*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004) ................................................................................ 11

*Spraying Sys. Co. v. Delavan, Inc.*,
  975 F.2d 387 (7th Cir. 1992) ............................................................................... 15

*Stanard v. Nygren*,
  658 F.3d 792 (7th Cir. 2011) ................................................................................. 4

*Total Compliance Network, Inc. v. Total Compliance Servs., LLC*,
  2018 WL 4426065 (S.D. Fla. June 8, 2018) ........................................................ 12

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) ................................................................................. 4

*Univ. of Texas at Austin v. KST Elec., Ltd.*,
  550 F. Supp. 2d 657 (W.D. Tex. 2008) ............................................................... 12

*Valoro, LLC v. Valero Energy Corp.*,
  2014 WL 3920035 (S.D. Fla. Aug. 11, 2014) ....................................................... 7

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) .................................................................. 10

*Yeftich v. Navistar, Inc.*,
  722 F.3d 911 (7th Cir. 2013) ................................................................................. 4

057538.023 \ 103029766v2

**Statutes**                                                    **Page(s)**

15 U.S.C. § 1114 ................................................................................................... 2, 9

15 U.S.C. § 1117 ...................................................................................................... 2

15 U.S.C. § 1125(a) .................................................................................................. 2

15 U.S.C. § 1125(c) ...................................................................................... 2, 10, 12

765 ILCS 1036 ......................................................................................................... 2

765 ILCS 1036/5(f) ................................................................................................ 13

765 ILCS 1036/60 ............................................................................................. 3, 13

765 ILCS 1036/65 ............................................................................................. 3, 14

815 ILCS 510 ........................................................................................................... 2

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................... 1, 3, 4, 13

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 3, 4, 7, 14

Fed. R. Civ. P. 12(f) .................................................................................... 1, 14, 15

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed., Feb. 2022) ...................... 5, 10

057538.023 \ 103029766v2

## I.  INTRODUCTION

Defendant Vintage Brand, LLC respectfully requests that the Court dismiss portions of The Board of Trustees of the University of Illinois's First Amended Complaint under Rules 8(a), 10(b) and 12(b)(6) of the Federal Rules of Civil Procedure and strike certain allegations under Rule 12(f). In short, among other deficiencies, the University attempts to claim exclusive "trade dress" rights over an indefinite combination of colors, words, and designs applied to an unlimited scope of goods and services. Such a trade dress claim is precluded by the law not only because it fails to put Vintage Brand on sufficient notice, but also because it amounts to a claim for a monopoly on an amorphous grouping of various colors and words. Such anticompetitive goals are contrary to the scope and purpose of the Lanham Act.

The University brought this lawsuit to preclude Vintage Brand from selling items decorated with historic public domain artwork scanned and enhanced from vintage memorabilia, such as game tickets and brochures. Now that consumers are interested such historic designs, the University hopes to secure a monopoly over this burgeoning market by asserting rights that are expired, abandoned, or never even acquired in the first place. Put another way, the University's lawsuit is not intended to "protect the substantial goodwill that the University has developed in its trademarks and trade dress," ECF 25 ("FAC") ¶ 2, but, rather, is an anticompetitive attempt to claim non-existent property rights.

## II.  BACKGROUND

The University initiated this lawsuit against Vintage Brand on December 7, 2021, arising out of the University's purported trademark rights. ECF 1 ("Compl."). Vintage Brand moved to dismiss the University's original Complaint. ECF 20. Rather than stand by its claims, the University filed its First Amended Complaint, ECF 25, on February 9, 2022, attempting to remedy the deficiencies in the original Complaint. However, the FAC is still rife with insufficient pleading,

057538.023 \ 103029766v2

claims that fail as a matter of law, and irrelevant material.

The FAC appears[1] to assert seven causes of action: (i) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) counterfeiting under Section 35 of the Lanham Act, 15 U.S.C. § 1117; (iii) dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iv) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) trademark infringement under Illinois's Trademark Registration and Protection Act, 765 ILCS 1036 *et seq.*; (vi) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*; and (vii) unfair competition under Illinois common law. FAC ¶¶ 65-127.

