**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

                Plaintiff,

    v.

VINTAGE BRAND, LLC,

             Defendant.

Case No. 21-cv-06546

Hon. John R. Blakey
JURY TRIAL DEMANDED

**SECOND AMENDED COMPLAINT**

NOW COMES Plaintiff, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS ("Plaintiff," "the University" or "the University of Illinois"), by and through its attorneys, Freeborn & Peters, LLP, and for its Second Amended Complaint against Defendant, Vintage Brand, LLC, ("Vintage" or "Defendant"),[1] states as follows:

**SUMMARY**

1.     Plaintiff, the Board of Trustees of the University of Illinois, is a body politic and corporate established under the constitution and laws of the State of Illinois, to govern and exercise authority over its system of universities, including the University of Illinois Urbana-Champaign, which is located in Urbana, Illinois.

2.     The University brings this lawsuit to protect the substantial goodwill that the University has developed in its trademarks and to stop Vintage's scheme of unfair competition that is being waged through online sales of infringing goods that are undermining and injuring the University's rights and reputation.

---

[1]     The University files this Second Amended Complaint having obtained the written consent of Defendant. *See* FED. R. CIV. P. 15 (a)(2).

3.      Vintage's unlawful scheme includes Vintage's infringing use of the University's trademarks on goods Vintage sells in competition with the University and without a license.

4.      In furthering its illegal activity, Vintage is continually changing the products for sale on its website and, as of the filing of this Complaint, has removed many of the products using the University's trademarks and intellectual property discussed herein from easy public view. Nonetheless, at least some infringing products are still available for purchase on the Vintage website. Regardless, the University is entitled to an injunction preventing Vintage from ongoing and future efforts to manufacture, distribute, sell or offer for sale products bearing the University's trademarks and intellectual property discussed herein and to recover damages for completed sales. Thus, the University seeks to enjoin Vintage from ongoing and future use of the University's trademarks and to obtain damages from Vintage's infringing sales up to the date of trial, and to obtain appropriate declaratory relief.

5.      Unless Vintage is enjoined from infringing on the University's intellectual property, Vintage's unauthorized use will continue to cause consumer confusion and irreparably harm the University.

## JURISDICTION AND VENUE

6.      Plaintiff's claims are for trademark infringement arising under the Lanham Act 15 U.S.C. §1114, *et seq.*, counterfeiting under Lanham Act § 35, 15 U.S.C. § 1117(b) and (c), false designation and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125, *et seq.*, , unfair or deceptive acts under the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 505, *et seq.*, and unfair competition under common law.

7.      The Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202, 15 U.S.C. §1121, and Fed. R. Civ. P. 13.

The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 13 because those claims are so related to Plaintiffs' claims that they form part of the same case or controversy and derive from a common nucleus of facts.

8.      The Court has personal jurisdiction over the Defendant because, on information and belief, Defendant carries on substantial and continuous business activities in the State of Illinois and throughout the country through its interactive e-commerce websites which target consumers nationwide and specifically in this judicial district. Upon information and belief, Defendant has sold and delivered products to residents in this District and targets internet marketing campaigns that display advertisements and links to consumers in this judicial district, seeking to entice consumers to access its websites and buy Defendant's infringing and misleading products. Particular to the University's claims, Defendant's website also features goods with the University's name, color schemes, and/or logos, all of which are registered as trademarks with the United States Patent and Trademark Office and/or protected by the common law. For its part, the University operates throughout the State of Illinois, including within this judicial district.

9.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Defendant is subject to personal jurisdiction in this judicial district.

## THE PARTIES

10.     The University is a body politic and corporate established under the constitution and laws of the State of Illinois, to govern and exercise authority over the University of Illinois Urbana-Champaign, located in Urbana, Illinois, among other universities.

11.     Upon information and belief, Defendant Vintage is a limited liability company organized under the laws of the State of Washington and it maintains a principal place of business

in Seattle, Washington. Upon information and belief, Vintage's primary business is selling apparel nationally, over the internet, using a fully interactive e-commerce site that processes transactions nationally and with customers located in the State of Illinois.

## THE UNIVERSITY OF ILLINOIS

12.     Since its founding in 1867, the University of Illinois Urbana-Champaign has earned a reputation as a world-class leader in research, teaching, and public engagement and is a highly respected institution of higher learning.  It is home to over 51,000 students, including students from all 50 states and over 100 countries, and it offers nearly 5,000 courses in more than 150 fields of study, awarding about 7,000 new degrees each spring.

