**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, <br><br> Plaintiff, <br><br> v. <br><br> VINTAGE BRAND, LLC, <br><br> Defendant. | Case No. 1:21-cv-06546 <br><br> The Honorable John R. Blakey |

## DEFENDANT VINTAGE BRAND, LLC'S MOTION FOR SANCTIONS

057538.023 \ 103062616v2

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ....................................................................................................... 2

III. AUTHORITY .......................................................................................................... 4

    A.    The University's Attempt to Overreach its Supposed Trademark Rights Was Objectively Untenable ........................................................ 5

        1.    The Original Complaint's Definition of "Illinois Marks" ......................... 6

        2.    The First Amended Complaint's Definition of "Illinois Family of Marks" ..................................................................... 8

    B.    There Was No Objective Basis to Assert an Indefinite Scope of Unregistered Rights in a Claim for Infringement Made Under Section 32(1) of the Lanham Act ........................................................ 9

    C.    There Was No Objective Basis to Assert Trademark Infringement under the TRPA ............................................................................... 10

    D.    There Was No Objective Basis to Assert a Dilution Claim Under Section 43(c) of the Lanham Act ........................................................ 10

    E.    There Was No Objective Basis to Assert a Dilution Claim Under the TRPA ......................................................................................... 14

    F.    There Was No Objective Basis to Assert an Indefinite Scope of Unregistered Rights in a Claim for Counterfeiting Under Section 35 of the Lanham Act ......................................................................... 14

    G.    Sanctions are Appropriate Under Rule 11 .......................................... 15

IV. CONCLUSION ....................................................................................................... 15

057538.023 \ 103062616v2

## TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Adobe Sys. Inc. v. Software Speedy*,
2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ........................................................... 6

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*,
1 F.3d 611 (7th Cir. 1993) ..................................................................................... 14

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*,
940 F. Supp. 2d 850 (C.D. Ill. 2013) ....................................................................... 14

*Am. Steel Foundries v. Robertson*,
269 U.S. 372 (1926) ................................................................................................ 7

*AM Gen. Corp. v. DaimlerChrysler Corp.*,
311 F.3d 796 (7th Cir. 2002) ................................................................................... 9

*Beeman v. Fiester*,
852 F.2d 206 (7th Cir. 1988) ................................................................................... 5

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 6

*Berwick Grain Co. v. Ill. Dep't of Agric.*,
217 F.3d 502 (7th Cir. 2000) ................................................................................... 1

*Best Vacuum, Inc. v. Ian Design, Inc.*,
2005 WL 1185817 (N.D.Ill. Jan. 18, 2005) .............................................................. 9

*Black & Decker Corp. v. Positec USA Inc.*,
2015 WL 1543262 (N.D. Ill. Mar. 31, 2015) .......................................................... 12

*Boink Sys., Inc. v. Las Vegas Sands Corp.*,
2008 WL 11389198 (D. Nev. Dec. 10, 2008) ........................................................... 6

*Bovinett v. HomeAdvisor, Inc.*,
2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ........................................................... 1

*Coach Servs., Inc. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012) .............................................................................. 12

*Coach, Inc. v. Celco Customs Servs. Co.*,
2013 WL 12122691 (C.D. Cal. Jan. 28, 2013) .......................................................... 6

057538.023 \ 103062616v2

**<u>Cases</u> (cont.)** <u>Page(s)</u>

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ............................................................................................ 5

*Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*,
  443 F.3d 556 (7th Cir. 2006) ............................................................................. 5

*E.E.O.C. v. Concentra Health Servs., Inc.*,
  496 F.3d 773 (7th Cir. 2007) ............................................................................. 5

*Forest River, Inc. v. Winnebago Indus., Inc.*,
  2017 WL 590245 (N.D. Ind. Feb. 14, 2017) ................................................... 9

*Fries v. Helsper*,
  146 F.3d 452 (7th Cir. 1998) ............................................................................. 5

*H-D U.S.A., LLC v. Affliction Holdings, LLC*,
  2020 WL 5913850 (C.D. Cal. June 8, 2020) ................................................ 13

*Les Mutuelles du Mans Vie v. Life Assur. Co. of Pennsylvania*,
  128 F.R.D. 233 (N.D. Ill. 1989) ........................................................................ 6

*Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*,
  2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ................................................ 6

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
  703 F. Supp. 2d 671 (W.D. Ky. 2010) ........................................................... 11

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009) .......................................................... 6

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
  2009 WL 3570387 (S.D. Tex. Oct. 30, 2009) ............................................... 13

