**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | |
| Plaintiff, | |
| v. | Case Number: 21-cv-06546 |
| | The Honorable John R. Blakely |
| VINTAGE BRAND, LLC, | |
| Defendant. | |

**PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S
COUNTERCLAIMS**

Plaintiff, The Board of Trustees of the University of Illinois (the "University") by and through its attorneys Freeborn & Peters LLP hereby submits its Answer and Affirmative Defenses to Defendant's Counterclaim [Dkt. 46] and hereby states as follows:

**ANSWER TO DEFENDANT'S COUNTERCLAIM TO
CANCEL FEDERAL REGISTRATIONS**

**The Parties**

1.      Vintage Brand is a Washington limited liability company with a principal place of business at 5323 NE 42nd Street, Seattle, Washington 98105.

**ANSWER:**

The University is without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies the same.

2.      In its Complaint, the University alleges that it is a body politic and corporate established under the constitution and laws of the State of Illinois located in Urbana, Illinois.

**ANSWER:**

Admitted.

**Jurisdiction and Venue**

3.     This Court has subject matter jurisdiction over Vintage Brand's counterclaims because they arise under 15 U.S.C. §§ 1119 and 1121 and 28 U.S.C. §§ 1331 and 1338, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367 because they are so related to the University's claims that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**

The University admits that this Court has supplemental jurisdiction over the counterclaims generally under 28 U.S.C. §§ 1131, 1338, and 1367. The University denies the remaining allegations of Paragraph 3.

4.     The University is domiciled in and transacted business giving rise to Vintage Brand's counterclaims in Illinois. Therefore, the Court has personal jurisdiction over the University.

**ANSWER:**

Admitted.

5.     Vintage Brand will be damaged if the '259 Registration, '231 Registration, '527 Registration, '024 Registration, and '363 Registration continue to exist because the University has asserted alleged rights in said registrations and the alleged marks shown therein in its Complaint and the registrations would be *prima facie* evidence of the validity of the alleged marks, of the University's ownership of the alleged marks, and of the University's exclusive right to use the alleged marks in commerce in connection with the goods described in such registrations, when in fact the University is not entitled to such rights.

**ANSWER:**

Denied.

## RESPONSE TO COUNT I
### Cancellation of Registration No. 2,232,024
**(Abandonment: Nonuse)**

6.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth herein.

7.     The University obtained the '024 Registration for the below Native American-inspired imagery (the "Chief Illiniwek design") by filing Application Serial No. 75/415,168 on January 8, 1998. The USPTO issued the '024 Registration on March 16, 1999.



**ANSWER:**

The University admits that it filed U.S. App. Ser. No. 75/415,168 on January 8, 1998 for

the mark depicted above and that the mark was registered March 16, 1999 as U.S. Reg. No.

2,232,024 ("'024 Registration").  The University denies the remaining allegations of Paragraph

7.

8.     As of the date of this pleading, the '024 Registration covers the following goods in Class 025: Clothing, namely, jackets, and vests, men's shirts, sport shirts, ties, Ladies' tops, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies' and men's and children's t-shirts, football shirts, adult and children's warm-up suits, baby sleepers, baby shirts, tennis hats.

**ANSWER:**

Admitted.

9.     Signs of protest regarding the University's use of the Chief Illiniwek design were documented as early as 1975, when a University yearbook contained a passage referring to the perspective that use of Chief Illiniwek as a mascot of the University "degrades the Indian and disgraces the white race by revealing an ignorance of tribal cultures." Louis Garippo, *The Chief Illiniwek Dialogue: Intent and Tradition vs. Reaction and History — A Report to the Board of Trustees of the University of Illinois* (presented to the University in November 2000), perma.cc/Y34Y-ZSFE.

**ANSWER:**

The University admits that the perma.cc URL above links to a document entitled "*The*

*Chief Illiniwek Dialogue: Intent and Tradition vs. Reaction and History — A Report to the*

*Board of Trustees of the University of Illinois"* with Louis B. Garippo identified as moderator,

which document speaks for itself.  The University denies the remaining allegations of Paragraph

9.

10.     The University approved a resolution acknowledging the ongoing controversy regarding the use of the Chief Illiniwek design around January 12–13, 2000. *See* Board Meeting Minutes from January 12–13, perma.cc/9EMX-CQUP.

**ANSWER:**

The University admits that the perma.cc URL identified in Paragraph 10 links to a document entitled January 12-13, 2000 Annual Meeting of the Board of Trustees, which document speaks for itself.  The University denies the remaining allegations of Paragraph 10.

11.     Beginning in 2005, the National Collegiate Athletic Association ("NCAA") adopted a policy "prohibit[ing] NCAA colleges and universities from displaying hostile and abusive racial/ethnic/national origin mascots, nicknames or imagery" at the NCAA championships. NCAA News Release, *NCAA Executive Committee Issues Guidelines for Use of Native American Mascots at Championship Events* (August 5, 2005), perma.cc/MKS9-FXUX.

**ANSWER:**

Admitted.

12.     The NCAA identified the University as one of 18 universities displaying prohibited Native American imagery, *id.*, and the University's men's tennis team was consequently prohibited from hosting the first round of the 2006 NCAA championships. Jason Finkelstein, *What the Sioux Should Do: Lanham Act Challenges in the Post-Harjo Era*, 26 CARDOZO ARTS & ENT. L.J. 301, 318 (2008) ("After losing its appeal to have its nickname removed from the 'hostile and abusive' list, the Illinois men's tennis team was prohibited from hosting the first round of the 2006 NCAA championships.").