Vintage Brand has not answered the FAC. If further pleading is required, Vintage Brand intends on denying the University's salient allegations and lodging counterclaims for cancellation of the University's pleaded trademark registrations. *See* ECF 19. By way of example, the University alleges that Vintage Brand infringed a design of the University's former mascot, Chief Illiniwek, which is the subject of U.S. Registration No. 2,232,024. FAC ¶ 21. However, as a result of pressure from the public and sanctions imposed by the NCAA, the University very publicly abandoned Chief Illiniwek in 2007.[2] Extensive media coverage and public statements from

---

[1] The University may be attempting to allege dilution under Illinois law. *See* Part III.E, *infra*.

[2] *See, e.g.*, Daniel McClurg, *Locker Room Politics: The Role of Sports Leagues in Shaping (Anti-)social Legislation*, 17 VA. SPORTS & ENT. L.J. 82, 87 (2017) ("[T]he University of Illinois refused to change its mascot from 'Chief Illiniwek' until it was not permitted to host the 2006 NCAA Tennis Championships. Thus, the NCAA policy effectively eliminated the use of discriminatory imagery aimed at Native Americans by its member institutions."); Laura Sigler, *The Saga Continues: The Redskins, Blackhorse, and the Future of Native American Trademarks in Sports*, 62 WAYNE L. REV. 73, 103 (2016) ("Illinois' Chief Illiniwek fell victim to the ban, and he was officially retired in 2007[.]"); Nathaniel T. Noda, *Perpetuating Cultures: What Fan-Based Activities Can Teach Us About Intangible Cultural Property*, 44 CREIGHTON L. REV. 429, 437-38 (2011) ("The NCAA ultimately agreed with the latter group, ruling Chief Illiniwek 'an offensive use of Native American imagery,' and imposed sanctions on the University of Illinois that led to the university's retirement of the mascot."); Adam Epstein & Bridget Niland, *Exploring Ethical Issues and Examples by Using Sport*, 13 ATLANTIC L.J. 19, 44 (2011) ("The University of Illinois at Urbana-Champaign abandoned its use of Chief Illiniwek after the NCAA rejected its 2006 appeal that the mascot was neither hostile nor abusive."); Kristen A. Carpenter et al.*, In Defense of Property*, 118 YALE L.J. 1022, 1106 (2009) ("One of the most marked examples was the decision of the University of Illinois to discontinue its use of Chief Illiniwek, the mascot for the Illinois Illini."); Spencer D. Kelly, *What's in A Name: The Controversy Surrounding the NCAA's Ban on College Nicknames and Mascots*, 5 WILLAMETTE SPORTS L.J. 17, 30 (2008) ("After careful consideration the school decided to retire Chief Illiniwek."); André Douglas Pond Cummings & Seth E. Harper, *Wide Right: Why the NCAA's Policy on the American Indian Mascot Issue Misses the Mark*, 9 U. MD. L.J.

057538.023 \ 103029766v2

University representatives themselves support the conclusion that this abandonment was actualized and continued for years, while the University disclaimed any association with the Chief Illiniwek symbol.[3] Therefore, among other counterclaims, Vintage Brand intends on asserting a counterclaim for abandonment of the Chief Illiniwek design and fraudulent renewal of the '024 Registration.

Numerous claims and allegations contained in the FAC fall well below the pleading standards embodied by Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure: (1) the University's first cause of action for trademark infringement under Section 32(1) of the Lanham Act and sixth cause of action for common law unfair competition are based in part on the University's unprotectable alleged trade dress; (2) the University's third cause of action for dilution under Section 43(d) of the Lanham Act relies on vague allegations of fame that are insufficient on their face, limited to a niche market, and generic to the University itself; (3) the University's fifth cause of action under 765 ILCS 1036/60 fails because the University does not own an Illinois trademark registration; (4) the University makes allegations in support of a dilution claim under 765 ILCS 1036/65 despite withdrawing that claim; and (5) allegations related to a "family" of marks are legally unsound and immaterial to the University's claims.