13.     The University of Illinois Urbana-Champaign's 21 Division I men's and women's sports teams are admired by fans all over the United States and around the world, and the teams have long and storied athletics history with rich tradition. From the start of the Illini baseball team in 1879, to the formation of the UI Athletic Association in 1890, as a charter member of the Big Ten Conference in 1896 and as a charter member of the National Collegiate Athletic Association ("NCAA") in 1906, the University of Illinois has been a national leader in collegiate athletics. Illinois' Fighting Illini teams have won 18 NCAA Championships, five football national championships and 248 Big Ten titles, the second-most in conference history. The University of Illinois has advanced to five NCAA Men's Basketball Final Fours. University of Illinois Urbana-Champaign alumni athletes have won 31 Olympic medals while competing for 17 countries in 25 Olympic Games.

14.     The University of Illinois participates in collegiate athletic competition at the very highest level. It is, and has been since the conference's inception in 1896, part of the Big Ten Conference ("Big Ten"). The Big Ten is one of the "Power Five" conferences along with the

Atlantic Coast Conference, the Big 12 Conference, the Pac-12 Conference, and the Southeastern Conference, which means that the participants in those conferences compete at the pinnacle of collegiate athletics and routinely play in athletic contests live in front of tens or hundreds of thousands of spectators while simultaneously being broadcast on television throughout the world.

15. The University has adopted, makes extensive and continual use of, and owns rights in a number of marks in connection with the University's educational services, athletic events, and related services, and a wide variety of goods and services, including apparel, memorabilia, and other merchandise.

16. The University owns federal registrations for many of its marks, including but not limited to the "University Registered Marks" identified below:

| Mark | Reg. No. | Recited Goods/Services |
|------|----------|------------------------|
| **ILLINOIS** | 5,095,860 | Clothing, namely, jackets, vests, ties, caps, sport caps, visor caps, ski caps, hats, scarves, sweaters, gloves, mittens, ladies' and men's and children's t-shirts, men's shirts, ladies' tops, jerseys, sport shirts, golf shirts, basketball shirts, football shirts, sweatshirts, shorts, socks, warm-up suits, baby sleepers, baby shirts, in Class 25. |
| *ILLINOIS* | 3,692,259 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands, in Class 25;<br><br>Basketballs, foam basketballs, footballs, foam footballs, stuffed toys, animals, dolls, golf bags, golf head covers, golf balls, Christmas tree ornaments, and Christmas stockings, in Class 28;<br><br>Educational services, namely conducting collegiate athletic exhibitions and games, in Class 41. |

| | | |
|---|---|---|
|  | 1,836,231 | Belts, caps, hats, shoes, athletic jerseys, sweatshirts, sweatpants, sweatjackets, warm-up suits, shirts, shorts, jackets, infant wear, sleepwear, pants, rainwear, knitwear; namely, gloves, mittens, scarves, and socks, in Class 25. |
| FIGHTING ILLINI | 2,230,527 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands, in Class 25; Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings. in Class 28; Educational services, namely, conducting collegiate athletic exhibitions and games, in Class 41. |
|  | 2,232,024[2] | Clothing, namely, jackets and vests, men's shirts, sport shirts, ladies' tops, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies and men's and children's t-shirts, football shirts, adult and children's warm-up suits, baby sleepers, baby shirts, tennis hats, in Class 25. |
|  | 2,315,363 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands, in Class 25; Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings, in Class 28; |

[2]     For ease of reference, the mark registered as U.S. Reg. No. 2,232,024 is referred to herein as the "Chief Logo."

| | | Educational services, namely, conducting collegiate athletic exhibitions and games, in Class 41. |
| --- | --- | --- |

*See* Exhibits A-F (Registration Certificates).

17.     The University's use of the University Registered Marks is not limited to the goods and services recited in their respective registrations. The University has made years, and in some cases decades, of widespread use of the University Registered Marks in connection with educational services, athletic events and related services, and a wide variety of promotional goods and other merchandise and, and a result of said use, owns common law rights in the University Registered Marks in connection with those promotional goods and other merchandise.