*Nike, Inc. v. Nikepal Int'l, Inc.*,
  2007 WL 2782030 (E.D. Cal. Sept. 18, 2007) .............................................. 12

*Pepsico, Inc. v. #1 Wholesale, LLC*,
  2007 WL 2142294 (N.D. Ga. July 20, 2007) ................................................ 12

*Plumeus, Inc. v. Intersog LLC*,
  2013 WL 5609331 (N.D. Ill. Oct. 11, 2013) ................................................. 12

*Raffel Sys., LLC v. Man Wah Holdings Ltd., Inc.*,
  _ F. Supp. 3d _, 2021 WL 5163200 (E.D. Wis. Nov. 5, 2021) .................... 12

057538.023 \ 103062616v2

**Cases** (cont.)                                                                    Page(s)

*Rolex Watch U.S.A., Inc. v. Rolex Deli Corp.*,
    2012 WL 5177517 (S.D. N.Y. 2012) ............................................................... 12

*Stanard v. Nygren*,
    658 F.3d 792 (7th Cir. 2011) .......................................................................... 6

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009) ............................................................................ 12

*Thornton v. Wahl*,
    787 F.2d 1151 (7th Cir. 1986) .............................................................. 1, 5, 15

*Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*,
    509 F.3d 380 (7th Cir. 2007) ......................................................................... 13

*United States v. Rogers Cartage Co.*,
    794 F.3d 854 (7th Cir. 2015) .......................................................................... 1

*Univ. of Texas at Austin v. KST Elec., Ltd.*,
    550 F. Supp. 2d 657 (W.D. Tex. 2008) ......................................................... 13

*Valoro, LLC v. Valero Energy Corp.*,
    2014 WL 3920035 (S.D. Fla. Aug. 11, 2014) ................................................. 6

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) .............................................................. 9

*Warner Bros. Entm't Inc. v. Random Tuesday, Inc.*,
    2020 WL 12762735 (C.D. Cal. Nov. 9, 2020) ................................................. 6

*Williams v. Dart*,
    967 F.3d 625 (7th Cir. 2020) .......................................................................... 6

**Statutes**

15 U.S.C. § 1114(1) ......................................................................................... 2, 9

15 U.S.C. § 1117 ........................................................................................... 2, 14

15 U.S.C. § 1125(a) ............................................................................................. 2

15 U.S.C. § 1125(c) ........................................................................... 2, 10, 11, 14

15 U.S.C. § 1127 ............................................................................................... 14

**Statutes (cont.)**                                       **Page(s)**

765 ILCS 1036 ........................................................................................................ 2

765 ILCS 1036/5(f) .............................................................................................. 10

765 ILCS 1036/60 ................................................................................................ 10

765 ILCS 1036/65 ............................................................................................ 3, 14

815 ILCS 510 ......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................... 7

Fed. R. Civ. P. 8(a) ............................................................................................. 6, 7

Fed. R. Civ. P. 11 .......................................................................................... Passim

Fed. R. Civ. P. 11(c)(2) ......................................................................................... 1

Fed. R. Civ. P. 11(c)(4) ....................................................................................... 15

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th. ed., Mar. 2022) ............... 9, 11, 12

057538.023 \ 103062616v2

## I.  INTRODUCTION

Defendant Vintage Brand, LLC respectfully requests that the Court enter an order sanctioning Plaintiff The Board of Trustees of the University of Illinois under Rule 11 of the Federal Rules of Civil Procedure. "Rule 11 requires counsel to study the law before representing its contents to a federal court." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). The University violated Rule 11 by filing a Complaint rife with objectively baseless claims and in facial violation of Rule 8(a). When moving to dismiss, Vintage Brand warned that it planned to seek sanctions if the University filed an amended pleading but failed to remedy the myriad deficiencies.[1] ECF 20 at 9 n.6. The University amended its pleading as of right but, as Vintage Brand anticipated, did not make the necessary changes. Instead, improper claims subsisted, and the scope of the University's causes of action and the trademarks at issue remained vague and undefined. Vintage Brand was forced to incur the expense and burden to move to dismiss a second time. Only then did the University agree to withdraw baseless claims and remedy other serious deficiencies.

The present motion would not be necessary but for the University's failure to exercise standard diligence and conduct reasonable pre-filing inquiries. Indeed, in light of Vintage Brand's first Motion to Dismiss, the University's perfunctory amendment evinces a disregard for Rule 11's edict: "stop, think and investigate more carefully before serving and filing papers." *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000).