**ANSWER:**

The University admits only that the NCAA press release cited in Paragraph 12 identifies the University as one of the eighteen colleges and universities that, at the time of the press release, (i) "continue[d] to use Native American Imagery or references and are subject to the new policy" and (ii) was prohibited from hosing the first round of the 2006 NCAA men's tennis championships. The cited article speaks for itself.  The University is without sufficient information to form a belief regarding the truth of the remaining allegations of Paragraph 12 and therefore denies the same.

4

13.     As a result of pressure from the public and sanctions imposed by the NCAA, the University expressly and publicly ceased all use of the Chief Illiniwek design in 2007. In a meeting on March 13, 2007, the University approved a resolution by which it formally abandoned the Chief Illiniwek design:

> Therefore, Be It Resolved:
> ….
>
> That the Board hereby directs the ***immediate conclusion to the use of Native American imagery as the symbol of the University of Illinois*** and its intercollegiate athletics along with the related regalia, logo, and the names "Chief Illiniwek" and "Chief," and the Board hereby directs the Chancellor of the Urbana-Champaign campus to manage the final disposition of these matters and report the decisions back to the Board and in so doing to remain in compliance with the NCAA policy,

Board Meeting Minutes from March 13, 2007, perma.cc/5PYS-KUUU (emphasis added); *see also* Sharita Forrest, *Board Takes Final Vote, Retires Chief Illiniwek*, ILL. NEWS BUREAU (Mar. 15, 2007), perma.cc/XS89-66H7 (reporting on the resolution).

**ANSWER:**

The University admits only that (i) the perma.cc/5PYS-KUUU URL identified in Paragraph 13 links to a document entitled Meeting of the Board of Trustees of the University of Illinois March 13, 2007 and (ii) the perma.cc/XS89-66H7 URL links to Sharita Forrest, *Board Takes Final Vote, Retires Chief Illiniwek*, ILL. NEWS BUREAU (Mar. 15, 2007), both of which documents speak for themselves. The University denies the remaining allegations of Paragraph 13.

14.     The University's abandonment of Chief Illiniwek as a mascot and its actualized cessation of use of any related imagery, including the Chief Illiniwek design, was and is well-recognized by the public, including members of the legal community. *See* Daniel McClurg, *Locker Room Politics: The Role of Sports Leagues in Shaping (Anti-)social Legislation*, 17 VA. SPORTS & ENT. L.J. 82, 87 (2017) ("[T]he University of Illinois refused to change its mascot from 'Chief Illiniwek' until it was not permitted to host the 2006 NCAA Tennis Championships. Thus, the NCAA policy effectively eliminated the use of discriminatory imagery aimed at Native Americans by its member institutions."); Laura Sigler, *The Saga Continues: The Redskins, Blackhorse, and the Future of Native American Trademarks in Sports*, 62 WAYNE L. REV. 73, 103 (2016) ("Illinois' Chief Illiniwek fell victim to the ban, and he was officially retired in 2007."); Nathaniel T. Noda, *Perpetuating Cultures: What Fan-Based Activities Can Teach Us About Intangible Cultural Property*, 44 CREIGHTON L. REV. 429, 437–38 (2011) ("The NCAA ultimately agreed with the

latter group, ruling Chief Illiniwek 'an offensive use of Native American imagery,' and imposed sanctions on the University of Illinois that led to the university's retirement of the mascot."); Adam Epstein & Bridget Niland, *Exploring Ethical Issues and Examples by Using Sport*, 13 ATLANTIC L.J. 19, 44 (2011) ("The University of Illinois at Urbana-Champaign abandoned its use of *Chief Illiniwek* after the NCAA rejected its 2006 appeal that the mascot was neither *hostile* nor *abusive*."); Kristen A. Carpenter et al., *In Defense of Property*, 118 YALE L.J. 1022, 1106 (2009) ("One of the most marked examples was the decision of the University of Illinois to discontinue its use of Chief Illiniwek, the mascot for the Illinois Illini."); Spencer D. Kelly, *What's in A Name: The Controversy Surrounding the NCAA's Ban on College Nicknames and Mascots*, 5 WILLAMETTE SPORTS L.J. 17, 30 (2008) ("After careful consideration the school decided to retire Chief Illiniwek."); André Douglas Pond Cummings & Seth E. Harper, *Wide Right: Why the NCAA's Policy on the American Indian Mascot Issue Misses the Mark*, 9 U. MD. L.J. RACE, RELIGION, GENDER & CLASS 135, 174 (2009) ("[T]he NCAA required that the university not only retire Chief Illiniwek, but eliminate its logo which contained an elaborate portrait of a Native American chief in feathered headdress within an orange and blue circle.").

**ANSWER:**

The University admits only that, on or around 2007, the University ceased use of the "Chief Illiniwek" character at University athletic competitions, where the " 'Chief Illiniwek' character" herein refers to a natural person being dressed in a particular type of outfit performing at University athletic competitions. The University denies the remaining allegations of Paragraph 14.