---

RACE, RELIGION, GENDER & CLASS 135, 174 (2009) ("[T]he NCAA required that the university not only retire Chief Illiniwek, but eliminate its logo which contained an elaborate portrait of a Native American chief in feathered headdress within an orange and blue circle.").

[3] *See, e.g.*, Craig Chamberlain, *Chief Illiniwek Performs Last Dance Amid Continued Controversy*, ILL. NEWS BUREAU (Mar. 1, 2007), https://perma.cc/4V5V-MKRC (noting that, as a result of a resolution of the University's Board of Trustees, "[t]he university also will discontinue any use of the Chief Illiniwek name, as well as any related Native American imagery"); Sharita Forrest, *Board Takes Final Vote, Retires Chief Illiniwek*, ILL. NEWS BUREAU (Mar. 15, 2007), https://perma.cc/XS89-66H7 ("The names 'Chief Illiniwek' and 'Chief,' and the related logo and regalia will be retired as well."); Sharita Forrest, *UI Retains Trademark Rights to Chief Illiniwek Imagery*, ILL. NEWS BUREAU (Apr. 5, 2007), https://perma.cc/PZQ8-QEF8 (The Chair of the University's Board of Trustee's "announcement of the decision to retire the symbol immediately made the UI eligible to host postseason events, but its continued removal from the sanction list would be provisional upon its not using the name Chief Illiniwek and the related Native American imagery, the NCAA said in a Feb. 15 letter."); Jim Meadows, *UIUC Chancellor: Chief Illiniwek's Retirement is Permanent*, ILL. PUB. RADIO (Feb. 26, 2013), https://perma.cc/3DL6-F9DD (quoting the University's Chancellor: "The symbol of Chief Illiniwek has been part of our past … but it is not coming back").

057538.023 \ 103029766v2

### III.  AUTHORITY

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a pleading must set forth a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading is to be construed "in the light most favorable" to the nonmovant, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc*., 722 F.3d 911, 915 (7th Cir. 2013) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

Federal Rule of Civil Procedure 8(a)(2) prescribes what a pleading must show: facts establishing a plausible—not merely "conceivable"—entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). "The primary purpose of [Rule 8(a)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citing *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)). "If neither the adverse party nor the court can make out the essence of the claims 'dismissal of a complaint on the ground that it is unintelligible is unexceptionable.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

Vintage Brand respectfully requests that the Court dismiss the claims arising from unprotectable trade dress, dismiss the claim for federal dilution, dismiss or strike allegations related to the claim for state law dilution, dismiss the state law infringement claim, and strike allegations related to a "family" of marks. As the University's amendment failed to remedy the deficiencies discussed in Vintage Brand's prior Motion to Dismiss, ECF 20, the requested dismissals should be *with prejudice*.

### A.      **The University's Failure to Adequately Plead Protectable Trade Dress**

"All types of intellectual property, including unregistered trade dress, must have clearly

057538.023 \ 103029766v2

defined boundaries of what is alleged to be the zone of exclusive rights." McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed., Feb. 2022) ("McCarthy"). Vague and imprecise pleading in the context of trade dress actions "is unfair to the party accused of infringement who is forced to defend against an amorphous claim of exclusivity which is of uncertain and indeterminate dimensions. *The law of trade dress should not be used as an anti-competitive weapon based upon undefined claims of 'trade dress.'" Id*. (emphasis added).