18.     In addition, based on years, and in some cases decades, of widespread use, the University owns common law rights in the following marks, referred to herein collectively as the "University Common Law Marks":  (i) UNIVERSITY OF ILLINOIS, (ii) THE UNIVERSITY OF ILLINOIS, (iii) ILLINI, and (iv) the color scheme of orange and blue used in connection with other indicia of the University, including "University of Illinois," "Illinois," "Illini," "Urbana-Champaign," "I" in block lettering, and any of the University Registered Marks defined above. The University owns common law rights in the University Common Law Marks in connection with educational services, athletic events and related services, apparel and a wide variety of promotional goods and other merchandise.

19.     For decades, the University's color scheme has been orange and blue.  For example, a prospective student or consumer accessing the University's website at illinois.edu, is first shown a "landing" page like the one below, emblazoned with blue and orange colors, student-band members clad in the same colors and depictions of some of the University Registered Marks and University Common Law Marks:



20.     Below are examples of merchandise being sold or offered for sale by the University or its authorized licensees bearing some of the University Registered Marks and University Common Law Marks:



21.     Below are examples of "vintage" apparel that is presently being sold by authorized licensees of the University and that utilizes the Chief Logo:



22.     As a result of the University's extensive advertising and promotion of its goods and services over many years using the University Registered Marks and University Common Law Marks, and through favorable industry acceptance and recognitions, the relevant consuming public has come to recognize and identify the University as the source of top-quality goods and services offered in connection with those trademarks.

23.     Accordingly, the University Registered Marks and University Common Law Marks are assets of incalculable value that are closely identified with the University and that indicate to the world that the University is the source of the high-quality goods and services it provides. The

University has built extensive goodwill in the University Registered Marks and University Common Law Marks.

## THE INCONTESTABILITY AND VALUE OF THE UNIVERSITY REGISTERED MARKS AND UNIVERSITY COMMON LAW MARKS

24.     Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), the University's federal registration certificates are *prima facie* evidence of the validity of the University Registered Marks as well as Plaintiff's ownership and exclusive right to use these marks in connection with the identified goods and services.

25.     Each of the University Registered Marks have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  *See* Exhibits A through F.

26.     The University consistently and prominently uses and displays the University Registered Marks and University Common Law Marks in connection with its educational services, athletic events, clothing and apparel, merchandise, and related goods and services.

27.     As a result of the extensive sales, advertising, and promotion of the University's goods and services under the University Registered Marks and University Common Law Marks, and through widespread consumer acceptance and recognition, the consuming public have come to recognize the University Registered Marks and University Common Law Marks as identifying sources of high-quality products and services offered by the University.

28.     Many of the University Registered Marks and University Common Law Marks have been in use and associated with the University and its goods and services for decades. To honor that history, the University even promotes use of certain of its trademarks on products that are termed "vintage" and that are sold separately and in addition to the University's contemporary designs and styles. (*See, e.g.*, Paragraph 21.)

## DEFENDANT'S INFRINGING ACTIVITIES

29.     Defendant operates a website at the domain www.vintagebrand.com.

30.     Through its website, Defendant offers a wide variety of apparel and other goods featuring college team names, color schemes, insignias, mascots, logos, and other trademarks and source identifiers.

31.     Among the goods offered on Defendant's site, are t-shirts, sweatshirts, pennants, drinkware, posters, magnets, and puzzles, among many other items.

32.     Consumers can find team-branded merchandise by navigating a series of drop-down menus, or by performing a keyword search for the team/school whose gear they are searching for.

33.     In its drop-down menu displaying "COLLEGE" items, for example, Defendant has listed "Illinois Fighting Illini," clearly conveying to consumers Defendant's intention to associate the apparel offered for sale as being associated with the University and associated with its "Fighting Illini" athletic teams.

34.     Further, under the drop-down menu which displayed "COLLEGE" items, after clicking on "VIEW ALL," Defendant prominently displayed a T-shirt with a registered trademark of the University (with four T-shirts bearing other university logos flanking), highlighting that merchandise with Illinois Marks is a centerpiece of Defendant's business as shown below:



When a consumer clicked on the "Illinois Fighting Illini" link, they were shown a page

displaying merchandise with University of Illinois branding as shown below:



35.     Moreover, if a consumer searched for "Illinois Fighting Illini," they were taken to a page displaying for sale items like those shown below:



36.     The categories of products that were offered on Defendant's website are infringingly emblazoned with the University of Illinois' University Registered Marks and University Common Law Marks are extensive, including what Defendant identifies as "T-SHIRTS," "SWEATSHIRTS," "HATS," "KOOZIES," "DRINKWARE," "COASTERS," "POSTERS," "MAGNETS," "CANVAS," "ALUMINUM WALL ART," "SOCKS," "PUZZLES," and "CUTTING BOARDS."