Vintage Brand respectfully requests that the Court sanction the University by entering an order awarding Vintage Brand the attorneys' fees and costs it has incurred in this lawsuit up to and including these sanctions proceedings. At minimum, Vintage Brand ought to be entitled to the fees

---

[1] This warning was in substantial compliance with the notice and safe-harbor requirements of Rule 11(c)(2), as it set out Vintage Brand's position in detail and provided 21 days for the University to amend or withdraw the improper claims by operation of Rule 15(a)(1)(B). *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015); *Bovinett v. HomeAdvisor, Inc.*, 2020 WL 1330407, at *6 (N.D. Ill. Mar. 23, 2020).

057538.023 \ 103062616v2

incurred in preparing its second motion to dismiss, which should have been needless given the specificity of Vintage Brand's first Rule 12(b)(6) motion. This requested sanction is reasonable and warranted in light of the harm to Vintage Brand and apparent need to deter future misconduct.

## II. BACKGROUND

The University initiated this lawsuit against Vintage Brand on December 7, 2021. ECF 1 ("Compl."). The University's Complaint asserted: (i) trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) counterfeiting under Section 35 of the Lanham Act, 15 U.S.C. § 1117; (iii) dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iv) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) trademark infringement and dilution under Illinois's Trademark Registration and Protection Act, 765 ILCS 1036 *et seq.*; (vi) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*; and (vii) common law unfair competition. Compl. ¶¶ 63-124.

Vintage Brand file a Motion to Dismiss the University's original Complaint, which identified and explained the following deficiencies:

- The University violated Rule 8(a) by premising the pleaded allegations and claims on the facially indefinite term "Illinois Marks." ECF 20 at Part III.A.

- The University improperly pleaded a claim for infringement under Section 32(1) of the Lanham Act by relying on alleged common law trademark rights. *Id.* at Part III.B.1.

- The University improperly pleaded a claim for counterfeiting under Section 35 of the Lanham Act by relying on alleged common law trademark rights. *Id.* at Part III.B.2.

- The University did not and could not plead sufficient facts to establish the element of "fame" necessary to support a claim for dilution under Section 43(c) of the Lanham Act. *Id.* at Part III.B.3.

057538.023 \ 103062616v2

- The University lacked a statutory prerequisite to bringing a claim for trademark infringement under the Illinois Trademark Registration and Protection Act ("TRPA"). *Id*. at Part III.B.4.

- The University could not advance a claim for dilution under the TRPA because it alleged Vintage Brand is its competitor. *Id*. at Part III.B.5.

- The University failed to plead protectable trade dress. *Id*. at Part III.B.6.

Vintage Brand cautioned the University against re-alleging baseless claims: "Many of the pleading deficiencies described in this memorandum give rise to objectively baseless claims…. Vintage Brand intends on initiating the Rule 11(c) sanctions mechanism … if the Complaint is amended but nonetheless contains similar deficiencies." *Id*. at 9 n.6.

Instead of responding to the motion, the University elected to amend the Complaint as of right. ECF 25 ("FAC"). But the University's amendment was inadequate, with material revisions limited to (i) defining "Illinois Marks" as five pleaded registrations but re-alleging the incomprehensible definition of that term, ascribing it the name "Illinois Family of Marks" and shifting its focus to a claim for infringement of trade dress; and (ii) potentially[2] withdrawing the claim for dilution under the TRPA.

Vintage Brand filed a Motion to Dismiss the FAC, making arguments similar—and in many cases identical—to those contained in Vintage Brand's Motion to Dismiss the University's original Complaint. *Compare* ECF 20 *with* ECF 31. In response, the University sought Vintage Brand's consent to again amend its pleading, which Vintage Brand provided while also reserving the right to pursue remedies for Vintage Brand's costs associated with the inexplicably duplicative rounds of motions practice. Declaration of Theresa Wang ("Wang Decl.") Ex. A.

---

[2] It is unclear whether the FAC contained a claim for dilution under the TRPA. *See* FAC ¶ 35 (the alleged marks require "protection under both federal and state law" because they are famous), ¶ 112 (citing 765 ILCS 1036/65).

057538.023 \ 103062616v2

The University's Second Amended Complaint, ECF 38 ("SAC"), incorporates revisions that should have never been necessary in the first instance:

- The University removed incomprehensible and facially indefinite "defined" terms.

- The University removed references to alleged trade dress.

- The University withdrew its claim for trademark infringement under the TRPA.

- The University withdrew its claim for dilution under the TRPA.