15.    Documented statements by University officials further evidence the abandonment of the Chief Illiniwek design. *See, e.g.*, Craig Chamberlain, *Chief Illiniwek Performs Last Dance Amid Continued Controversy*, ILL. NEWS BUREAU (Mar. 1, 2007), perma.cc/4V5V-MKRC (citing an announcement to retire the Chief Illiniwek design by the University's then-chair Lawrence C. Eppley"); Sharita Forrest, *UI Retains Trademark Rights to Chief Illiniwek Imagery*, ILL. NEWS BUREAU (Apr. 5, 2007), perma.cc/PZQ8-QEF8 ("Eppley's announcement of the decision to retire the symbol immediately made the UI eligible to host postseason events, but its continued removal from the sanction list would be provisional upon its **not using the name Chief Illiniwek and the related Native American imagery**, the NCAA said in a Feb. 15 letter." (emphasis added)); Jim Meadows, *UIUC Chancellor: Chief Illiniwek's Retirement is Permanent*, ILL. PUB. RADIO (Feb. 26, 2013), perma.cc/3DL6-F9DD (quoting the University's then-Chancellor: "The symbol of Chief Illiniwek has been part of our past ... but it is not coming back"); *University of Illinois Leader Says Mascot Panel Will Not Be Picking Chief Illiniwek Replacement*, CAPITAL GAZETTE (Nov. 30, 2018), perma.cc/8HZA-UVTD (quoting the University's current Chancellor: "We're saying very clearly that Chief Illiniwek is not coming back"); Julie Wurth, *2 UI Trustees Visited Peoria Tribe's New Chief*, THE NEWS-GAZETTE (June 27, 2019), perma.cc/D4SY-HGAS (quoting University spokesman Tom Hardy: "There's a recognition by trustees that the Chief tradition has ended; we're not going back there").

**ANSWER:**

The University admits only that (i) on or around 2007, the University ceased use of the "Chief Illiniwek" character at University athletic competitions; (ii) the perma.cc/4V5V-MKRC URL links to a document entitled "*Chief Illiniwek Performs Last Dance Amid Continued Controversy*," by Craig Chamberlain, ILL. NEWS BUREAU (Mar. 1, 2007), which document speaks for itself; (iii) the perma.cc/PZQ8-QEF8 URL links to a document entitled "*UI Retains Trademark Rights to Chief Illiniwek Imagery*," by Sharita Forrest, ILL. NEWS BUREAU (Apr. 5, 2007), which document speaks for itself; (iv) the perma.cc/3DL6-F9DD URL links to a document entitled "*UIUC Chancellor: Chief Illiniwek's Retirement is Permanent*," by Jim Meadows, ILL. PUB. RADIO (Feb. 26, 2013), which document speaks for itself; (v) the perma.cc/8HZA-UVTD URL links to a document entitled "*University of Illinois Leader Says Mascot Panel Will Not Be Picking Chief Illiniwek Replacement*," CAPITAL GAZETTE (Nov. 30, 2018), which document speaks for itself; (vi) the perma.cc/D4SY-HGAS URL links to a document entitled "*2 UI Trustees Visited Peoria Tribe's New Chief*," by Julie Wurth, THE NEWS-GAZETTE, which document speaks for itself.  The University denies the remaining allegations of Paragraph 15.

16.    By way of the foregoing conduct, the University formally, expressly, and publicly abandoned whatever trademark rights it may have had in the Chief Illiniwek design; such actualized abandonment was and is impressed upon the relevant consuming public, who understand that, as a consequence of such abandonment, the Chief Illiniwek design does not and cannot function as a symbol of the University as a source or sponsor of goods or services, or of the University's endorsement of or affiliation with the source of goods or services.

**ANSWER:**

Denied.

17.    In addition or in the alternative, the University has or had not used the Chief Illiniwek design in connection with the goods for which it is registered for a period exceeding three years and has or had no legitimate intent to resume use of the alleged mark in association with the goods for which it is registered in Class 025.

**ANSWER:**

Denied.

18.     Consequently, the Chief Illiniwek design that is the subject of the '024 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

## RESPONSE TO COUNT II
## Cancellation of Registration No. 2,232,024
## (Fraudulent Procurement of 2009 Renewal)

19.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth herein.

20.     On or about March 10, 2009, two years following the University's express abandonment of the Chief Illiniwek design, the University submitted a combined Section 8 and 9 Declaration of Use in Commerce and Application for Renewal of the '024 Registration. The declaration, which Walter K. Knorr, the then-Comptroller, Vice President, and Chief Financial Officer of the University signed under oath, stated that the University is the owner of trademark rights in the Chief Illiniwek design and the Chief Illiniwek design is "in use in commerce on or in connection with the … goods or services listed in the existing registration"—*i.e.*, goods in Class 025.

**ANSWER:**

The University admits that (i) on or about March 10, 2009 the University submitted to the USPTO a combined Sections 8 and 9 Declaration of Use in Commerce and Application for renewal of the '024 Registration, (ii) a declaration was signed under oath by Walter K. Knorr, Comptroller, Vice President, and Chief Financial Officer of the University stated that the University is the owner of trademark rights in the '024 Registration and that the '024 trademark was, as of the date of the declaration "in use in commerce on or in connection with the … goods

or services listed in the existing registration"—*i.e.*, goods in Class 025. The University denies

the remaining allegations of Paragraph 20.