To that end, courts impose an "enhanced burden" on plaintiffs alleging trade dress claims, which "is meant to avoid exceedingly general claims that seek coverage for something that is unprotectable." *Forest River, Inc. v. Winnebago Indus., Inc*., 2017 WL 590245, at *2 (N.D. Ind. Feb. 14, 2017) (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)). To comply with the enhanced pleading standard, a plaintiff must "articulat[e] the specific elements which comprise its distinctive dress.'" *Id*. (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014)). It is insufficient to simply identify "a combination as 'the trade dress.'" *Id*. (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002)). To survive dismissal, "the discrete elements which make up that combination should be separated out and identified in a list." *Id*.; *see also* McCarthy § 8:3 ("All courts agree that the elements of the alleged trade dress must be clearly listed and described.").

Although a product line with a "consistent overall look" may be protectable in exceptional circumstances, "courts consider these broader … claims with an 'acute' concern for protecting competition given that any remedy could potentially cover a wide range of products." *AM Gen. Corp. v. DaimlerChrysler Corp*., 311 F.3d 796, 815 (7th Cir. 2002). The Second Circuit has counseled against the casual acceptance of broad, ill-defined trade dress claims:

> [F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.… Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, *i.e.*, the claimant seeks protection for an unprotectable style, theme or idea.

*Landscape Forms*, 113 F.3d at 381 (2d Cir. 1997) (quoted in part with approval by *AM Gen. Corp.*, 311 F.3d at 815 n.6).

Even if a plaintiff can meet its burden to precisely define design elements for a product line, it must also show the foundational requirement of a "consistent overall look." *AM Gen. Corp.*, 311 F.3d at 814. Put another way, trade dress must have "a specifically defined, color-definite, and *stable* visual appearance[.]" *Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*, 667 F. Supp. 1221, 1229 (N.D. Ill. 1987) (emphasis in original).

The University's attempt at pleading protectable trade dress is founded on a startlingly imprecise, completely amorphous definition of the term "Illinois Family[4] of Marks":

> In connection with its educational services, athletic events, and related services, apparel, and merchandise, the University has adopted, makes extensive use of, and owns rights in and to a family of trademarks **and trade dress** including, **but not limited to**, registered and unregistered marks that comprise **in whole or in part**, ILLINOIS, Fighting Illini, Illini , each alone, and in combination with the colors **orange and blue** (collectively the "Illinois Family of Marks").

FAC ¶ 15.

This "definition" is a quintessential example of insufficiently pleaded trade dress—it fails to give Vintage Brand even the slightest possible notice of what the University alleges to be within

---

[4] As discussed *infra*, at Part III.F, the Court should strike the improper allegations of a "family" of trademarks.

its zone of exclusive rights. *First*, the University qualifying this term with the phrase "including, but not limited to" renders the term indefinite. *See Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241 (M.D. Fla. 2012) ("The disclosure of some features is not enough to satisfy an analysis which requires the Court to look at an asserted trade dress as a whole.").[5] *Second*, the University's attempt to shoehorn into the definition each of the enumerated words and designs "in whole or in part" is perplexing at best. Read literally, the University is alleging that portions of words (*e.g.*, "ILL" in the text ILLINOIS) and portions of designs (*e.g.*, 'II' ) are included in its protectable trade dress. *Third*, the University's claim of rights to the trade dress include "the colors orange and blue." This does not put Vintage Brand on notice of how any such colors would appear with the alleged marks—there is neither reference to pantone nor shade, nor is it clear if the entire article, or just a portion thereof, would be orange, blue, or both. *Fourth*, the University's alleged trade dress extends to "educational services, athletic events, and related services, apparel, and merchandise." This fails to put Vintage Brand on notice of the scope of University's trade dress. Simply, this "defined" term prevents Vintage Brand from properly responding to the FAC. *See P.M.F. Servs., Inc. v. Grady*, 681 F. Supp. 549, 550 n.1 (N.D. Ill. 1988) ("Such sloppy pleading and briefing are inexcusable as a matter of courtesy as well as because of their impact on defendants' ability to respond.").