37.     Defendant purports to offer goods featuring "vintage" sports branding reproduced from historic memorabilia. Instead, Defendant's products are simply designed and sold by Defendant using the University Registered Marks and University Common Law Marks or marks that are virtually identical to those of the University and that are a deliberate attempt to take advantage of the tremendous goodwill associated with the University, the University Registered Marks and University Common Law Marks.

38.     Defendant was rather bold about its intention to profit on the University's goodwill, claiming, "The Vintage Brand Illinois Fighting Illini Shop at VintageBrand.com is the ultimate destination for die-hard Illinois Fighting Illini fans and alumni." Further, Defendant identifies the designs depicted on the pages as "ILLINOIS FIGHTING ILLINI VINTAGE DESIGNS."

39.     Representative examples of infringing goods using the University Registered Marks and University Common Law Marks displayed on Vintage's website include:



40.     Defendant has used the University Registered Marks and University Common Law Marks on their apparel and other merchandise by creating various designs that copy, embody, or otherwise mimic the University Registered Marks and University Common Law Marks including at least the designs depicted in paragraph 34-35 and 39 above and paragraphs 47 through 51 below (collectively, the "Infringing Designs").

-14-

41.     In no instance has Defendant ever sought or received any license to manufacture, distribute, sell, or offer for sale any of the University Registered Marks and University Common Law Marks in connection with the merchandise that Defendant is marketing and selling at its website.  The University does not itself produce the items sold on Defendant's website.

42.     Thus, Defendant markets and sells without authorization a wide variety of apparel and other items featuring designs that are identical to the University Registered Marks and University Common Law Marks.

43.     Long after many of the University Registered Marks and University Common Law Marks had achieved secondary meaning in the United States and Illinois, Defendant began using these copied and/or confusingly similar marks in an obvious attempt to ride on the coattails of University and to improperly trade on the goodwill that the University has worked so hard to build.

44.     Defendant has used the Infringing Designs in U.S. commerce by marketing and selling their merchandise, including on and through Defendant's website.

45.     Upon information and belief, Defendant had full knowledge of the University's rights in the University Registered Marks and University Common Law Marks from the very first use of the Infringing Designs.

46.     The Infringing Designs are direct copies of the University Registered Marks and University Common Law Marks and/or are confusingly similar when viewed, thus giving a commercial impression that is also confusingly similar.

47.     For example, Defendant infringingly uses the words "Fighting Illini" that are the subject of a valid and incontestable federal trademark registration as discussed above on the following Infringing Designs:



The "Fighting Illini" trademark was also used throughout the Defendant's website to describe at least dozens, if not hundreds, of items that Defendant was clearly intending to sell as products associated with the University.

48.     Moreover, by way of further example, Defendant infringingly used a design that is confusingly similar to the University's official seal which is protected by a valid and incontestable federal trademark registration, as demonstrated below:

| University Registered Mark | Examples of Infringing Designs |
|:---:|:---:|
|  | |

49.     Moreover, by way of further example, Defendant infringingly used the Chief Logo which is also protected by a valid and incontestable federal trademark registration on a variety of Infringing Designs available for sale at its website as depicted below:

| University Registered Mark | Examples of Infringing Designs |
|---|---|
|  | |

50.     Moreover, by way of further example, Defendant infringingly uses the stylized word "Illinois" which is protected by a valid and incontestable federal trademark registration on Infringing Designs available for sale at its website as depicted below:

| University Registered Mark | Examples of Infringing Designs |
|---|---|
| | |

51.     Moreover, by way of further example, Defendant infringingly uses the block-letter I logo, which is protected by a valid and incontestable federal trademark registration on Infringing Designs available for sale at is website as depicted below:

| University Registered Mark | Examples of Infringing Designs |
|:--:|:--:|
|  | |

52.     The goods offered for sale by Defendant using the Infringing Designs are directly competitive with the goods offered by the University under its University Registered Marks and University Common Law Marks.