- The University withdrew its claim for dilution under Section 43(c) of the Lanham Act.

- The University's claim for infringement under Section 32(1) of the Lanham Act is narrowed so as to not rely on alleged common law trademark rights.

- The University struck the amorphous reference to a "family" of marks.

- The University's claim for counterfeiting under Section 35 of the Lanham Act is narrowed so as to not rely on alleged common law trademark rights.[3]

Now, after two rounds of dispositive motions, the University has finally determined which claims it may raise, and dropped those for which it lacked standing or basis. On the University's third version of its Complaint, Vintage Brand can finally ascertain the trademarks the University claims were infringed and properly evaluate its positions and defend itself.

Vintage Brand should not have had to file two motions to arrive at this point. Clearly, counsel failed to make a reasonable inquiry before filing the original Complaint and, inexplicably, failed to remedy significant issues despite the deficiencies specifically addressed in Vintage Brand's first Motion to Dismiss. This motion should be granted.

### III.  AUTHORITY

The "central purpose" of Federal Rule of Civil Procedure 11 "is to deter baseless filings in

---

[3] Vintage Brand acknowledges the error in this claim was remedied by the FAC's definition of "Illinois Marks."

057538.023 \ 103062616v2

district court and thus ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). To effect this purpose, Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Id.*

A frivolous argument or claim sanctionable under Rule 11 is one that is "baseless and made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *see also Thornston*, 787 F.2d at 1154 ("every lawyer must do the necessary work to find the law *before* filing"). In determining whether to impose sanctions, a court "must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006).

In addition to legally untenable claims, sanctions can be imposed where a filing is made for an "improper purpose"—*i.e.*, "papers filed to cause unnecessary delay, or to increase litigation costs," as well as "papers filed to harass." *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir. 1988), *abrogated on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).

Here, the original Complaint and FAC are rife with untenable claims, which the University has dropped rather than attempting to defend. These claims are the progeny of the University's thinly veiled attempt to overextend its trademark rights, well beyond what any reasonable interpretation of the law would permit.

A.     **The University's Attempt to Overreach its Supposed Trademark Rights Was Objectively Untenable**

Under Rule 8(a)(2), each claim must be described "in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra*

*Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 11 sanctions are warranted for violation "of the *legal* standard of pleading quality dictated by Rule 8," such as filing a pleading that is "unclear, difficult to follow, and difficult to answer." *Les Mutuelles du Mans Vie v. Life Assur. Co. of Pennsylvania*, 128 F.R.D. 233, 239 (N.D. Ill. 1989) (emphasis in original).

In both the original Complaint and the FAC, the University attempted to claim a diverse array of trademark rights it did not own —and to hold Vintage Brand liable for encroaching on an undefined web of alleged "rights."

### 1.    The Original Complaint's Definition of "Illinois Marks"

It is standard and universally accepted that a plaintiff must identify all marks at issue when alleging trademark infringement,[4] a requirement embodied by Rule 8(a). *See Williams v. Dart*, 967 F.3d 625, 638 (7th Cir. 2020) ("The questions under Federal Rule of Civil Procedure 8(a)(2) are whether the defendant has fair notice of what he must defend himself against and whether there is some reason to believe he could be found liable at the end of the case."); *Stanard v. Nygren*, 658

---

[4] *Warner Bros. Entm't Inc. v. Random Tuesday, Inc.*, 2020 WL 12762735, at *5 (C.D. Cal. Nov. 9, 2020) ("district courts have granted motions to dismiss or motions for a more definite statement when a plaintiff does not identify all marks at issue in the operative complaint."); *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014) ("[A] general allegation that Defendants have infringed [Plaintiff's] 'marks' or 'copyrights' is insufficient…. Mr. Harrison is entitled to clear notice of the alleged trademarks or copyrights he is alleged to have infringed[.]"); *Valoro, LLC v. Valero Energy Corp.*, 2014 WL 3920035, at *4-5 (S.D. Fla. Aug. 11, 2014) (finding pleading deficient where "allegations in Valero's Counterclaim ... present a plurality of marks Valero contends it uses, rather than specifying which marks (either registered or unregistered) are infringed"); *Coach, Inc. v. Celco Customs Servs. Co.*, 2013 WL 12122691, at *5 (C.D. Cal. Jan. 28, 2013) (Where "Coach failed to identify the trademarks at issue or describe the allegedly infringing goods[,] [t]he court concluded … that Coach had failed to plead the basic background facts necessary to allege a trademark infringement claim."); *Louisiana Pac. Corp. v. James Hardie Bldg. Products, Inc.*, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012) (holding that plaintiff was required to "identify every trademark which was allegedly infringed"; stating that this requirement "is necessary to provide Defendant with adequate notice" because, where the complaint only identifies some of the allegedly infringed marks, this "leaves Defendant to guess at the others"); *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (requiring that the plaintiff "provide a more definite statement … identifying each of its marks, whether registered or unregistered, that have allegedly been infringed."); *Boink Sys., Inc. v. Las Vegas Sands Corp.*, 2008 WL 11389198, at *5 (D. Nev. Dec. 10, 2008) ("Las Vegas Sands must apprise Plaintiffs of the trademarks that are at issue and give more details about how Plaintiffs violated the Lanham Act … in order for Plaintiffs to meaningfully respond to the counterclaim.").