21.     Such representations were false. On information and belief, the University and Mr. Knorr knew at the time the combined Section 8 and 9 Declaration was submitted that just two years prior it had expressly, formally, and publicly disclaimed whatever trademark rights it might have had in the Chief Illiniwek design, that it was not currently using the mark in commerce, that it could not validly claim any trademark rights in the Chief Illiniwek design, and that it could not renew a registration for the Chief Illiniwek design that the USPTO issued prior to said abandonment.

**ANSWER:**

Denied.

22.     Additionally, in support of the Section 8 and 9 Declaration, the University submitted as a purported specimen of use in commerce a pixelated, electronic mock-up of a t-shirt, which is shown below:



The pixelated Chief Illiniwek design appearing on this purported specimen of use in commerce is shown in greater detail below:



**ANSWER:**

The University admits only that, in support of its Sections 8 and 9 Declaration, the University submitted to the USPTO as its specimen of use in commerce an image of a long-sleeved

t-shirt which demonstrated use in commerce of the '024 trademark by the University or a licensee thereof. The University specifically denies the allegation that the image was "a pixelated, electronic mock-up." The University denies the remaining allegations of Paragraph 22.

23. The University, through Mr. Knorr, declared that the foregoing specimen was a genuine specimen "showing the mark as used in commerce on or in connection with" an item in Class 025.

**ANSWER**:

Admitted.

24. On information and belief, the University knew that the purported specimen of use in commerce submitted to the USPTO in connection with the 2009 renewal of the '024 Registration was an electronic mock-up of a product, and that such product did not, in fact, exist and had not been sold in U.S. commerce at the time the University executed the declaration of use.

**ANSWER:**

Denied.

25. On information and belief, the University intentionally made these false statements in order to defraud the USPTO for the purpose of renewing the '024 Registration.

**ANSWER:**

Denied.

26. The USPTO relied on the material misrepresentations made in the combined Section 8 and 9 Declaration when accepting the University's renewal of the '024 Registration on March 19, 2009.

**ANSWER:**

The University admits only that the '024 Registration was renewed following the University's submission of the combined Sections 8 and 9 Declaration on or about March 19, 2009. The University denies the remaining allegations of Paragraph 26.

27. As a result of the University's fraudulent procurement of renewal of the '024 Registration, said Registration is subject to cancellation pursuant to Sections 14(3) and 33(b)(1) of the Lanham Act, 15 U.S.C. §§ 1064(3), 1115(b)(1).

**ANSWER:**

Denied.

## RESPONSE TO COUNT III
### Cancellation of Registration No. 2,232,024
**(Fraudulent Procurement of 2019 Renewal)**

28.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

29.     On or about March 7, 2019, the University submitted a combined Section 8 and 9 Declaration of Use in Commerce and Application for Renewal of the '024 Registration. The declaration was signed under oath by Avijit Ghosh, the University's then-Comptroller, and Nathan Hoffman, the then-Director of the University's Office of Technology Management.

**ANSWER:**

Admitted that, on March 11, 2019, the University submitted a combined Section 8 and 9

Declaration of Use in Commerce and Application for Renewal of the '024 Registration and that

the declaration was signed under oath Avijit Ghosh, the University's then-Comptroller, and

Nathan Hoffman, the Director of the University's Office of Technology Management.   The

University denies the remaining allegations of Paragraph 29.

30.     The declaration states that the University is the owner of trademark rights in the Chief Illiniwek design. This representation was false. On information and belief, the University knew at the time it submitted the combined Section 8 and 9 Declaration that it was not currently using the mark in commerce, that it had expressly, formally, and publicly disclaimed whatever trademark rights it might have had in the Chief Illiniwek design, that it could not validly claim any trademark rights in the Chief Illiniwek design, and that it could not renew a registration for the Chief Illiniwek design that the USPTO issued prior to said abandonment.

**ANSWER:**

The University admits only that the declaration states that the University is the owner of

the '024 Registration.  The University denies the remaining allegations of Paragraph 30.

11

31.     On information and belief, the University intentionally made this false statement in order to defraud the USPTO for the purpose of renewing the '024 Registration.

**ANSWER:**

Denied.

32.     The USPTO relied on the material misrepresentations made in the combined Section 8 and 9 Declaration when accepting the University's renewal of the '024 Registration on April 12, 2019.

**ANSWER:**

The University admits only that the '024 Registration was renewed following the

University's submission of the combined Sections 8 and 9 Declaration on or about March 7, 2019.

The University denies the remaining allegations of Paragraph 32.

33.     As a result of the University's fraudulent procurement of renewal of the '024 Registration, said Registration is subject to cancellation pursuant to Sections 14(3) and 33(b)(1) of the Lanham Act, 15 U.S.C. §§ 1064(3), 1115(b)(1).

**ANSWER:**

Denied.

**RESPONSE TO COUNT IV**
**Cancellation of Registration No. 2,232,024**
**(Abandonment: Merely Ornamental / Failure to Function)**

34.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

35.     The University's printing, if any, of the Chief Illiniwek design on the described Class 025 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the Chief Illiniwek design appears on any of the registered goods in Class 025, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and/or other merchandise, and does not serve to identify the University as the source of the goods.

**ANSWER:**

Denied.