The University's other sporadic references to the trade dress only underscore the

---

[5] In the analogous context of trademark infringement, courts regularly hold that a failure to identify all marks at issue is a violation of Rule 8(a). *See, e.g.*, *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014) ("[Defendant] is entitled to clear notice of the alleged trademarks or copyrights he is alleged to have infringed[.]"); *Valoro, LLC v. Valero Energy Corp.*, 2014 WL 3920035, at *4-5 (S.D. Fla. Aug. 11, 2014) (finding pleading deficient where "allegations in Valero's Counterclaim ... present a plurality of marks Valero contends it uses, rather than specifying which marks (either registered or unregistered) are infringed"); *Coach, Inc. v. Celco Customs Servs. Co.*, 2013 WL 12122691, at *5 (C.D. Cal. Jan. 28, 2013); *Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012) (holding that plaintiff was required to "identify every trademark which was allegedly infringed"); *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009); *Boink Sys., Inc. v. Las Vegas Sands Corp.*, 2008 WL 11389198, at *5 (D. Nev. Dec. 10, 2008).

fundamental issues with this claim. For example, at Paragraph 22 of the FAC, the University provides examples of a number of items it (or its licensees) allegedly offer for sale. But the University again fumbles its attempt to coherently define the alleged trade dress:

> As illustrated by the items above, the ***Illinois Family of Marks***, coupled with the colors ***orange and blue in the shades depicted herein***, as well as the name of the University of Illinois coupled with the colors orange and blue in the shades depicted herein, comprise a distinctive and unique trade dress ***associated with the University's products and services***.

 FAC ¶ 22 (emphasis added). This apparent attempt at refining the alleged trade dress fails because it incorporates (and even complicates) the ill-defined "Illinois Family of Marks." For example, it notes that the trade dress includes "the colors orange and blue in the shades depicted herein." However, the items shown in Paragraph 22 appears in numerous shades of each color:



*Shades of blue appearing on items in Paragraph 22*

*Shades of orange appearing on items in Paragraph 22*

It appears that the University is claiming as its trade dress any shade of orange or any shade of blue used in connection with one or more of an indefinite number of words or designs. "As this case stands, plaintiff's claimed trade dress does not have a concrete, color-definite appearance." *Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp.*, 667 F. Supp. at 1229. Further, like the "definition" contained in "Illinois Familty of Marks," Paragraph 22 indicates that the University's supposed rights extend to undefined "products and services."

As described by the FAC, the University's purported trade dress does not have a "consistent overall look." This is illustrated by Paragraph 23, in which the University purports to show t-shirts bearing the abandoned Chief Illiniwek image that, the University contends, fall within the scope

of the alleged trade dress. However, these shirts do not have a consistent overall look with, for example, shirts shown in Paragraph 22:



Shirts shown in paragraph 22                    Shirts shown in Paragraph 23

FAC ¶¶ 22-23. Indeed, in applying the ill-defined term "Illinois Family of Marks," the University is claiming trade dress rights in an indefinite number of words and designs ("each alone, and in combination with the colors orange and blue") encompassing an indefinite universe of "services, apparel, and merchandise[.]" FAC ¶ 15; *see also Fair Wind Sailing*, 764 F.3d at 310 ("Because [Plaintiff] has failed to give Defendants adequate notice of what overall look it wishes to protect, its trade dress claim cannot survive Defendants' motion to dismiss."). This is not protectable trade dress over a product line with a "consistent overall look"; it is an attempt at a monopoly over some unknowable combination of colors, words and designs.

Vintage Brand previously moved to dismiss the claims arising from the University's purported trade dress. *See* ECF 20 at Part III.B.6. Despite being on notice of its inadequate pleading, the University nonetheless reasserted its "trade dress" in support of its claim for infringement under Section 32 of the Lanham Act, FAC ¶¶ 65-80, as well as its claim for violation of Illinois' Uniform Deceptive Trade Practices Act, *id*. ¶¶ 116-22. The Court should dismiss these two claims to the extent they arise from the University's trade dress *with prejudice*.