53.     In the time since the University originally filed its Complaint in this matter, Defendant has at least twice changed the items offered for sale on its website. As of February 8, 2022, a review of the website revealed that Defendant had apparently hidden from easy visibility many of the "Fighting Illini" labeled items and many of the Infringing Designs discussed herein. However, a listing of infringing products remains available for sale and can be accessed by performing a simple Internet search and directly loading the website vintagebrand.com/l/college/t/illinois-fighting-illini. To date, Defendant has not had any contact with the University about why it has made those changes and/or whether it will agree to never again sell any of the Infringing Designs. Thus, the University believes that Defendant will, at any moment, revive those previous offerings on their website. As a result, the University has the same need now as it did at the time it initially filed its Complaint for the injunctive relief it seeks herein.

Moreover, it continues to pursue damages suffered by the historical sales undertaken by Defendant using the Infringing Designs as further sought herein.

54.     The University never authorized Defendant's use of the University Registered Marks and University Common Law Marks in the Infringing Designs.

55.     The Infringing Designs are either direct copies or so closely resemble the University Registered Marks and University Common Law Marks that, when used in connection with Defendant's goods, they are highly likely to cause confusion, mistake, or deception amongst consumers and others in the relevant trade. Consumers will likely be led to believe that Defendant's goods are in some way associated with, connected with, licensed by, approved by, sponsored by, and/or authorized by the University, when that is not the case.

56.     Many of Defendant's Infringing Designs are counterfeits of the University Registered Marks, as defined in 15 U.S.C. § 1116(d).

<u>**COUNT I**</u>
**Federal Trademark Infringement**
**(Lanham Act § 32(1), 15 U.S.C. § 1114(1))**

57.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above as if fully stated herein.

58.     The University holds valid and existing federal Trademark Registration No. 5,095,860 for the mark  and has continuously used the mark since at least April 2014.

59.     The University holds valid and existing federal Trademark Registration No. 3,692,259 for the mark  and has continuously used the mark since at least December 1994.

60.    The University holds valid and existing federal Trademark Registration No. 1,836,231 for the mark "UNIVERSITY OF ILLINOIS LEARNING & LABOR CHARTERED



1867 AGRICULTURE SCIENCE & ART" and Design, as shown here  and has continuously used the marks since at least September 1991.

61.    The University holds valid and existing federal Trademark Registration No. 2,230,527 for "FIGHTING ILLINI" and has continuously used the mark since at least December 1994.

62.    The University holds valid and exiting federal Trademark Registration No. No.



2,232,024 for the design , and has continuously used the mark since at least 1994.

63.    The University holds valid and existing federal Trademark Registration No.



2,315,363 for  and has continuously used the mark since at least December 1994.

64.    The University owns, has the exclusive right to use, and actively uses the University Registered Marks has not, in any way, authorized Defendant to use or to exploit the University Registered Marks.

65.    Defendant has marketed, advertised, and sold products incorporating the University Registered Marks or confusingly similar variations thereof through Defendant's website accessible throughout the United States and in the State of Illinois.

66.     As described by way of example above in paragraphs 34 through 40 and 47 through 51, Defendant has manufactured, distributed, sold or offered for sale products described with or displaying the University Registered Marks as if those products were licensed by or otherwise associated with the University.

67.     Defendant's acts have caused, or are likely to cause, confusion, mistake, or deception, and it is likely that the public will mistakenly believe that Defendant's apparel and other products have their source or origin with the University or that Defendant's products are in some manner approved by, associated with, sponsored by, or connected with the University, all in violation of 15 U.S.C. §§ 1114, *et. seq.*

68.     Upon information and belief, Defendant's actions were undertaken willfully, and with the intent to confuse and deceive the public.

69.     Defendant's acts have damaged, or may damage, the University's business, reputation and goodwill and have interfered, or may interfere, with the University's use of the University Registered Marks.

70.     Defendant has caused, and unless enjoined will continue to cause, irreparable harm and injury to the University for which there is no adequate remedy at law.

71.     Pursuant to 15 U.S.C. § 1116, Defendant should be preliminarily and, upon final hearing permanently, enjoined from using the Infringing Designs or variants thereof, or otherwise infringing on the University Registered Marks.

72.     Pursuant to 15 U.S.C. § 1117, the University is entitled to recover from Defendant:

    a.     All profits received by Defendant from its use of the Infringing Designs;

    b.     Actual damages sustained by the University due to Defendant's use of the Infringing Designs;

      c.      Exceptional damages (including trebling) for intentional infringement, bad faith, and willful conduct, equal to three times profits or damages, whichever is greater;

      d.      An order, pursuant to 15 U.S.C. § 1118 compelling Defendant to destroy all materials bearing the Infringing Designs or variants thereof;

      d.      All costs of this action, including attorneys' fees, interest; and/or

      e.      statutory damages under 15 U.S.C. §§ 1114, 1116, and 1117.