F.3d 792, 799 (7th Cir. 2011) ("To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him.").

Rather than comply with basic pleading requirements, the University's original Complaint alleged an indefinite monopoly via a prolix definition of the term "Illinois Marks":

> In connection with its educational services, athletic events, and ***related services, apparel, and merchandise***, Illinois has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress ***including, but not limited to***, registered and unregistered marks that comprise ***in whole or in part***, ILLINOIS, Fighting Illini, Illini , , , , , , and  ***each alone, and in combination with the colors orange and blue*** (collectively, ***including the marks also illustrated in Paragraphs __ through __*** [sic] ***the "Illinois Marks"***). Together with the colors orange and blue, the Illinois Marks define a consistent and unique trade dress for the University's products and services.

Compl. ¶ 15 (emphasis added).

This initial attempt to claim ownership of all manner of words and images as "marks" for varied and undefined goods and services fails even the most liberal standards required by Rule 8. *First*, the University qualified the term with the phrase "including, but not limited to," which rendered it facially indefinite and, therefore, incompatible with Rule 8(a). *Second*, the University generically claimed rights in connection with undefined "services, apparel, and merchandise" related to educational and athletic services. *Cf. Am. Steel Foundries v. Robertson*, 269 U.S. 372, 380 (1926) ("There is no property in a trade-mark apart from the business or trade in connection with which it is employed."). *Third*, the University attempted to shoehorn into the definition each of the enumerated words and designs "in whole or in part." Read literally, the University claimed exclusive rights to portions of words (*e.g.*, "ILL" in the text ILLINOIS) and portions of designs (*e.g.*, ). *Fourth*, the University claimed rights generically "in combination with the colors

orange and blue" without specifying either pantone or shade, nor indicating how such colors would appear alongside any of the alleged marks. Simply, this assertion of exclusive rights lacks any boundary whatsover; it encompasses words and designs not identified in the pleading used in connection with unknown "services, apparel, and merchandise."

This overextension of alleged trademark rights formed the foundation of the original Complaint. The term "Illinois Marks" appeared over 70 times. Compl. ¶¶ 15, 22, 26-34, 40, 44, 46-50, 52, 55-62, 69, 70, 73, 75, 78, 79, 82, 86-89, 91, 95, 101, 105, 108, 109, 114, 116, 117, 119 & pp.31-32. And the term was incorporated into the definition of "Infringing Designs," *id*. ¶ 47, which was used roughly 50 times to describe Vintage Brand's purportedly actionable conduct, *id*. ¶¶ 47, 51-62, 75, 76, 80-82, 91, 93, 96-100, 105-07, 112, 115-17, 121 & pp.31-32.

### 2.    The First Amended Complaint's Definition of "Illinois Family of Marks"

Following Vintage Brand's first Motion to Dismiss, the University made minor revisions to the foregoing definition, re-styling it as the "Illinois Family of Marks" and shifting focus to pleading a purported trade dress[5]:

> In connection with its educational services, athletic events, and ***related services, apparel, and merchandise***, the University has adopted, makes extensive use of, and owns rights in and to a family of trademarks and trade dress including, ***but not limited to***, registered and unregistered marks that comprise ***in whole or in part***, ILLINOIS, Fighting Illini, Illini , , , , , , and  ***each alone, and in combination with the colors orange and blue*** (collectively the "Illinois Family of Marks").

FAC ¶ 15 (emphasis added); *see also id*. ¶ 22 (incorporating this term when pleading trade dress).