36.     For example, below is the Chief Illiniwek design as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO in connection with the 2019 renewal of the '024 Registration. On information and belief, consumers perceive such printing of the Chief Illiniwek design, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



**ANSWER:**

The University admits only that the t-shirt and cap images copied in Paragraph 36 appear to be black & white versions of images extracted from the University's specimen of use submitted to the USPTO (in color) in connection with the 2019 Section 8 and 9 Declaration filed with respect to the '024 Registration.  The University denies the remaining allegations of Paragraph 36.

37.     The overall commercial impression of the Chief Illiniwek design is purely ornamental or merely a decorative feature as to goods in Class 025; the Chief Illiniwek design does not identify or distinguish the University's goods from those of others and, therefore, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '024 Registration is subject to cancellation on that basis.

**ANSWER:**

Denied.

38.     In addition and in the alternative, the Chief Illiniwek design has solely been used in a purely decorative and merely ornamental manner for a period exceeding three years and the University has no intent to resume use of the Chief Illiniwek design in a source-identifying manner, if any such use ever occurred. Consequently, the Chief Illiniwek design that is the subject of the

'024 Registration has been abandoned by way of merely ornamental use and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

**RESPONSE TO COUNT V**
**Cancellation of Registration No. 3,692,259**
**(Abandonment: Nonuse)**

39.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

40.     The University obtained the '259 Registration for the below stylized ILLINOIS design by filing Application Serial No. 77/695,312 on March 19, 2009. The USPTO issued the '259 Registration on October 6, 2009.



**ANSWER:**

Admitted.

41.     As of the date of this pleading, the '259 Registration covers the following goods in Class 025: Clothing, namely, adult and children's jackets, and vests, men's shirts, sport shirts, ties, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts.

**ANSWER:**

Admitted.

42.     The '259 Registration also covers the following goods in Class 028: Basketballs, foam basketballs, footballs, foam footballs, stuffed toys, animals, dolls, golf bags, golf head covers, golf balls, Christmas tree ornaments, and Christmas stockings.

**ANSWER:**

Admitted.

43.     The '259 Registration previously covered educational services in Class 041. However, the University expressly abandoned that portion of the '259 Registration when it submitted a combined Section 8 and 15 Declaration of Use and Incontestability on October 5, 2015.

**ANSWER:**

The University admits only that, on October 5, 2015, when it submitted its combined

Section 8 and 15 Declaration of Use and Incontestability for the '259 Registration, the University

did not include the Class 41 services.  The University denies the remaining allegations of Paragraph

43.

44.     On information and belief, the University has never used the design shown in the '259 Registration as a trademark or indication of source for any goods, but if such use had ever occurred, the University ceased printing and ceased using the alleged mark shown in the '259 Registration for a period exceeding three years and had no intent to resume use of such alleged mark as a public identifier, or as an indicator of origin, for the goods described in the '259 Registration.

**ANSWER:**

Denied.

45.     Consequently, the alleged mark that is the subject of the '259 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

**RESPONSE TO COUNT VI**
**Cancellation of Registration No. 3,692,259**
**(Abandonment: Merely Ornamental / Failure to Function)**

46.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

15

The University incorporates its responses to all preceding paragraphs as if fully set forth herein.

47.     The University's printing, if any, of the design shown in the '259 Registration on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '259 Registration appears on any of the registered goods in Class 025 and Class 028, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

**ANSWER:**

Denied.

48.     For example, below is the alleged mark that is the subject of the '259 Registration as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the design shown in the '259 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



**ANSWER:**

The University admits only that the t-shirt and football ornament images copied in Paragraph 48 appear to be black & white versions of images extracted from the University's specimens of use submitted to the USPTO (in color) in connection with the 2019 Section 8 and 9 Declaration filed with respect to the '259 registration. The University denies the remaining allegations of Paragraph 48.

49.     The overall commercial impression of the design shown in the '259 Registration is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the design shown in the '259 Registration does not identify or distinguish the University's goods

from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '259 Registration is subject to cancellation on that basis.

**ANSWER:**

    Denied.

    50.    In addition and in the alternative, the design shown in the '259 Registration has solely been used in a purely decorative and merely ornamental manner for a period exceeding three years and the University has no intent to resume use of the design shown in the '259 Registration in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in the '259 Registration has been abandoned by way of merely ornamental use and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

    Denied.

**RESPONSE TO COUNT VII**
**<u>Cancellation of Registration No. 1,836,231</u>**
**(Abandonment: Nonuse)**

    51.    Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

    The University incorporates its responses to all preceding paragraphs as if fully set forth herein.

    52.    The University obtained the '231 Registration for the below design by filing Application Serial No. 74/298,176 on July 27, 1992. The USPTO issued the '231 Registration on May 10, 1994.



**ANSWER:**

    Admitted.

53.     As of the date of this pleading, the '231 Registration covers the following goods in Class 025: Shirts.

**ANSWER:**

Admitted.

54.     The '231 Registration previously covered additional goods in Class 025. However, the University expressly abandoned that portion of the '231 Registration when it submitted a combined Section 8 and 15 Declaration of Use and Application for Renewal on October 28, 2014.

**ANSWER:**

The University admits only that, on October 28, 2014 it submitted a combined Sections 8

and 9 Declaration of Use and Application for Renewal of the '231 Registration and, in said

declaration, it indicated that the filing did not cover any goods in Class 25 other than "shirts."