**B.**  **The University Improperly Pleaded a Claim for Infringement Under Section 32(1) of the Lanham Act on the Basis of Unregistered Trade Dress**

The University's first claim is for federal trademark infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). FAC ¶¶ 65-80. "Section 32 of the Lanham Act …

expressly protects against infringement of a 'registered mark.'" *Vulcan Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 770 (N.D. Ill. 2008). Absent a federal registration, a cause of "action under Section 32 of the Lanham Act has no likelihood of success."[6] *Best Vacuum, Inc. v. Ian Design, Inc.*, 2005 WL 1185817, at *2 (N.D.Ill. Jan. 18, 2005). The University has not pleaded a registration for its supposed trade dress. Despite this, the University's claim for trademark infringement under Section 32(1) of the Lanham Act is premised in part on what appears to be unregistered (and unprotectable) trade dress. *See* FAC ¶¶ 71-73, 77, 79.

**C.** **The University Cannot, and Does Not, Adequately Plead the Element of "Fame" to Support a Dilution Claim under Section 43(c) of the Lanham Act**

The University's third claim is for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). FAC ¶¶ 89-97. To state a valid dilution claim, the University must show (1) that the alleged mark is famous; (2) that Vintage Brand adopted the same alleged mark after it became famous; (3) that Vintage Brand's use of the alleged mark will dilute the University's rights; and (4) Vintage Brand uses the alleged mark in commerce. *Eli Lilly & Co. v. Nat. Answers, Inc*., 233 F.3d 456, 466 (7th Cir. 2000).

For purposes of a federal dilution claim, "a mark is famous if it is widely recognized by *the general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(1) (emphasis added). "Congress intended for dilution to apply only to a small category of extremely strong marks." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc*., 703 F. Supp. 2d 671, 698 (W.D. Ky. 2010). Indeed, "[i]t is well-established that dilution fame is difficult to prove." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012); *see also* McCarthy § 24:104 ("[T]he general rule is that

---

[6] When previously discussing the University's attempt to rely on unregistered rights in its Section 32 claim, Vintage Brand made clear that it "intend[ed] on initiating the Rule 11(c) sanctions mechanism … if the Complaint is amended but nonetheless contains similar deficiencies." ECF 20 at 9 n.6.

057538.023 \ 103029766v2

only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws."). Where possible, the issue of fame should be resolved at the onset of a case. *See Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004) ("[W]here it is possible for a district court to determine in the first instance the issue of the famousness of a senior mark, the court would be well advised to do so.").

To reach the requisite level of fame, a mark must be a "household name." *Coach Servs.* 668 F.3d at 1373. For example, trademarks such as NIKE[7] or PEPSI[8] qualify for such extraordinary protection. But even hundreds of millions in revenue/marketing and national or even international publicity might not be enough. *See, e.g.*, *Coach Servs.* 668 F.3d at 1374-75 (COACH mark not famous despite annual sales exceeding $500 million); *Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 1543262, at *34 (N.D. Ill. Mar. 31, 2015) ($150 million spent on promoting trade dress and $20 billion in sales of power tools insufficient); *Plumeus, Inc. v. Intersog LLC*, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (dismissing despite "substantial resources" invested in " numerous national and international marketing campaigns").

Here, the University does not provide sales or marketing numbers—a telling sign they would not support fame. Rather, the University makes vague allegations to establish the supposed fame of its alleged marks. For example, the University asserts it "has earned a reputation as a world-class leader in research," FAC ¶ 12, that its "21 Division I men's and women's sports teams are admired by fans all over the United States and around the world," *id*. ¶ 13, and that it "participates in collegiate athletic competition at the very highest level," *id*. ¶ 14.

Despite this evidence not supporting even a scant possibility that, for example, the alleged

---

[7] *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030, at *5 (E.D. Cal. Sept. 18, 2007).
[8] *Pepsico, Inc. v. #1 Wholesale, LLC*, 2007 WL 2142294, at *4 (N.D. Ga. July 20, 2007).