## <u>COUNT II</u>
## Trademark Counterfeiting
### (Lanham Act § 35, 15 U.S.C. § 1117(b) and (c))

73.      The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

74.      The University owns valid and existing rights in and to the University Registered Marks.

75.      As described by way of example above in paragraphs 34 through 40 and 47 through 51 above, Defendant uses in interstate commerce marks that are identical with and/or substantially indistinguishable from the University Registered Marks in connection with Defendant's promotion and sale of Defendant's Infringing Designs.

76.      Defendant's unauthorized use of the Infringing Designs is likely to cause confusion and mistake among consumers and others as to the source, origin or sponsorship of Defendant's products sold using the Infringing Designs.

77.      Defendant's unauthorized use of the Infringing Designs is a knowing, willful, and intentional violation of the University's rights.

78.      Defendant intentionally used the Infringing Designs knowing that the Infringing Designs are counterfeits of the Illinois Marks.

79. Defendant's conduct constitutes willful counterfeiting pursuant to 15 U.S.C. §§ 1116(d) and 1117(b) and (c).

80. By reason of the foregoing, the University is entitled to recover Defendant's profits and/or actual damages, trebled, Plaintiff's attorneys' fees and costs, and prejudgment interest, and/or statutory damages for each counterfeit mark or design used.

## COUNT III
### False Designation of Origin
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

81. The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

82. The University uses and owns the University Registered Marks and University Common Law Marks in connection with the sale of, among other things, apparel and a wide variety of promotional goods and other and merchandise. The University Registered Marks and University Common Law Marks are inherently distinctive and/or have acquired secondary meaning as a designation of source for the University.

83. In connection with its promotion and sale of its own apparel, promotional goods and other merchandise, Defendant uses in interstate commerce the Infringing Designs.

84. Defendant's use of the Infringing Designs is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship or affiliation of the parties' products.

85. Consumers seeing apparel and merchandise sold displaying the Infringing Designs in the marketplace are likely to believe those products are sponsored by, associated with, authorized by, or otherwise affiliated with the University, when they are not.

86. Defendant's use of the Infringing Designs constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87. Defendant's use of the Infringing Designs is a knowing, willful, and intentional violation of the University's rights.

88. Defendant's acts of false designation of origin, unless restrained, will cause great and irreparable harm to Plaintiffs and to the significant goodwill represented by the University Registered Marks and University Common Law Marks, in an amount that cannot be ascertained at this time, leaving Plaintiff with no adequate remedy at law.

89. By reason of the foregoing, the University is entitled to injunctive relief against Defendant, restraining it from any further acts of false designation of origin, and are also entitled to recovery of Defendant's profits, actual damages, enhanced profits and damages (including trebling), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

<u>**COUNT IV**</u>
**Violation of Illinois' Uniform Deceptive Trade Practices Act**
**(815 ILCS 510,** *et seq.***)**

90. The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

91. The University owns, has the exclusive right to use, and actively uses the University Registered Marks and University Common Law Marks in the United States and in Illinois.

92. As alleged herein, Defendant has, without consent or authorization from the University, used the Infringing Designs on its clothing and apparel and other products that are sold in interstate commerce, including in the State of Illinois.

93. The similarity between Defendant's products displaying the Infringing Designs and the University Registered Marks and the University Common Law Marks is so great as to be likely

to cause confusion, mistake, or deception as to the source or origin of Defendant's products in that the public and other are likely to believe that Defendant's products are manufactured by, promoted by, sponsored by, approved by, licensed by, affiliated with, or in some other way connected with the University and its renowned University Registered Marks and University Common Law Marks.

94.     Defendant's unauthorized use of the University Registered Marks and University Common Law Marks in the Infringing Designs is confusingly similar to the University's distinct and well-known University Registered Marks and University Common Law Marks constitutes deceptive trade practices under 815 ILCS 510/1, *et seq.* because Defendant is (a) passing off goods as those of another, (b) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods, (c) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, (d) representing that its goods have sponsorship, approval, characteristics, benefits, or quantities that they do not have or that Defendant has a sponsorship, approval, status, affiliation, or connection that it does not have, and/or (e) otherwise engaging in conduct which creates a likelihood of confusion or misunderstanding.