Such an overextension of alleged trademark rights in the context of trade dress is

---

[5] Vintage Brand put the University on notice that its prior attempt at pleading protectable trade dress fell well below the well-established standard. *See* ECF 20 at Part III.B.6. The University's FAC did nothing to remedy this error.

particularly indicative of an improper purpose and ignores the well-established rule that a plaintiff must "articulat[e] the specific elements which comprise its distinctive dress" in order to "avoid exceedingly general claims that seek coverage for something that is unprotectable." *Forest River, Inc. v. Winnebago Indus., Inc.*, 2017 WL 590245, at *2 (N.D. Ind. Feb. 14, 2017) (citations omitted); *see also AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 815 n.6 (7th Cir. 2002) ("Unless the trade dress for which protection is sought is specifically defined with a stable visual appearance, the party seeking protection might obtain a right to monopolize a variety of dress far beyond what the plaintiff might ever use."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:3 (5th. ed., Mar. 2022) ("All courts agree that the elements of the alleged trade dress must be clearly listed and described.").

Following Vintage Brand's second Motion to Dismiss, the University withdrew all claims based on the alleged trade dress and abandoned its reliance on the prolix definition previously contained in Paragraph 15 of both the original Complaint and the FAC. Wang Decl., Ex. A; *see generally* SAC. Both of the University's duplicative attempts to force Vintage Brand to defend itself against an undefined and potentially infinite scope of "trademarks" violate Rule 11 and offend the principles and policies underlying trademark law.

**B.** **There Was No Objective Basis to Assert an Indefinite Scope of Unregistered Rights in a Claim for Infringement Made Under Section 32(1) of the Lanham Act**

In both the original Complaint and the FAC, the University's first cause of action alleged federal trademark infringement pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Compl. ¶¶ 63-74; FAC ¶¶ 65-80. As described in Vintage Brand's first Motion to Dismiss (Part III.B.1), claims made under Section 32(1) of the Lanham Act must be premised on a "registered mark." 15 U.S.C. § 1114(1); *see also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 770 (N.D. Ill. 2008) ("Section 32 of the Lanham Act … expressly protects against infringement of a

'registered mark.'"). Absent a federal registration, a cause of "action under Section 32 of the Lanham Act has no likelihood of success." *Best Vacuum, Inc. v. Ian Design, Inc.*, 2005 WL 1185817, at *2 (N.D.Ill. Jan. 18, 2005).

Despite the plain language of Section 32(1), the University's original Complaint asserted infringement of the "Illinois Marks," which as defined at that time included unregistered marks. Compl. ¶¶ 69-70; *see also id*. ¶ 15. In the FAC, the University premised this claim in part on unregistered trade dress. FAC ¶¶ 71-73, 77, 79. The University's attempt to allege infringement of unregistered trademarks and trade dress was objectively frivolous in light of the unambiguous language of Section 32(1) of the Lanham Act.

**C.**     **There Was No Objective Basis to Assert Trademark Infringement under the TRPA**

In both the original Complaint and the FAC, the University asserted a claim for trademark infringement under the TRPA, 765 ILCS 1036/60. Compl. ¶¶ 104-07; FAC ¶¶ 107-15. As set out in Vintage Brand's first Motion to Dismiss (Part III.B.4), the TRPA provides a cause of action for a "registrant" against "uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation *of a mark registered under this Act* …." 765 ILCS 1036/60(a) (emphasis added). Similarly, the TRPA defines "registrant" to mean "the person to whom the registration of a mark is issued *under this Act*[.]" 765 ILCS 1036/5(f) (emphasis added). In neither the Complaint nor the FAC did the University allege ownership of an Illinois State trademark registration. Consequently, it appears the University alleged this claim twice despite lacking the express statutory prerequisite to do so, rendering such claim objectively baseless.

**D.**     **There Was No Objective Basis to Assert a Dilution Claim Under Section 43(c) of the Lanham Act**

Section 43(c) of the Lanham Act grants owners of "famous" marks the ability to enjoin use of a similar mark by others "regardless of the presence or absence of actual or likely confusion, of

competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). In a misguided attempt to avail itself of this extraordinary scope of protection, the University pleaded a federal dilution claim in both the original Complaint and the FAC. Compl. ¶¶ 85-93; FAC ¶¶ 89-97. In both iterations of this claim, the University alleged that Vintage Brand diluted the "Illinois Marks," which at the time of the original Complaint included the indecipherable definition discussed above and at the time of the FAC included five alleged registered marks. As such, the University was seeking to apply the extraordinary protections of the federal anti-dilution statute to at least the following:



| Original Complaint (¶15) | First Amended Complaint (¶¶17-21) |
|---|---|

Among other requirements, a valid dilution claim must be premised on a "famous" mark. 15 U.S.C. § 1125(c)(1). "Without a requirement that the plaintiff's mark be very strong or famous, an antidilution statute becomes a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon." MCCARTHY § 24:104. This claim was objectively baseless because the "Illinois Marks"—however defined—do not come close to clearing the high hurdle necessary to show such fame.