The University denies the remaining allegations of Paragraph 54.

55.     On information and belief, the University has never used the design shown in the '231 Registration as a trademark or indication of source for any goods or service, but if such use had ever occurred, the University ceased printing and ceased using the alleged mark shown in the '231 Registration for a period exceeding three years and had no intent to resume use of such alleged mark as a public identifier, or as an indicator of origin, for the goods described in the '231 Registration.

**ANSWER:**

Denied.

56.     Consequently, the alleged mark that is the subject of the '231 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

**RESPONSE TO COUNT VIII**
**Cancellation of Registration No. 1,836,231**
**(Abandonment: Merely Ornamental / Failure to Function)**

57.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

58.     The University's printing, if any, of the design shown in the '231 Registration on the described Class 025 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '231 Registration appears on the registered goods in Class 025, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel, and does not serve to identify the University as the source of the apparel.

**ANSWER:**

Denied.

59.     For example, below is the alleged mark that is the subject of the '231 Registration as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the design shown in the '231 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



**ANSWER:**

The University admits only that the darker of the t-shirt images copied in Paragraph 59

appears to be a black & white version of an image extracted from the University's specimens of

use submitted to the USPTO (in color) in connection with the 2014 Section 8 and 9 Declaration

filed with respect to the '231 Registration.  The University denies the remaining allegations of

Paragraph 59.

60.     The overall commercial impression of the design shown in the '231 Registration is
purely ornamental or merely a decorative feature as to goods in Class 025; the design shown in the
'231 Registration does not identify or distinguish the University's goods from those of others and,
as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act,
15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '231 Registration is subject to cancellation on that
basis.

**ANSWER:**

Denied.

61.     In addition and in the alternative, the design shown in the '231 Registration has
solely been used in a purely decorative and merely ornamental manner for a period exceeding three
years and the University has no intent to resume use of the design shown in the '231 Registration
in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in
the '231 Registration has been abandoned by way of merely ornamental use and, therefore, said
registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15
U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

### RESPONSE TO COUNT IX
### Partial Cancellation of Registration No. 2,230,527
### (Abandonment: Merely Ornamental / Failure to Function)

62.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated
verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

63.     The University obtained the '527 Registration for the alleged mark FIGHTING
ILLINI by filing Application Serial No. 75/415,478 on January 8, 1998. The USPTO issued the
'527 Registration on March 9, 1999.

**ANSWER:**

Admitted.

64.     As of the date of this pleading, the '527 Registration covers the following goods in
Class 025: Clothing, namely, aprons, adult and children's jackets, men's shirts, sport shirts, ties,
night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves,

sweaters, ponchos, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands.

**ANSWER:**

Admitted.

65.     The '527 Registration also covers the following goods in Class 028: basketballs, foam basketballs, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings.

**ANSWER:**

Admitted.

66.     The '527 Registration also covers the following services in Class 041: Educational services, namely, conducting collegiate athletic exhibitions and games.

**ANSWER:**

Admitted.

67.     The University's printing, if any, of the alleged mark FIGHTING ILLINI on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the alleged mark FIGHTING ILLINI appears on any of the registered goods in Class 025 and Class 028, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

**ANSWER:**

Denied.

68.     For example, below is the alleged mark FIGHTING ILLINI as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the



alleged mark FIGHTING ILLINI, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.

**ANSWER:**

The University admits only that images copied in Paragraph 68 appear to be black & white versions of images submitted to the USPTO (in color) as specimens of use in connection with the 2019 Section 8 and 9 Declaration filed with respect to the '478 registration. The University denies the remaining allegations of Paragraph 59.

69. The overall commercial impression of the alleged mark FIGHTING ILLINI is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the alleged mark FIGHTING ILLINI does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '527 Registration is subject to cancellation with respect to Class 025 and Class 028 on that basis.

**ANSWER:**

Denied.

70. In addition and in the alternative, the alleged mark FIGHTING ILLINI has solely been used in a purely decorative and merely ornamental manner with respect to goods in Class 025 and Class 028 for a period exceeding three years and the University has no intent to resume use of the alleged mark FIGHTING ILLINI in a source-identifying manner, if any such use ever occurred. Consequently, the alleged mark FIGHTING ILLINI has been abandoned by way of merely ornamental use and, therefore, the '527 Registration is subject to cancellation with respect to Class 025 and Class 028 pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

### RESPONSE TO COUNT X
### Partial Cancellation of Registration No. 2,315,363
### (Abandonment: Merely Ornamental / Failure to Function)

71. Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

**ANSWER:**

The University incorporates its responses to all preceding paragraphs as if fully set forth

herein.

72.     The University obtained the '363 Registration for the below stylized "I" design by filing Application Serial No. 75/415,479 on January 8, 1998. The USPTO issued the '363 Registration on February 8, 2000.



**ANSWER:**

Admitted.

73.     As of the date of this pleading, the '363 Registration covers the following goods in Class 025: Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands.

**ANSWER:**

Admitted.

74.     The '363 Registration also covers the following goods in Class 028: Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings.

**ANSWER:**

Admitted.

75.     The '363 Registration also covers the following services in Class 041: Educational services, namely, conducting collegiate athletic exhibitions and games.

**ANSWER:**

Admitted.