057538.023 \ 103029766v2

design **ILLINOIS** is a recognized household brand, the University's federal dilution claim also fails as a matter of law because the allegations at best show "niche" market fame and do not—and cannot—give rise to fame in the "general consuming public." 15 U.S.C. § 1125(c)(1). In a well-reasoned decision, another federal court explained why evidence in the same vein—but even stronger than the University's allegations here—failed to create an issue of fact in support of a federal dilution claim. *See Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 673-79 (W.D. Tex. 2008). There, the University of Texas ("UT") presented powerful evidence, such as: UT held the record for most licensing royalties earned in a single year; sales of UT products at retail stores totaled nearly $400 million per year; and UT athletic games are regularly nationally televised. *Id.* at 676-78. The court nonetheless reasoned that the evidence was, as a matter of law, insufficient to show recognition beyond a niche market—*i.e.*, fans of collegiate athletics. *Id.* at 678. Here too, the University's allegations at best show recognition in connection with education and some athletic programs. Indeed, the University concedes that its allegations are limited to a niche market: "Consistent with the background discussed in paragraphs 12 through 15 above, *students, prospective students, and sports fans* all immediately identify the Illinois Marks as associated uniquely with the University of Illinois." *Id.* ¶ 35 (emphasis added).

Other than vague allegations relating to niche markets, the University's pleading consists of conclusory allegations. *See, e.g.*, ¶¶ 51, 64, 91, 93. District courts regularly find that such pleading is inappropriate in the context of establishing fame for a dilution claim. *See, e.g.*, *Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, 2017 WL 495869, at *3 (N.D. Tex. Feb. 7, 2017) ("The court concludes that these allegations are too conclusory to plausibly plead that [the asserted] mark is famous."); *Total Compliance Network, Inc. v. Total Compliance Servs., LLC*, 2018 WL 4426065, at *4 (S.D. Fla. June 8, 2018). Simply put, the University cannot make a threshold

057538.023 \ 103029766v2

showing of the requisite level of recognition by the general consuming public while also complying with the Rule 8(a) pleading standard (in addition to Rule 11(b) requirements)

Finally, to avoid dismissal of a dilution claim, a plaintiff "must proffer evidence showing that *each* mark it alleges was diluted has achieved the requisite degree of 'national fame' necessary to support a trademark dilution claim." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 2009 WL 3570387, at *7 n.18 (S.D. Tex. Oct. 30, 2009) (emphasis in original); *see also H-D U.S.A., LLC v. Affliction Holdings, LLC*, 2020 WL 5913850, at *5 (C.D. Cal. June 8, 2020). The University's allegations in support of fame are generic to the University itself rather than specific to any alleged mark. *See* FAC ¶¶ 12-14. Indeed, multiple allegations suggest that "many"—but not all—alleged marks are relevant to the dilution claims. *See id.* ¶ 51 ("Long after <u>many</u> of the Illinois Marks and the University's trade dress had become famous in the United States ...."), ¶ 91 ("<u>many</u> of the Illinois Marks have become famous").

## D. <u>The University Cannot Maintain a Claim for Trademark Infringement Under Illinois State Law</u>

Likewise inadequate is the University's fifth cause of action for trademark infringement under the Illinois Trademark Registration and Protection Act ("TRPA"), 765 ILCS 1036/60. FAC ¶¶ 107-15. The TRPA provides a cause of action in favor of a "registrant" against "any reproduction, counterfeit, copy, or colorable imitation *of a mark registered under this Act* ...." 765 ILCS 1036/60(a) (emphasis added). Similarly, the TRPA defines "registrant" to mean "the person to whom the registration of a mark is issued *under this Act*[.]" 765 ILCS 1036/5(f) (emphasis added). As the University has not pleaded any registrations issued under the TRPA, this claim fails as a matter of law. *See Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013) (plaintiff "satisfie[d] the registration requirement of [765 ILCS 1036/60]" by "alleg[ing] that it filed and obtained Illinois state trademark registrations").