95.     Defendant's deceptive trade practices also occurred primarily and substantially within the state of Illinois because (a) the University resides in the State of Illinois; (b) Defendant's deception targeted customers located in the State of Illinois such that, on information and belief, Defendant's sales of the Infringing Designs were concentrated to customers residing in the State of Illinois relative to customers located in other states; (c) Defendant communicated with those customers in the State of Illinois via the www.vintagebrand.com website; and (d) the University suffered damages in the State of Illinois.

96.     Due to the unfair nature of Defendant's actions, Defendant has caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to the University, for which the University has no adequate remedy at law.

97.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the University Registered Marks and University Common Law Marks, thus entitling the University to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and attorneys' fees.

**COUNT V**
**Unfair Competition**

98.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

99.     Defendant's use of Infringing Designs and the solicitation of customers in competition with the University deprive the University of sales of merchandise or other prospects. In addition, Defendant's actions are likely to cause confusion, to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant with the University, or as to the origin, sponsorship, or approval of Defendant's products or commercial activities by the University.

100.    Defendant's conduct constitutes unfair competition in violation of Illinois common law.

101.    Defendant's unfair competition occurred primarily and substantially within the state of Illinois because (a) the University resides in the State of Illinois; (b) Defendant's deception targeted customers located in the State of Illinois such that, on information and belief, Defendant's sales of the Infringing Designs were concentrated to customers residing in the State of Illinois relative to customers located in other states; (c) Defendant communicated with those customers in

the State of Illinois via the www.vintagebrand.com website; and (d) the University suffered damages in the State of Illinois.

102.     Defendant's acts of common law unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

103.     Defendant's willful and deliberate acts, as described above, have caused injury and damage to the University, and have caused irreparable injury to the University's goodwill and reputation and, unless enjoined, will cause further irreparable injury leaving the University with no adequate remedy at law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. Adjudicating and decreeing that Defendant has infringed the University's trademark rights in the University Registered Marks and University Common Law Marks.

B. Adjudicating and decreeing that Defendant has counterfeited the University Registered Marks.

C. Adjudicating and decreeing that Defendant has created a false association with the University.

D. Adjudicating and decreeing that Defendant has competed unfairly with the University.

E. Preliminarily and permanently enjoining and restraining Defendant, its directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under Defendant, at first during pendency of this action and thereafter perpetually:

   i. from committing any acts of trademark infringement, deceptive trade practices, and/or unfair competition, and from implying a false designation of origin or a false description or representation with respect to the University Registered Marks and University Common Law Marks; and

   ii. from using in any manner packaging, labels, signs, literature, display cards, Internet websites, or other packaging, advertising, promotional materials, or other materials using the Infringing Designs or any other marks, words, names,

or designs that are confusingly similar to the University Registered Marks and University Common Law Marks; and

    iii.    from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to the source or origin or affiliation with, sponsorship by, or connection to the University.

F.    Requiring that Defendant deliver to the University or the Court any and all materials, including apparel and products that bear the Infringing Designs or which otherwise in any way unlawfully use or make reference to the infringed University Registered Marks and the University Common Law Marks.

G.    Requiring that Defendant, within thirty (30) days after service of notice of entry of judgment or issuance of any injunction, file with the Court and serve upon the University's counsel a written report under oath setting forth details of how Defendant has complied with the Court's order as outlined in E and F above.

H.    Awarding damages to the University as a result of Defendant's willful infringement and unfair competition in an amount including awards for the University's actual damages and/or Defendant's profits, disgorgement of ill-gotten gains achieved by Defendant, and the University's attorneys' fees and costs, to be trebled pursuant to applicable State and Federal laws.

I.    Requiring Defendant to pay statutory damages per Infringing Design and type of good sold, offered for sale, or distributed in accordance with 15 U.S.C. § 1117(c).

J.    Awarding the University its attorneys' fees and costs along with pre- and post-judgment interest on all amounts awarded against Defendant.

K.    Award Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

Dated: March 22, 2022

Respectfully submitted,

THE BOARD OF TRUSTEES FOR THE
UNIVERSITY OF ILLINOIS

By: */s/ Jeffrey J. Catalano*
    One of Its Attorneys

Jeffrey J. Catalano
Andrew L. Goldstein
D. Richard Self
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
312.360.6000

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2022, that the above and foregoing **[Corrected] Second Amended Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification to all ECF registrants that are counsel of record for this matter.

By: */s/ Jeffrey J. Catalano*