For purposes of a federal dilution claim, "a mark is famous if it is widely recognized by *the general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(1) (emphasis added). "Congress intended for dilution to apply only to a small category of extremely strong marks." *Maker's Mark Distillery,*

---

[6] By the plain language of the original Complaint, the University was seeking to enjoin non-confusing, non-competitive uses of the word "Illinois." This is indicative of a fundamentally overexpansive understanding of trademark law.

         057538.023 \ 103062616v2

*Inc. v. Diageo N. Am., Inc*., 703 F. Supp. 2d 671, 698 (W.D. Ky. 2010). It is no surprise, then, that even a cursory review of case law makes clear that "only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws." MCCARTHY § 24:104; *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to prove.").

To reach the requisite level of fame, a mark must be a "household name." *Raffel Sys., LLC v. Man Wah Holdings Ltd., Inc*., _ F. Supp. 3d _, 2021 WL 5163200, at *10 (E.D. Wis. Nov. 5, 2021) (quoting *Coach Servs*, 668 F.3d at 1373). For example, NIKE,[7] PEPSI,[8] ROLEX,[9] and STARBUCKS[10] qualify for extraordinary protection under the Lanham Act's anti-dilution provision. However, even indisputably well-recognized marks such as COACH might not qualify, even when supported by evidence of hundreds of millions of dollars in revenue or marketing expenditures and extensive national and international publicity. *See, e.g.*, *Coach Servs*. 668 F.3d at 1374-75 (COACH mark not famous despite annual sales exceeding $500 million); *Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 1543262, at *34 (N.D. Ill. Mar. 31, 2015) ($150 million spent on promoting trade dress and $20 billion in sales of power tools insufficient); *Plumeus, Inc. v. Intersog LLC*, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (dismissing dilution claim despite "substantial resources" invested in "numerous national and international marketing campaigns").

Simply, it strains credulity to claims that the University's seal, the word ILLINOIS (stylized or plain text), the stylized letter I, the text ILLINI and FIGHTING ILLINI, and the Chief Illiniwek design have *all* become "household names."

---

[7] *Nike, Inc. v. Nikepal Int'l, Inc*., 2007 WL 2782030, at *5 (E.D. Cal. Sept. 18, 2007).
[8] *Pepsico, Inc. v. #1 Wholesale, LLC*, 2007 WL 2142294, at *4 (N.D. Ga. July 20, 2007).
[9] *Rolex Watch U.S.A., Inc. v. Rolex Deli Corp*., 2012 WL 5177517 (S.D.N.Y. 2012).
[10] *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 588 F.3d 97, 105 (2d Cir. 2009).

Indeed, the University's allegations are facially insufficient in light of the statutory standard. In 2006, Congress enacted the Trademark Dilution Revision Act, which "eliminated any possibility of 'niche fame,'" *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007), by requiring widespread recognition in the "general consuming public." *See also Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 673-79 (W.D. Tex. 2008).[11] However, in both the original Complaint and the FAC, the University's generic[12] allegations asserted in support of the supposed fame of the "Illinois Marks" are limited to the University's reputation as an educational institution and as a participant in collegiate athletics. *See* Compl. ¶¶ 12-14; FAC ¶¶ 12-14. To support its recognition as an educational institution, the University boasts that it is "home to over 51,000 students" and "offers nearly 5,000 courses in more than 150 fields of study, awarding about 7,000 new degrees each spring." Compl. ¶ 12; FAC ¶ 12. And to claim fame in connection with its participation in collegiate athletics, the University asserts that its "21 Division I men's and women's sports teams are admired by fans all over the United States and around the world, and the teams have long and storied athletics history with rich tradition." Compl. ¶ 13; FAC ¶ 13. Such allegations at best support niche market recognition—*i.e.*, recognition by consumers of higher education and collegiate athletics—not the widespread recognition by the "general consuming public" required to maintain a claim for dilution under Section 43(c) of the Lanham Act. The University expressly recognized that these allegations (contained in paragraphs

---

[11] In *KST Electronics*, the University of Texas ("UT") presented powerful evidence, such as: UT held the record for most licensing royalties earned in a single year; sales of UT products at retail stores totaled nearly $400 million per year; and UT athletic games are regularly nationally televised. *Id*. at 676-78. The court nonetheless reasoned that the evidence was, as a matter of law, insufficient to show recognition beyond a niche market—*i.e.*, fans of collegiate athletics. *Id*. at 678.