76.     The University's printing, if any, of the design shown in the '363 Registration on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '363 Registration appears on any of the registered goods in Class 025 and Class 028, it is used and

would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

**ANSWER:**

Denied.

77.    For example, below is the design shown in the '363 Registration as shown in a merely ornamental and non-source-indicative manner on purported examples of use the University pleaded in its operative Complaint. ECF 38 ¶ 20. On information and belief, consumers perceive such printing of the design shown in the '363 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



**ANSWER:**

The University admits only that the images copied in Paragraph 77 appear to have been reproduced from Paragraph 20 of the Second Amended Complaint.  The University denies the remaining allegations of Paragraph 77.

78.    The overall commercial impression of the design shown in the '363 Registration is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the design shown in the '363 Registration does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '363 Registration is subject to cancellation with respect to Class 025 and Class 028 on that basis.

**ANSWER:**

Denied.

79.    In addition and in the alternative, the design shown in the '363 Registration has solely been used in a purely decorative and merely ornamental manner with respect to goods in Class 025 and Class 028 for a period exceeding three years and the University has no intent to

resume use of the design shown in the '363 Registration in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in the '363 Registration has been abandoned by way of merely ornamental use and, therefore, the '363 Registration is subject to cancellation with respect to Class 025 and Class 028 pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**ANSWER:**

Denied.

## RESPONSE TO RELIEF REQUESTED

The University denies that Vintage Brand is entitled to any relief in this action.

## AFFIRMATIVE DEFENSES

Pursuant to Fed. R. Civ. P. 8(c), the University hereby states its affirmative defenses to Vintage Brand's counterclaims. The University expressly reserves each and every negative defense and demands strict proof of each element of each counterclaim. The University further expressly reserves each and every applicable negative defense or avoidance to any affirmative defense raised by Vintage Brand.

### FIRST AFFIRMATIVE DEFENSE
### Prior, Continuous Use
### [Affirmative Defense to Counterclaim Count I]

1. Even assuming, *arguendo*, Vintage Brand is able to establish that any of University's 2007 statements recited in Count I of Vintage Brand's Counterclaims constituted "actualized abandonment" of the '024 Registration or that the University ceased use of the mark that is the subject of the '024 Registration for any period of time, the University has made continuous use of the '024 mark in commerce since well prior to Vintage Brand's commencement of use.

2. As such, any counterclaim for abandonment would be futile given that, under any possible factual scenario, the University is the senior user and possesses superior rights to those of Vintage Brand.

## SECOND AFFIRMATIVE DEFENSE
### Unavailability of Merely Ornamental / Failure to Function Defense ('024 Registration)
### [Affirmative Defense to Counterclaim Count IV]

3.     The '024 Registration was registered on March 16, 1999.

4.     On March 14, 2005, the University submitted a Combined Sections 8 and 15 Declaration of Use and Incontestability of the '024 Registration, which affirmed, as required under 15 U.S.C. § 1065, that (i) the mark had been continuously used in commerce in connection with the goods and/or services stated in the registration for five consecutive years after the date of registration and was still in use in commerce in connection with those goods and/or services; and (ii) there had been no final decision adverse to the University's claim of ownership of the mark on the goods or services for which it was registered or the University's right to register the mark or to keep the mark on the register; and (iii) there is no proceeding involving said rights in the United States Patent and Trademark Office or in a court and not finally disposed of.

5.     Said declaration was accepted and acknowledged by the United States Patent and Trademark Office on May 4, 2005.

6.     As such, the '024 Mark is incontestable under 15 U.S.C. § 1065.

7.     "Merely ornamental / failure to function" is not an available ground for cancellation of an incontestable trademark, such as the '024 Registration.

8.     Vintage Brand's alternate formulation of its Count IV counterclaim (see Counterclaim Paragraph 38) is likewise precluded as a ground for cancellation of the '024 Registration as it is merely a restatement of the unavailable "merely ornamental / failure to function" ground.

## THIRD AFFIRMATIVE DEFENSE
### Unavailability of Merely Ornamental / Failure to Function Defense ('259 Registration)
### [Affirmative Defense to Counterclaim Count VI]

9.  The '259 Registration was registered on October 6, 2009.

10.  On October 5, 2015, the University submitted a Combined Sections 8 and 15 Declaration of Use and Incontestability of the '259 Registration, which affirmed, as required under 15 U.S.C. § 1065, that (i) the mark had been continuously used in commerce in connection with the goods and/or services stated in the registration for five consecutive years after the date of registration and was still in use in commerce in connection with those goods and/or services; and (ii) there had been no final decision adverse to the University's claim of ownership of the mark on the goods or services for which it was registered or the University's right to register the mark or to keep the mark on the register; and (iii) there is no proceeding involving said rights in the United States Patent and Trademark Office or in a court and not finally disposed of.

11.  Said declaration was accepted and acknowledged by the United States Patent and Trademark Office on November 27, 2015.

12.  As such, the '259 Registration is incontestable under 15 U.S.C. § 1065.

13.  "Merely ornamental / failure to function" is not an available ground for cancellation of an incontestable trademark, such as the '259 Registration.

14.  Vintage Brand's alternate formulation of its Count VI counterclaim (*see* Counterclaim Paragraph 50) is likewise precluded as a ground for cancellation of the '259 Registration as it is merely a restatement of the unavailable "merely ornamental / failure to function" ground.