057538.023 \ 103029766v2

**E.**     <u>Motion to Strike Allegations of "Fame" in Connection with Illinois State Law</u>

As argued in Vintage Brand's prior Motion to Dismiss, the University cannot assert a claim for trademark dilution arising under the TRPA, 765 ILCS 1036/65, because it alleges that Vintage Brand and the University are competitors. ECF 20 at Part III.B.5; *see also Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 857 (N.D. Ill. 2014) (dismissing Illinois dilution claim because "the allegations establish[ed] that [the litigants] are competitors"). The FAC makes identical allegations of competition between the parties. FAC ¶¶ 3, 59, 124.

The second portion of the University's fifth cause of action was, previously, for trademark dilution under the TRPA. Compl. ¶¶ 108-12. Realizing this claim failed as a matter of law, the University appears to have attempted to remove it. *See* FAC ¶¶ 107-15. However, the FAC contains allegations that could only be relevant to a claim for dilution under the TRPA. *See id.* ¶ 35 (contending that the alleged marks require "protection under both federal and state law" because they are famous) ¶ 112 (citing 765 ILCS 1036/65).

If the University is making a claim for dilution under TRPA, it fails as a matter of law under Rule 12(b)(6). If the University does not intend to advance a claim for dilution under the TRPA, such allegations should be stricken as "immaterial" under Rule 12(f) for the purpose of avoiding unnecessary discovery and additional motions practice. *Cf. Heller Fin., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294 (7th Cir. 1989) (a motion to strike is appropriate to "remove unnecessary clutter from the case").

**F.**     <u>Motion to Strike Allegations of a "Family" of Trademarks</u>

The FAC makes numerous references to a "family" of trademarks. *See, e.g.*, FAC ¶ 15 (alleging that "the University … own rights in and to a family of trademarks" and defining entirely distinct marks as the "Illinois Family of Marks"). Plaintiff does not understand the legal meaning of a "family" of trademarks. "A family of marks is a group of marks having a *recognizable common*

*characteristic*, wherein the marks are comprised and used in such a way that the consuming public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991) (emphasis added); *see also Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 395 (7th Cir. 1992). The analysis for infringement of a "family" of trademarks differs from the typical infringement analysis: "The proper inquiry for a family of marks is to inquire whether the defendant's mark appropriated the salient feature of the family of marks." *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 785 (N.D. Ill. 2010) (citing *AM Gen. Corp.*, 311 F.3d at 814).

The University's alleged marks do not constitute a family of trademarks because they do not share a common characteristic. *See* FAC ¶ 15. Further, the University does not allege that the consuming public associates the (non-existent) common characteristic solely with the University. Indeed, although unclear, it appears that the University does not intend on advancing such a claim. *See generally id*. Therefore, Vintage Brand respectfully requests that the Court strike allegations related to a "family" of marks as immaterial pursuant to Rule 12(f).

## IV. CONCLUSION

The University's FAC should have obviated the need for Vintage Brand to bring this renewed Motion to Dismiss. But the University failed to correct facially insufficient pleading and did not remedy its legally unsound claims. Vintage Brand still does not know what intellectual property is at issue, and is still hindered in its ability to mount its defenses for certain claims. It had no choice but to again bring these issues to the attention of the Court.

Vintage Brand respectfully requests that the Court dismiss or strike the portions of the FAC as outlined above. Further, as the University has displayed an inability to plead colorable claims despite being on notice of the numerous deficiencies, dismissal should be *with prejudice*.

057538.023 \ 103029766v2

DATED this 2nd day of March, 2022.

/s/ Theresa H. Wang
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Leslie C. Vander Griend (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Email: theresa.wang@stokeslaw.com
Email: joshua.harms@stokeslaw.com
Email: leslie.vandergriend@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP
122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
Email: rboonstra@htlaw.com
Email: tpostma@htlaw.com

*Attorneys for Defendant Vintage Brand, LLC*

057538.023 \ 103029766v2