[12] A plaintiff "must proffer evidence showing that *each* mark it alleges was diluted has achieved the requisite degree of 'national fame' necessary to support a trademark dilution claim." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co*., 2009 WL 3570387, at *7 n.18 (S.D. Tex. Oct. 30, 2009) (emphasis in original); *see also H-D U.S.A., LLC v. Affliction Holdings, LLC*, 2020 WL 5913850, at *5 (C.D. Cal. June 8, 2020) (granting motion to dismiss). Each of the University's allegations in support of the "fame" of the "Illinois Marks" is generic to the institution itself.

12 through 15) limited the scope of potential recognition of the "Illinois Marks" to a niche market:

> Consistent with the background discussed in paragraphs 12 through 15 above, **students, prospective students, and sports fans** all immediately identify the Illinois Marks as associated uniquely with the University of Illinois. Thus, the Illinois Marks have achieved fame requiring special consideration and protection under both federal and state law.

FAC ¶ 35 (emphasis added). In sum, this claim was objectively baseless and would not have been brought but for counsel's failure to conduct a reasonable pre-filing inquiry—"students, prospective students, and sports fans" are not the "general consuming public." 15 U.S.C. § 1125(c)(1).

**E.     There Was No Objective Basis to Assert a Dilution Claim Under the TRPA**

The University's original Complaint asserted a claim for trademark dilution under the TRPA, 765 ILCS 1036/65.[13] Compl. ¶¶ 108-12. However, the University alleged that it and Vintage Brand were in competition. *E.g.*, *id*. ¶¶ 3, 58, 121. It has been long established that "the protection of the Illinois Anti-Dilution statute is not available to competitors under Illinois case law." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993). Had counsel conducted a pre-filing inquiry, the University would not have interposed this untenable claim.

**F.     There Was No Objective Basis to Assert an Indefinite Scope of Unregistered Rights in a Claim for Counterfeiting Under Section 35 of the Lanham Act**

The original Complaint's claim for counterfeiting under Section 35 of the Lanham Act, 15 U.S.C. § 1117, was facially overbroad. Compl. ¶¶ 77-84. The statutory elements of a counterfeit claim are as follows:

> (1) a spurious mark which is *identical with*, or substantially indistinguishable from, *a registered mark*, 15 U.S.C. § 1127; (2) that is registered with the U.S. Patent and Trademark Office's principal register for use on *the same goods or services* for which the defendant uses the mark; and (3) the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced.

---

[13] It is unclear whether the FAC removed this claim. *See* Note 2, *supra*.

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc*., 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (emphasis added). Despite the markedly narrow scope of actionable counterfeiting—requiring the senior user's "registered mark" and the alleged infringer's use of a "spurious mark"—the University advanced this claim in part on the basis of unregistered and indefinite alleged trademark rights by asserting that Vintage Brand was liable for counterfeiting the "Illinois Marks." Compl. ¶ 79. The scope of this claim was objectively baseless in light of the plain language of Section 35 of the Lanham Act.

## G.     Sanctions are Appropriate Under Rule 11

The Seventh Circuit has cautioned that "[c]ounsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under [Rule 11]." *Thornton*, 787 F.2d at 1154; *see also* FED. R. CIV. P. 11(c)(4). Here, the University failed to conduct a reasonable pre-filing inquiry and, consequently, pleaded objectively baseless claims, putting the onus and cost on Vintage Brand to file motions that force the University to meet the minimal standards of Rule 8. Such a result runs contrary to the letter and spirit of the Federal Rules, and ought to be remedied in favor of Vintage Brand.

## IV.  CONCLUSION

For the foregoing reasons, Vintage Brand respectfully requests that the Court enter an order sanctioning The Board of Trustees of the University of Illinois under Rule 11 of the Federal Rules of Civil Procedure. \\

057538.023 \ 103062616v2

DATED this 31st day of March, 2022.

/s/ Theresa H. Wang
_____
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Leslie C. Vander Griend (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Email: theresa.wang@stokeslaw.com
Email: joshua.harms@stokeslaw.com
Email: leslie.vandergriend@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP
122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
Email: rboonstra@htlaw.com
Email: tpostma@htlaw.com

*Attorneys for Defendant Vintage Brand, LLC*

057538.023 \ 103062616v2