### FOURTH AFFIRMATIVE DEFENSE
### Unavailability of Merely Ornamental / Failure to Function Defense ('231 Registration)
### [Affirmative Defense to Counterclaim Count VIII]

15.  The '231 Registration was registered on May 10, 1994.

16.     On July 7, 1999, the University submitted a Combined Section 8 and 15 Declaration of Use and Incontestability of the '231 Registration, which affirmed, as required under 15 U.S.C. § 1065, that (i) the mark had been continuously used in commerce in connection with the goods and/or services stated in the registration for five consecutive years after the date of registration and was still in use in commerce in connection with those goods and/or services; and (ii) there had been no final decision adverse to the University's claim of ownership of the mark on the goods or services for which it was registered or the University's right to register the mark or to keep the mark on the register; and (iii) there is no proceeding involving said rights in the United States Patent and Trademark Office or in a court and not finally disposed of.

17.     Said declaration was accepted and acknowledged by the United States Patent and Trademark Office on October 21, 1999.

18.     As such, the '231 Registration is incontestable under 15 U.S.C. § 1065.

19.     "Merely ornamental / failure to function" is not an available ground for cancellation of an incontestable trademark, such as the '231 Registration.

20.     Vintage Brand's alternate formulation of its Count IV counterclaim (*see* Counterclaim Paragraph 61) is likewise precluded as a ground for cancellation of the '231 Registration as it is merely a restatement of the unavailable "merely ornamental / failure to function" ground.

### FIFTH AFFIRMATIVE DEFENSE
### Unavailability of Merely Ornamental / Failure to Function Defense ('527 Registration)
### [Affirmative Defense to Counterclaim Count IX]

21.     The '527 Registration was registered on March 9, 1999.

22.     On March 7, 2005, the University submitted a Combined Section 8 and 15 Declaration of Use and Incontestability of the '527 Registration, which affirmed, as required under

28

15 U.S.C. § 1065, that (i) the mark had been continuously used in commerce in connection with the goods and/or services stated in the registration for five consecutive years after the date of registration and was still in use in commerce in connection with those goods and/or services; and (ii) there had been no final decision adverse to the University's claim of ownership of the mark on the goods or services for which it was registered or the University's right to register the mark or to keep the mark on the register; and (iii) there is no proceeding involving said rights in the United States Patent and Trademark Office or in a court and not finally disposed of.

23.     Said declaration was accepted and acknowledged by the United States Patent and Trademark Office on March 28, 2005.

24.     As such, the '527 Registration is incontestable under 15 U.S.C. § 1065.

25.     "Merely ornamental / failure to function" is not an available ground for cancellation of an incontestable trademark, such as the '527 Registration.

26.     Vintage Brand's alternate formulation of its Count IV counterclaim (*see* Counterclaim Paragraph 70) is likewise precluded as a ground for cancellation of the '527 Registration as it is merely a restatement of the unavailable "merely ornamental / failure to function" ground.

### SIXTH AFFIRMATIVE DEFENSE
**Unavailability of Merely Ornamental / Failure to Function Defense ('363 Registration)**
**[Affirmative Defense to Counterclaim Count X]**

27.     The '363 Registration was registered on February 8, 2000.

28.     On February 7, 2006, the University submitted a Combined Section 8 and 15 Declaration of Use and Incontestability of the '363 Registration, which affirmed, as required under 15 U.S.C. § 1065, that (i) the mark had been continuously used in commerce in connection with the goods and/or services stated in the registration for five consecutive years after the date of

registration and was still in use in commerce in connection with those goods and/or services; and (ii) there had been no final decision adverse to the University's claim of ownership of the mark on the goods or services for which it was registered or the University's right to register the mark or to keep the mark on the register; and (iii) there is no proceeding involving said rights in the United States Patent and Trademark Office or in a court and not finally disposed of.

29.     Said declaration was accepted and acknowledged by the United States Patent and Trademark Office on March 28, 2005.

30.     As such, the '363 Registration is incontestable under 15 U.S.C. § 1065.

31.     "Merely ornamental / failure to function" is not an available ground for cancellation of an incontestable trademark, such as the '363 Registration.

32.     Vintage Brand's alternate formulation of its Count IV counterclaim (*see* Counterclaim Paragraph 79) is likewise precluded as a grounds for cancellation of the '363 Registration as it is merely a restatement of the unavailable "merely ornamental / failure to function" ground.

DATED: May 6, 2022                              Respectfully Submitted,

                                                **THE BOARD OF TRUSTEES FOR THE**
                                                **UNIVERSITY OF ILLINOIS**

                                                By: */s/ Jeffrey J. Catalano*
                                                    One of Its Attorneys

                                                Jeffrey J. Catalano
                                                Andrew L. Goldstein
                                                D. Richard Self
                                                FREEBORN & PETERS LLP
                                                311 South Wacker Drive, Suite 3000
                                                Chicago, IL 60606
                                                jcatalano@freeborn.com
                                                agoldstein@freeborn.com
                                                rself@freeborn.com
                                                (312) 360-6000

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on the date shown below he caused the foregoing document to be electronically filed with the Clerk for the U.S. District Court for the Northern District of Illinois, which will send a notification and a copy of the document to all counsel of record.

Dated: May 6, 2022                                   /s/ *Jeffrey J. Catalano*