**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | Case No. 1:21-cv-06546 |
| Plaintiff / Counterclaim-Defendant, | The Honorable John R. Blakey JURY TRIAL DEMANDED |
| v. | |
| VINTAGE BRAND, LLC, | |
| Defendant / Counterclaim-Plaintiff. | |

**DEFENDANT VINTAGE BRAND, LLC'S FIRST AMENDED ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO
PLAINTIFF THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'
SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Defendant and Counterclaim-Plaintiff Vintage Brand, LLC ("Vintage Brand" or "Defendant") hereby responds to Plaintiff and Counterclaim-Defendant the Board of Trustees of the University of Illinois' Second Amended Complaint ("Complaint") (ECF 38) as follows:

**SUMMARY**

1.  Plaintiff, the Board of Trustees of the University of Illinois, is a body politic and corporate established under the constitution and laws of the State of Illinois, to govern and exercise authority over its system of universities, including the University of Illinois Urbana-Champaign, which is located in Urbana, Illinois.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 1 of the Complaint and therefore denies them.

2. The University brings this lawsuit to protect the substantial goodwill that the University has developed in its trademarks and to stop Vintage's scheme of unfair competition that is being waged through online sales of infringing goods that are undermining and injuring the University's rights and reputations.

ANSWER: Defendant admits that the Board of Trustees of the University of Illinois ("the University") filed this lawsuit, but denies the remaining allegations in Paragraph No. 2 of the Complaint.

3. Vintage's unlawful scheme includes Vintage's infringing use of the University's trademarks on goods Vintage sells in competition with the University and without a license.

ANSWER: Paragraph No. 3 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

4. In furthering its illegal activity, Vintage is continually changing the products for sale on its website and, as of the filing of this Complaint, has removed many of the products using the University's trademarks and intellectual property discussed herein from easy public view. Nonetheless, at least some infringing products are still available for purchase on the Vintage website. Regardless, the University is entitled to an injunction preventing Vintage from ongoing and future efforts to manufacture, distribute, sell or offer for sale products bearing the University's trademarks and intellectual property discussed herein and to recover damages for completed sales. Thus, the University seeks to enjoin Vintage from ongoing and future use of the University's trademarks and to obtain damages from Vintage's infringing sales up to the date of trial, and to obtain appropriate declaratory relief.

ANSWER: Defendant denies that it has engaged in any "illegal activity," but admits that it removed products displaying alleged "marks" at issue in this lawsuit. Defendant admits that the University's Complaint seeks certain relief, but denies that there is any basis for the relief sought.

5.     Unless Vintage is enjoined from infringing on the University's intellectual property, Vintage's unauthorized use will continue to cause consumer confusion and irreparably harm the University.

ANSWER: Paragraph No. 5 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

## JURISDICTION AND VENUE

6.     Plaintiff's claims are for trademark infringement arising under the Lanham Act 15 U.S.C. §1114, *et seq*., counterfeiting under Lanham Act § 35, 15 U.S.C. § 1117(b) and (c), false designation and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125, *et seq*., , unfair or deceptive acts under the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 505, *et seg*., and unfair competition under common law.

ANSWER: Defendant admits the University has raised the claims as described in Paragraph No. 6, but denies that there is any basis for the claims alleged.

7.     The Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202, 15 U.S.C. §1121, and Fed. R. Civ. P. 13. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 13 because those claims are so related to Plaintiffs' claims that they form part of the same case or controversy and derive from a common nucleus of facts.

ANSWER: Defendant admits that this Court can exercise subject matter jurisdiction over the claims asserted in the Complaint.

057538.023 \ 28822840v1

8.      The Court has personal jurisdiction over the Defendant because, on information and belief, Defendant carries on substantial and continuous business activities in the State of Illinois and throughout the country through its interactive e-commerce websites which target consumers nationwide and specifically in this judicial district. Upon information and belief, Defendant has sold and delivered products to residents in this District and targets internet marketing campaigns that display advertisements and links to consumers in this judicial district, seeking to entice consumers to access its websites and buy Defendant's infringing and misleading products. Particular to the University's claims, Defendant's website also features goods with the University's name, color schemes, and/or logos, all of which are registered as trademarks with the United States Patent and Trademark Office and/or protected by the common law. For its part, the University operates throughout the State of Illinois, including within this judicial district.

ANSWER: Defendant admits that it is subject to specific personal jurisdiction in this Court for the claims the University alleges in the Complaint and that Defendant has sold and delivered products to residents in this District. Defendant denies that it "targets internet marketing campaigns" to consumers in the district, and further denies the remaining allegations in Paragraph No. 8.

9.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because Defendant is subject to personal jurisdiction in this judicial district.

ANSWER: Defendant admits that this Court is a proper venue for the claims the University raised in the Complaint.

057538.023 \ 28822840v1

## THE PARTIES

10.     The University is a body politic and corporate established under the constitution and laws of the State of Illinois, to govern and exercise authority over the University of Illinois Urbana-Champaign, located in Urbana, Illinois, among other universities.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 10 of the Complaint.

11.     Upon information and belief, Defendant Vintage is a limited liability company organized under the laws of the State of Washington and it maintains a principal place of business in Seattle, Washington. Upon information and belief, Vintage's primary business is selling apparel nationally, over the internet, using a fully interactive e-commerce site that processes transactions nationally and with customers located in the State of Illinois.

ANSWER: Defendant admits that it is a limited liability company organized under the laws of the State of Washington, and that its principal place of business is in Seattle, Washington. Defendant admits that it owns and operates a website that sells apparel, but denies the remaining allegations in Paragraph No. 11.

## THE UNIVERSITY OF ILLINOIS

12.     Since its founding in 1867, the University of Illinois Urbana-Champaign has earned a reputation as a world-class leader in research, teaching, and public engagement and is a highly respected institution of higher learning. It is home to over 51,000 students, including students from all 50 states and over 100 countries, and it offers nearly 5,000 courses in more than 150 fields of study, awarding about 7,000 new degrees each spring.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 12 of the Complaint and therefore denies them.

13.     The University of Illinois Urbana-Champaign's 21 Division I men's and women's sports teams are admired by fans all over the United States and around the world, and the teams have long and storied athletics history with rich tradition. From the start of the Illini baseball team in 1879, to the formation of the UI Athletic Association in 1890, as a charter member of the Big Ten Conference in 1896 and as a charter member of the National Collegiate Athletic Association ("NCAA") in 1906, the University of Illinois has been a national leader in collegiate athletics. Illinois' Fighting Illini teams have won 18 NCAA Championships, five football national championships and 248 Big Ten titles, the second-most in conference history. The University of Illinois has advanced to five NCAA Men's Basketball Final Fours. University of Illinois Urbana-Champaign alumni athletes have won 31 Olympic medals while competing for 17 countries in 25 Olympic Games.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 13 of the Complaint and therefore denies them.

14.     The University of Illinois participates in collegiate athletic competition at the very highest level. It is, and has been since the conference's inception in 1896, part of the Big Ten Conference ("Big Ten"). The Big Ten is one of the "Power Five" conferences along with the Atlantic Coast Conference, the Big 12 Conference, the Pac-12 Conference, and the Southeastern Conference, which means that the participants in those conferences compete at the pinnacle of collegiate athletics and routinely play in athletic contests live in front of tens or hundreds of thousands of spectators while simultaneously being broadcast on television throughout the world.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph No. 14 of the Complaint and therefore denies them.

15.     The University has adopted, makes extensive and continual use of, and owns rights

057538.023 \ 28822840v1

in a number of marks in connection with the University's educational services, athletic events, and related services, and a wide variety of goods and services, including apparel, memorabilia, and other merchandise.

ANSWER: Paragraph No. 15 states a number of legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

16. The University owns federal registrations for many of its marks, including but not limited to the "University Registered Marks" identified below:

| Mark | Reg. No. | Recited Goods/Services |
|---|---|---|
|  ILLINOIS | 5,095,860 | Clothing, namely, jackets, vests, ties, caps, sport caps, visor caps, ski caps, hats, scarves, sweaters, gloves, mittens, ladies' and men's and children's t-shirts, men's shirts, ladies' tops, jerseys, sport shirts, golf shirts, basketball shirts, football shirts, sweatshirts, shorts, socks, warm-up suits, baby sleepers, baby shirts, in Class 25. |
|  ILLINOIS | 3,692,259 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wrist-bands and sweatbands, in Class 25; |
|  | 1,836,231 | Belts, caps, hats, shoes, athletic jerseys, sweatshirts, sweatpants, sweatjackets, warm-up suits, shirts, shorts, jackets, infant wear, sleepwear, pants, rainwear, knitwear; namely, gloves, mittens, scarves, and socks, in Class 25 |
| FIGHTING ILLINI | 2,230,527 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands |

7

| | | |
|---|---|---|
| | | and sweatbands, in Class 25;<br><br>Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings. in Class 28;<br><br>Educational services, namely, conducting collegiate athletic exhibitions and games, in Class 41. |
|  | 2,232,024 | Clothing, namely, jackets and vests, men's shirts, sport shirts, ladies' tops, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies and men's and children's t-shirts, football shirts, adult and children's warm-up suits, baby sleepers, baby shirts, tennis hats, in Class 25. |
|  | 2,315,363 | Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands<br>and sweatbands, in Class 25;<br>Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings, in Class 28;<br><br>Educational services, namely, conducting collegiate athletic exhibitions and games, in Class 41 |

ANSWER: Defendant admits that the USPTO lists the University as the owner of federal trademark registrations as identified in Paragraph No. 16. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 16 of the Complaint and therefore denies them.

17.     The University's use of the University Registered Marks is not limited to the goods and services recited in their respective registrations. The University has made years, and in some cases decades, or widespread use of the University Registered Marks in connection with

educational services, athletic events and related services, and a wide variety of promotional goods and other merchandise and, and as a result of said use, owns common law rights in the University Registered Marks in connection with those promotional goods and other merchandise.

ANSWER: Paragraph No. 17 states a number of legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

18.     In addition, based on years, and in some cases decades, of widespread use, the University owns common law rights in the following marks, referred to herein collectively as the "University Common Law Marks": (i) UNIVERSITY OF ILLINOIS, (ii) THE UNIVERSITY OF ILLINOIS, (iii) ILLINI, and (iv) the color scheme of orange and blue used in connection with other indicia of the University, including "University of Illinois," "Illinois," "Illini," "Urbana-Champaign," "I" in block lettering, and any of the University Registered Marks defined above. The University owns common law rights in the University Common Law Marks in connection with educational services, athletic events and related services, apparel and a wide variety of promotional goods and other merchandise.

ANSWER: Paragraph No. 18 states a number of legal conclusions to which no response is required. To the extent one is required, Defendant denies the same. Defendant further denies that the University owns rights to any purported University Common Law Marks.

19.     For decades, the University's color scheme has been orange and blue.  For example, a prospective student or consumer accessing the University's website at illinois.edu, is first shown a "landing" page like the one below, emblazoned with blue and orange colors, student-band members clad in the same colors and depictions of some of the University Registered Marks and University Common Law Marks:



ANSWER: Defendant is without knowledge or information sufficient to form a belief about the truth of the allegation that the image and description of the image in Paragraph No. 19 of the Complaint is consistent with the website specified, as the current image at *illinois.edu* is

057538.023 \ 28822840v1

different. Defendant further denies that the University owns rights to any purported University Common Law Marks.

20.     Below are examples of merchandising being sold or offered for sale by the University or its authorized licensees bearing some of the University Registered Marks and University Law Marks:



ANSWER: Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations regarding merchandise sold by the University or its licensees, and therefore denies them. Defendant further denies that the University owns rights to any purported University Common Law Marks.

21.     Below are examples of "vintage" apparel that is presently being sold by authorized licensees of the University and that utilizes the Chief Logo:

 

ANSWER: Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations regarding apparel sold by the University's licenses, and therefore denies the allegations in Paragraph No. 21 .

22.     As a result of the University's extensive advertising and promotion of goods and services over many years using the University Registered Marks and University Common Law Marks, and through favorable industry acceptance and recognitions, the relevant consuming public has come to recognize and identify the University as the source of top-quality goods and services offered in connection with those trademarks.

ANSWER: Paragraph No. 22 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same. Defendant further denies any suggestion that the "consuming public" identifies the University as a source for apparel goods.

23.     Accordingly, the University Registered Marks and University Common Law Marks are assets of incalculable value that are closely identified with the University and that indicate to the world that the University is the source of the high-quality goods and services it provides. The University has built extensive goodwill in the University Registered Marks and University Common Law Marks.

ANSWER: Paragraph No. 23 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same. Defendant further denies that the University owns rights to any purported University Common Law Marks, and that the University is perceived as a source for apparel goods.

## THE ALLEGED INCONTESTABILITY AND VALUE OF THE UNIVERSITY REGISTERED MARKS AND COMMON LAW MARKS

24.     Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), the University's federal registration certificates are *prima facie* evidence of the validity of the University Registered

Marks as well as Plaintiff's ownership and exclusive right to use these marks in connection with the identified goods and service

ANSWER: Paragraph No. 24 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

25.     Each of the University Registered Marks have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065. *See* Exhibits A through F.

ANSWER: Paragraph No. 25 states a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

26.     The University consistently and prominently uses and displays the University Registered Marks and University Common Law Marks in connection with its educational services, athletic events, clothing and apparel, merchandise, and related goods and services.

ANSWER: Denied.

27.     As a result of the extensive sales, advertising, and promotion of the University's goods and services under the University Registered Marks and University Common Law Marks, and through widespread consumer acceptance and recognition, the consuming public have come to recognize the University Registered Marks and University Common Law Marks as identifying sources of high-quality products and services offered by the University.

ANSWER: Denied.

28.     Many of the University Registered Marks and University Common Law Marks have been in use and associated with the University and its goods and services for decades. To honor that history, the University even promotes use of certain of its trademarks on products that are termed "vintage" and that are sold separately and in addition to the University's contemporary designs and styles. (*See, e.g*., Paragraph 21.)

ANSWER: Denied.

## DEFENDANT'S ALLEGEDLY INFRINGING ACTIVITIES

29.     Defendant operates a website at the domain www.vintagebrand.com.

ANSWER: Admitted.

30.     Through its website, Defendant offers a wide variety of apparel and other goods featuring college team names, color schemes, insignias, mascots, logos, and other trademarks and source identifiers.

ANSWER: Defendant admits that it offers a variety of apparel and other goods featuring text or design elements, but denies that it sells products in connection with or using purported trademarks or source identifiers.

31.     Among the goods offered on Defendant's site, are t-shirts, sweatshirts, pennants, drinkware, posters, magnets, and puzzles, among many other items.

ANSWER: Admitted.

32.     Consumers can find team-branded merchandise by navigating a series of dropdown menus, or by performing a keyword search for the team/school whose gear they are searching for.

ANSWER: Defendant admits that Paragraph No. 32 describes methods of navigating Vintage Brand's website, but denies that the products displayed are "team-branded."

33.     In its drop-down menu displaying "COLLEGE" items, for example, Defendant has listed "Illinois Fighting Illini," clearly conveying to consumers Defendant's intention to associate the apparel offered for sale as being associated with the University and associated with its "Fighting Illini" athletic teams.

ANSWER: Defendant admits that when the webpage was active, Defendant listed "Illinois Fighting Illini" under the "College" drop down menu. Defendant denies the remaining allegations in Paragraph No. 33.

34.     Further, under the drop-down menu which displayed "COLLEGE" items, after clicking on "VIEW ALL," Defendant prominently displayed a T-shirt with a registered trademark of the University (with four T-shirts bearing other university logos flanking), highlighting that merchandise with Illinois Marks is a centerpiece of Defendant's business as shown below:



When a consumer clicked on the "Illinois Fighting Illini" link, they were shown a page displaying merchandise with University of Illinois branding as shown below:



ANSWER: Defendant admits that Paragraph No. 34 describes a method of navigating Vintage Brand's website, and that Paragraph No. 34 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies the remaining allegations in Paragraph No. 34.

35. Moreover, if a consumer searched for "Illinois Fighting Illini," they were taken to a page displaying for sale items like those shown below:



ANSWER: Defendant admits that Paragraph No. 35 describes a method of navigating Vintage Brand's website, and that Paragraph No. 35 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies the remaining allegations in Paragraph No. 35.

36.     The categories of products that were offered on Defendant's website are infringingly emblazoned with the University of Illinois' University Registered Marks and University Common Law Marks are extensive, including what Defendant identifies as "T-SHIRTS," "SWEATSHIRTS," "HATS," "KOOZIES," "DRINKWARE," "COASTERS," "POSTERS," "MAGNETS," "CANVAS," "ALUMINUM WALL ART," "SOCKS," "PUZZLES," and "CUTTING BOARDS."

ANSWER: Defendant admits that Paragraph No. 36 lists a number of products offered for sale by the Vintage Brand website. The remaining allegations in Paragraph No. 36 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

37.     Defendant purports to offer goods featuring "vintage" sports branding reproduced from historic memorabilia. Instead, Defendant's products are simply designed and sold by Defendant using the University Registered Marks and University Common Law Marks or marks that are virtually identical to those of the University and that are a deliberate attempt to take advantage of the tremendous goodwill associated with the University, the University Registered Marks and University Common Law Marks.

ANSWER: Defendant admits that its Vintage Brand website offers "vintage" products, but denies the remaining allegations in Paragraph No. 37 of the Complaint.

38.     Defendant was rather bold about its intention to profit on the University's goodwill, claiming, "The Vintage Brand Illinois Fighting Illini Shop at VintageBrand.com is the ultimate destination for die-hard Illinois Fighting Illini fans and alumni." Further, Defendant identifies the designs depicted on the pages as "ILLINOIS FIGHTING ILLINI VINTAGE DESIGNS."

ANSWER: Defendant admits the text reproduced in Paragraph No. 38 previously appeared on the Vintage Brand website, but denies the remaining allegations in Paragraph No. 38.

39.     Representative examples of infringing goods using the University Registered Marks and University Common Law Marks displayed on Vintage's website include:

057538.023 \ 28822840v1



ANSWER: Defendant admits that Paragraph No. 39 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported marks belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark.

40.     Defendant has used the University Registered Marks and University Common Law Marks on their apparel and other merchandise by creating various designs that copy, embody, or

otherwise mimic the University Registered Marks and University Common Law Marks including at least the designs depicted in paragraph 34-35 and 39 above and paragraphs 47 through 51 below (collectively, the "Infringing Designs").

ANSWER: Defendant denies that it created "various designs" or any purported marks belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 40 state legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

41.     In no instance has Defendant ever sought or received any license to manufacture, distribute, sell, or offer for sale any of the University Registered Marks and University Common Law Marks in connection with the merchandise that Defendant is marketing and selling at its website. The University does not itself produce the items sold on Defendant's website.

ANSWER: Defendant admits that it is not a licensee of the University, and that the University does not produce the items sold on the Vintage Brand website. Defendant denies any remaining allegations in Paragraph No. 41.

42.     Thus, Defendant markets and sells without authorization a wide variety of apparel and other items featuring designs that are identical to the University Registered Marks and University Common Law Marks.

ANSWER: Defendant admits that it markets and sells a wide variety of apparel and other items featuring design and text elements, but denies the remaining allegations in Paragraph No. 42.

43.     Long after many of the University Registered Marks and University Common Law Marks had achieved secondary meaning in the United States and Illinois, Defendant began using

these copied and/or confusingly similar marks in an obvious attempt to ride on the coattails of University and to improperly trade on the goodwill that the University has worked so hard to build.

ANSWER: Paragraph No. 43 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

44.   Defendant has used the Infringing Designs in U.S. commerce by marketing and selling their merchandise, including on and through Defendant's website.

ANSWER: Defendant denies that Vintage Brand's display of public domain works of art constitutes "use" of any text or design as a trademark. Defendant admits that it sells merchandise in U.S. commerce through its Vintage Brand website, but denies that any goods made available on the Vintage Brand website feature, much less "infringe" upon purported marks belonging to the University.

45.   Upon information and belief, Defendant had full knowledge of the University's rights in the University Registered Marks and University Common Law Marks from the very first use of the Infringing Designs.

ANSWER: Defendant denies that the University owns trademark rights asserted in Paragraph No. 45, and denies the remaining allegations in Paragraph No. 45.

46.   The Infringing Designs are direct copies of the University Registered Marks and University Common Law Marks and/or are confusingly similar when viewed, thus giving a commercial impression that is also confusingly similar

ANSWER: The allegations in Paragraph No. 46 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

47.     For example, Defendant infringingly uses the words "Fighting Illini" that are the subject of a valid and incontestable federal trademark registration as discussed above on the following Infringing Designs:



The "Fighting Illini" trademark was also used throughout the Defendant's website to describe at least dozens, if not hundreds, of items that Defendant was clearly intending to sell as products associated with the University.

ANSWER: Defendant admits that Paragraph No. 47 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 47 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

48.     Moreover, by way of further example, Defendant infringingly used a design that is confusingly similar to the University's official seal which is protected by a valid and incontestable federal trademark registration, as demonstrated below:

| University Registered Mark | Examples of Infringing Designs |
|---|---|
|  | |

ANSWER: Defendant admits that Paragraph No. 48 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 48 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

49. Moreover, by way of further example, Defendant infringingly used the Chief Logo which is also protected by a valid and incontestable federal trademark registration on a variety of Infringing Designs available for sale at its website as depicted below:



| University Registered Mark | Examples of Infringing Designs |
|---|---|

ANSWER: Defendant admits that Paragraph No. 49 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 49 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

50.     Moreover, by way of further example, Defendant infringingly uses the stylized word "Illinois" which is protected by a valid and incontestable federal trademark registration on Infringing Designs available for sale at its website as depicted below:

24

| University Registered Mark | Examples of Infringing Designs |
|---|---|
|  |  |

ANSWER: Defendant admits that Paragraph No. 50 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 50 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

51.     Moreover, by way of further example, Defendant infringingly uses the block-letter I logo, which is protected by a valid and incontestable federal trademark registration on Infringing Designs available for sale at is website as depicted below:

| University Registered Mark | Examples of Infringing Designs |
|:--------------------------:|:------------------------------:|
|  | |

ANSWER: Defendant admits that Paragraph No. 51 shows electronic mock-ups of goods featuring historic public domain works of art that incidentally contain within them text or design elements to which the University claims trademark rights, and that such images were previously displayed on the Vintage Brand website. Defendant denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. The remaining allegations in Paragraph No. 51 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

52.     The goods offered for sale by Defendant using the Infringing Designs are directly competitive with the goods offered by the University under its University Registered Marks and University Common Law Marks.

ANSWER: Denied.

53.     In the time since the University originally filed its Complaint in this matter, Defendant has at least twice changed the items offered for sale on its website. As of February 8,

2022, a review of the website revealed that Defendant had apparently hidden from easy visibility many of the "Fighting Illini" labeled items and many of the Infringing Designs discussed herein. However, a listing of infringing products remains available for sale and can be accessed by performing a simple Internet search and directly loading the website vintagebrand.com/l/college/t/illinois-fighting-illini. To date, Defendant has not had any contact with the University about why it has made those changes and/or whether it will agree to never again sell any of the Infringing Designs. Thus, the University believes that Defendant will, at any moment, revive those previous offerings on their website. As a result, the University has the same need now as it did at the time it initially filed its Complaint for the injunctive relief it seeks herein

ANSWER: Defendant admits that it removed products displaying marks at issue in this lawsuit from the Vintage Brand website, and admits that the University's Complaint seeks certain relief, but denies that there is any basis for the relief sought. Defendant denies the remaining allegations in Paragraph No. 53.

54.     The University never authorized Defendant's use of the University Registered Marks and University Common Law Marks in the Infringing Designs.

ANSWER: Defendant admits that it is not a licensee of the University, but denies that authorization is required.

55.     The Infringing Designs are either direct copies or so closely resemble the University Registered Marks and University Common Law Marks that, when used in connection with Defendant's goods, they are highly likely to cause confusion, mistake, or deception amongst consumers and others in the relevant trade. Consumers will likely be led to believe that Defendant's goods are in some way associated with, connected with, licensed by, approved by, sponsored by, and/or authorized by the University, when that is not the case.

057538.023 \ 28822840v1

ANSWER: Denied.

56.     Many of Defendant's Infringing Designs are counterfeits of the University Registered Marks, as defined in 15 U.S.C. § 1116(d).

ANSWER: The allegations in Paragraph No. 56 state a legal conclusion to which no response is required. To the extent one is required, Defendant denies the same.

**COUNT I**
**Federal Trademark Infringement**
**(Lanham Act § 32(1), 15 U.S.C. § 1114(1))**

57.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above as if fully stated herein.

ANSWER: Defendant incorporates by reference the foregoing responses to Paragraph Nos. 1 through 56 of the Complaint.

58.     The University holds valid and existing federal Trademark Registration No.  5,095,860 for the mark and has continuously used the mark since at least April 2014.

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 5,095,860. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 58 of the Complaint and therefore denies them.

59.     The University holds valid and existing federal Trademark Registration No. 3,692,259 for the mark and has continuously used the mark since at least December 1994.

057538.023 \ 28822840v1

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 3,692,259 for a stylized word. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 59 of the Complaint and therefore denies them.

60. The University holds valid and existing federal Trademark Registration No. 1,836,231 for the mark "UNIVERSITY OF ILLINOIS LEARNING & LABOR CHARTERED



1867 AGRICULTURE SCIENCE & ART" and Design, as shown here                    and has continuously used the marks since at least September 1991.

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 1,836,231. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 60 of the Complaint and therefore denies them.

61. The University holds valid and existing federal Trademark Registration No. 2,230,527 for "FIGHTING ILLINI" and has continuously used the mark since at least December 1994.

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 2,230,527. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 61 of the Complaint and therefore denies them.

057538.023 \ 28822840v1

62. The University holds valid and exiting federal Trademark Registration No. No.



2,232,024 for the design and has continuously used the mark since at least 1994.

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 2,232,024. Defendant denies the remaining allegations in Paragraph No. 62.

63. The University holds valid and existing federal Trademark Registration No. 2,315,363 for and has continuously used the mark since at least December 1994.

ANSWER: Defendant admits that the USPTO lists the University as the owner of Trademark Registration No. 2,315,363. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph No. 63 of the Complaint and therefore denies them.

64. The University owns, has the exclusive right to use, and actively uses the University Registered Marks has not, in any way, authorized Defendant to use or to exploit the University Registered Marks.

ANSWER: Defendant admits that it is not a licensee of the University, but denies that authorization is required. To the extent a response is required for the remaining allegations in Paragraph No. 64, Defendant denies them.

65. Defendant has marketed, advertised, and sold products incorporating the University Registered Marks or confusingly similar variations thereof through Defendant's website accessible throughout the United States and in the State of Illinois.

ANSWER: Defendant admits that it sells merchandise in U.S. commerce through its Vintage Brand website, but denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and denies the remaining allegations in Paragraph No. 65.

66.     As described by way of example above in paragraphs 34 through 40 and 47 through Defendant has manufactured, distributed, sold or offered for sale products described with or displaying the University Registered Marks as if those products were licensed by or otherwise associated with the University.

ANSWER: Defendant admits that it sells merchandise in U.S. commerce through its Vintage Brand website, but denies that any goods made available on the Vintage Brand website feature any purported "marks" belonging to the University, and denies the remaining allegations in Paragraph No. 66.

67.     Defendant's acts have caused, or are likely to cause, confusion, mistake, or deception, and it is likely that the public will mistakenly believe that Defendant's apparel and other products have their source or origin with the University or that Defendant's products are in some manner approved by, associated with, sponsored by, or connected with the University, all in violation of 15 U.S.C. §§ 1114, *et. seq.*

ANSWER: Denied.

68.     Upon information and belief, Defendant's actions were undertaken willfully, and with the intent to confuse and deceive the public

ANSWER: Denied.

69.     Defendant's acts have damaged, or may damage, the University's business, reputation and goodwill and have interfered, or may interfere, with the University's use of the University Registered Marks.

ANSWER: Paragraph No. 69 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

70.     Defendant has caused, and unless enjoined will continue to cause, irreparable harm and injury to the University for which there is no adequate remedy at law.

ANSWER: Paragraph No. 70 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

71.     Pursuant to 15 U.S.C. § 1116, Defendant should be preliminarily and, upon final hearing permanently, enjoined from using the Infringing Designs or variants thereof, or otherwise infringing on the University Registered Marks.

ANSWER: Defendant denies that the University is entitled to the relief sought.

72.     Pursuant to 15 U.S.C. § 1117, the University is entitled to recover from Defendant:

    a.      All profits received by Defendant from its use of the Infringing Designs;

    b.      Actual damages sustained by the University due to Defendant's use of the Infringing Designs;

    c.      Exceptional damages (including trebling) for intentional infringement, bad faith, and willful conduct, equal to three times profits or damages, whichever is greater;

    d.      An order, pursuant to 15 U.S.C. § 1118 compelling Defendant to destroy all materials bearing the Infringing Designs or variants thereof;

    d.      All costs of this action, including attorneys' fees, interest; and/or

    e.      statutory damages under 15 U.S.C. §§ 1114, 1116, and 1117.

ANSWER: Defendant denies that the University is entitled to the relief sought.

## COUNT II
### Trademark Counterfeiting
### (Lanham Act § 35, 15 U.S.C. § 1117(b) and (c))

73.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

ANSWER: Defendant incorporates by reference the foregoing responses to Paragraph Nos. 1 through 72 of the Complaint.

74.     The University owns valid and existing rights in and to the University Registered Marks.

ANSWER: Defendant admits that the USPTO lists the University as the owner of the trademarks referenced as the "University Registered Marks." The remaining allegations in Paragraph No. 74 state legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

75.     As described by way of example above in paragraphs 34 through 40 and 47 through 51 above, Defendant uses in interstate commerce marks that are identical with and/or substantially indistinguishable from the University Registered Marks in connection with Defendant's promotion and sale of Defendant's Infringing Design

ANSWER: Defendant denies that any goods made available on the Vintage Brand website feature any purported marks belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. Defendant denies the remaining allegations in Paragraph No. 75.

76.     Defendant's unauthorized use of the Infringing Designs is likely to cause confusion and mistake among consumers and others as to the source, origin or sponsorship of Defendant's products sold using the Infringing Designs.

057538.023 \ 28822840v1

ANSWER: Denied.

77.     Defendant's unauthorized use of the Infringing Designs is a knowing, willful, and intentional violation of the University's rights

ANSWER: Denied.

78.     Defendant intentionally used the Infringing Designs knowing that the Infringing Designs are counterfeits of the Illinois Marks.

ANSWER: Denied.

79.     Defendant's conduct constitutes willful counterfeiting pursuant to 15 U.S.C. §§ 1116(d) and 1117(b) and (c).

ANSWER: Denied.

80.     By reason of the foregoing, the University is entitled to recover Defendant's profits and/or actual damages, trebled, Plaintiff's attorneys' fees and costs, and prejudgment interest, and/or statutory damages for each counterfeit mark or design used.

ANSWER: Defendant denies that the University is entitled to the relief sought.

**COUNT III**
**False Designation of Origin**
**(Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

81.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

ANSWER: Defendant incorporates by reference the foregoing responses to Paragraph Nos. 1 through 80 of the Complaint.

82.     The University uses and owns the University Registered Marks and University Common Law Marks in connection with the sale of, among other things, apparel and a wide variety of promotional goods and other and merchandise. The University Registered Marks and University

Common Law Marks are inherently distinctive and/or have acquired secondary meaning as a designation of source for the University

ANSWER: Denied.

83. In connection with its promotion and sale of its own apparel, promotional goods and other merchandise, Defendant uses in interstate commerce the Infringing Designs.

ANSWER: Defendant denies that any goods made available on the Vintage Brand website feature any purported marks belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. Defendant denies the remaining allegations in Paragraph No. 83.

84. Defendant's use of the Infringing Designs is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship or affiliation of the parties' products.

ANSWER: Denied.

85. Consumers seeing apparel and merchandise sold displaying the Infringing Designs in the marketplace are likely to believe those products are sponsored by, associated with, authorized by, or otherwise affiliated with the University, when they are not.

ANSWER: Denied.

86. Defendant's use of the Infringing Designs constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

ANSWER: Paragraph No. 86 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

87. Defendant's use of the Infringing Designs is a knowing, willful, and intentional violation of the University's rights.

ANSWER: Denied.

88.     Defendant's acts of false designation of origin, unless restrained, will cause great and irreparable harm to Plaintiffs and to the significant goodwill represented by the University Registered Marks and University Common Law Marks, in an amount that cannot be ascertained at this time, leaving Plaintiff with no adequate remedy at law.

ANSWER: Paragraph No. 88 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

89.     By reason of the foregoing, the University is entitled to injunctive relief against Defendant, restraining it from any further acts of false designation of origin, and are also entitled to recovery of Defendant's profits, actual damages, enhanced profits and damages (including trebling), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

ANSWER: Defendant denies that the University is entitled to the relief sought.

<u>**COUNT IV**</u>
**Violation of Illinois' Uniform Deceptive Trade Practices Act**
**(815 ILCS 510, *et seq.*)**

90.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

ANSWER: Defendant incorporates by reference the foregoing responses to Paragraph Nos. 1 through 89 of the Complaint.

91.     The University owns, has the exclusive right to use, and actively uses the University Registered Marks and University Common Law Marks in the United States and in Illinois.

ANSWER: Denied.

92.     As alleged herein, Defendant has, without consent or authorization from the University, used the Infringing Designs on its clothing and apparel and other products that are sold in interstate commerce, including in the State of Illinois.

ANSWER: Defendant admits that it sells merchandise in U.S. commerce through its Vintage Brand website, but denies that any goods made available on the Vintage Brand website feature any purported marks belonging to the University. Defendant denies the remaining allegations in Paragraph No. 92.

93.     The similarity between Defendant's products displaying the Infringing Designs and the University Registered Marks and the University Common Law Marks is so great as to be likely to cause confusion, mistake, or deception as to the source or origin of Defendant's products in that the public and other are likely to believe that Defendant's products are manufactured by, promoted by, sponsored by, approved by, licensed by, affiliated with, or in some other way connected with the University and its renowned University Registered Marks and University Common Law Marks.

ANSWER: Denied.

94.     Defendant's unauthorized use of the University Registered Marks and University Common Law Marks in the Infringing Designs is confusingly similar to the University's distinct and well-known University Registered Marks and University Common Law Marks constitutes deceptive trade practices under 815 ILCS 510/1, *et seq.* because Defendant is (a) passing off goods as those of another, (b) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods, (c) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another, (d) representing that its goods have sponsorship, approval, characteristics, benefits, or quantities that

they do not have or that Defendant has a sponsorship, approval, status, affiliation, or connection that it does not have, and/or (e) otherwise engaging in conduct which creates a likelihood of confusion or misunderstanding.

ANSWER: Paragraph No. 94 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

95.     Defendant's deceptive trade practices also occurred primarily and substantially within the state of Illinois because (a) the University resides in the State of Illinois; (b) Defendant's deception targeted customers located in the State of Illinois such that, on information and belief, Defendant's sales of the Infringing Designs were concentrated to customers residing in the State of Illinois relative to customers located in other states; (c) Defendant communicated with those customers in the State of Illinois via the www.vintagebrand.com website; and (d) the University suffered damages in the State of Illinois

ANSWER: Paragraph No. 95 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

96.     Due to the unfair nature of Defendant's actions, Defendant has caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to the University, for which the University has no adequate remedy at law.

ANSWER: Paragraph No. 96 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

97.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the University Registered Marks and University Common Law Marks, thus entitling the University to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and attorneys' fees.

ANSWER: Defendant denies that the University is entitled to the relief sought. Defendant also denies the remaining allegations in Paragraph No. 97.

## COUNT V
## Unfair Competition

98.     The University re-alleges and incorporates herein by reference paragraphs 1-56 above.

ANSWER: Defendant incorporates by reference the foregoing responses to Paragraph Nos. 1 through 97 of the Complaint.

99.     Defendant's use of Infringing Designs and the solicitation of customers in competition with the University deprive the University of sales of merchandise or other prospects. In addition, Defendant's actions are likely to cause confusion, to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant with the University, or as to the origin, sponsorship, or approval of Defendant's products or commercial activities by the University.

ANSWER: Defendant denies that any goods made available on the Vintage Brand website feature any purported marks belonging to the University, and further denies that Vintage Brand's display of such public domain works of art constitutes "use" of any text or design as a trademark. Defendant denies the remaining allegations in Paragraph No. 99.

100.    Defendant's conduct constitutes unfair competition in violation of Illinois common law.

ANSWER: Paragraph No. 100 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

101.    Defendant's unfair competition occurred primarily and substantially within the state of Illinois because (a) the University resides in the State of Illinois; (b) Defendant's deception

targeted customers located in the State of Illinois such that, on information and belief, Defendant's sales of the Infringing Designs were concentrated to customers residing in the State of Illinois relative to customers located in other states; (c) Defendant communicated with those customers in the State of Illinois via the www.vintagebrand.com website; and (d) the University suffered damages in the State of Illinois.

ANSWER: Paragraph No. 101 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

102. Defendant's acts of common law unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

ANSWER: Paragraph No. 102 states legal conclusions to which no response is required. To the extent one is required, Defendant denies the same.

103. Defendant's willful and deliberate acts, as described above, have caused injury and damage to the University, and have caused irreparable injury to the University's goodwill and reputation and, unless enjoined, will cause further irreparable injury leaving the University with no adequate remedy at law

ANSWER: Defendant denies that the University is entitled to the relief sought. Defendant denies the remaining allegations in Paragraph No 103. \\

057538.023 \ 28822840v1

## AFFIRMATIVE DEFENSES

Defendant Vintage Brand incorporates by reference the foregoing responses to Paragraph Nos. 1 through 103 of the Complaint. Defendant states the following affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff the University. Defendant also reserves the right to assert such additional defenses that may become known through the course of discovery and or applicable during the course of this action.

## FIRST AFFIRMATIVE DEFENSE

On information and belief, the University knew and was aware of the matters alleged in the Complaint for an unreasonably long period of time prior to commencement of this litigation. First, Defendant has taken all the actions admitted in its Answer to the Complaint and all actions have been open, transparent, and available 24/7 for public view and comment. Second, on information and belief, the University's licensing agent, Collegiate Licensing Company, informed the University of Defendant's alleged conduct and urged the University to initiate a lawsuit long before the University commenced this litigation. The University has no reasonable excuse for this delay, and Defendant has been prejudiced as it has conducted such open and transparent business for a number of years prior to the University's belated decision to initiate litigation. Thus, the University's claims are barred and/or limited by the doctrine of laches.

## SECOND AFFIRMATIVE DEFENSE

As set forth in the following Counterclaims, the University has actively represented to the public, including Defendant, that it abandoned the Chief Illiniwek design, which is the subject of Registration No. 2,232,024. As such, the University affirmatively informed all members of the public that it would take no steps to enforce any alleged "rights" in the Chief Illiniwek design. Defendant has reasonably relied on such public representations to its detriment; specifically, Defendant has been prejudiced as it has conducted the actions admitted in its Answer to the

41

Complaint for a number of years while reasonably relying on the University's representations. Thus, the University's claims are barred and/or limited by the doctrine of acquiescence.

## THIRD AFFIRMATIVE DEFENSE

On information and belief, consumers purchase goods decorated with the text and designs shown in the Complaint purely because of their aesthetic appeal rather than any source-identifying function of the text and designs. As such, the University's claims are barred and/or limited by the doctrine of aesthetic functionality because preclusion of Defendant's ornamental application of the text and designs described in the Complaint to merchandise would put Defendant at a significant non-reputation-related disadvantage.

## FOURTH AFFIRMATIVE DEFENSE

The University's claims are barred and/or limited where Defendant's application of the text and designs described in the Complaint to merchandise is merely ornamental and does not engender the commercial impression of a source-identifying trademark.

## FIFTH AFFIRMATIVE DEFENSE

The University's claims are barred and/or limited because Defendant's display and printing of terms which are charged to be infringements constitute use other than as a trademark, of a term which is descriptive of and used fairly and in good faith to describe the goods of Defendant.

## SIXTH AFFIRMATIVE DEFENSE

The University's claims are barred and/or limited to the extent they rely on federal or state trademarks and/or registrations that have been abandoned, as set forth in the following Counterclaims.

## SEVENTH AFFIRMATIVE DEFENSE

The University's claims are barred and/or limited due to its failure to mitigate damages, including its failure to take any steps to reduce the amount of profit Defendant received as a result

of the allegedly infringing conduct, despite the University being on notice of such conduct for an unreasonably long period of time prior to commencing this litigation. Rather, the University has passively and knowingly allowed profits to accrue.

### EIGHTH AFFIRMATIVE DEFENSE

The University's claims are barred and/or limited because some or all of the alleged trademarks are not inherently distinctive and have not attained a secondary meaning for use in association with any goods, including apparel goods.

### NINTH AFFIRMATIVE DEFENSE

The University's claims are premised on Defendant's alleged reprinting of historic, public domain artwork appearing on tangible vintage memorabilia owned by Defendant. Some of this public domain artwork contains embedded within it text and designs to which the University claims current trademark rights. The University's claims are barred and/or limited to the extent they would interfere with Defendant's federal right to reproduce, make minor enhancements to, and print and distribute public domain artwork as ornamentation or decoration on merchandise.

### TENTH AFFIRMATIVE DEFENSE

Defendant's website allows consumers to customize and create vintage-themed works by applying historic works of art—some of which embed text and designs to which the University claims current trademark rights—to various products, including but not limited to canvases, magnets, and posters. Defendant allows consumers to customize products with such images in a creative effort to preserve and make available meaningful historic imagery.

The University's claims are barred and/or limited under the First Amendment to the United State Constitution. Defendant's use of historic works of art embed text and designs to which the University claims current trademark rights is (1) artistically relevant to the vintage-themed art that consumers can create on Defendant's website and (2) not explicitly misleading.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant's claims are barred and/or limited under the doctrine of "unclean hands" and/or fraudulent procurement under 11 U.S.C. § 1115(b)(1). By way of illustration, and subject to further development in the course of ongoing discovery, one of the alleged marks identified in the operative Complaint is the subject of Registration No. 2,232,024. But upon information and belief, the University expressly and publicly abandoned the use of this alleged mark for any goods/services and fraudulently procured renewal of the '024 Registration as set forth in the following Counterclaims. Discovery may reveal other instances of unclean hands and/or fraudulent procurement under 11 U.S.C. § 1115(b)(1). \\

## COUNTERCLAIM TO CANCEL FEDERAL REGISTRATIONS

Defendant and Counterclaim-Plaintiff Vintage Brand, LLC ("Vintage Brand") asserts as its counterclaims for cancellation of U.S. Federal Trademark Registration Nos. 3,692,259 (the " '259 Registration"), 1,836,231 (the " '231 Registration"), 2,230,527 (the " '527 Registration"), 2,232,024 (the "'024 Registration"), and 2,315,363 (the " '363 Registration") against Plaintiff and Counterclaim-Defendant the Board of Trustees of the University of Illinois (the "University"):

### The Parties

1.      Vintage Brand is a Washington limited liability company with a principal place of business at 5323 NE 42nd Street, Seattle, Washington 98105.

2.      In its Complaint, the University alleges that it is a body politic and corporate established under the constitution and laws of the State of Illinois located in Urbana, Illinois.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over Vintage Brand's counterclaims because they arise under 15 U.S.C. §§ 1119 and 1121 and 28 U.S.C. §§ 1331 and 1338, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367 because they are so related to the University's claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.      The University is domiciled in and transacted business giving rise to Vintage Brand's counterclaims in Illinois. Therefore, the Court has personal jurisdiction over the University.

5.      Vintage Brand will be damaged if the '259 Registration, '231 Registration, '527 Registration, '024 Registration, and '363 Registration continue to exist because the University has asserted alleged rights in said registrations and the alleged marks shown therein in its Complaint

057538.023 \ 28822840v1

and the registrations would be *prima facie* evidence of the validity of the alleged marks, of the University's ownership of the alleged marks, and of the University's exclusive right to use the alleged marks in commerce in connection with the goods described in such registrations, when in fact the University is not entitled to such rights.

**COUNT I**
**Cancellation of Registration No. 2,232,024**
**(Abandonment: Nonuse)**

6.      Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

7.      The University obtained the '024 Registration for the below Native American-inspired imagery (the "Chief Illiniwek design") by filing Application Serial No. 75/415,168 on January 8, 1998. The USPTO issued the '024 Registration on March 16, 1999.



8.      As of the date of this pleading, the '024 Registration covers the following goods in Class 025: Clothing, namely, jackets, and vests, men's shirts, sport shirts, ties, Ladies' tops, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies' and men's and children's t-shirts, football shirts, adult and children's warm-up suits, baby sleepers, baby shirts, tennis hats.

9.      Signs of protest regarding the University's use of the Chief Illiniwek design were documented as early as 1975, when a University yearbook contained a passage referring to the perspective that use of Chief Illiniwek as a mascot of the University "degrades the Indian and disgraces the white race by revealing an ignorance of tribal cultures." Louis Garippo, *The Chief Illiniwek Dialogue: Intent and Tradition vs. Reaction and History — A Report to the Board of*

*Trustees of the University of Illinois* (presented to the University in November 2000), perma.cc/Y34Y-ZSFE.[1]

10.     The University approved a resolution acknowledging the ongoing controversy regarding the use of the Chief Illiniwek design around January 12–13, 2000. *See* Board Meeting Minutes from January 12–13, perma.cc/9EMX-CQUP.

11.     Beginning in 2005, the National Collegiate Athletic Association ("NCAA") adopted a policy "prohibit[ing] NCAA colleges and universities from displaying hostile and abusive racial/ethnic/national origin mascots, nicknames or imagery" at the NCAA championships. NCAA News Release, *NCAA Executive Committee Issues Guidelines for Use of Native American Mascots at Championship Events* (August 5, 2005), perma.cc/MKS9-FXUX.

12.     The NCAA identified the University as one of 18 universities displaying prohibited Native American imagery, *id.*, and the University's men's tennis team was consequently prohibited from hosting the first round of the 2006 NCAA championships. Jason Finkelstein, *What the Sioux Should Do: Lanham Act Challenges in the Post-Harjo Era*, 26 CARDOZO ARTS & ENT. L.J. 301, 318 (2008) ("After losing its appeal to have its nickname removed from the 'hostile and abusive' list, the Illinois men's tennis team was prohibited from hosting the first round of the 2006 NCAA championships.").

13.     As a result of pressure from the public and sanctions imposed by the NCAA, the University expressly and publicly ceased all use of the Chief Illiniwek design in 2007. In a meeting on March 13, 2007, the University approved a resolution by which it formally abandoned the Chief Illiniwek design:

        Therefore, Be It Resolved:
        ....

---

[1] Audio of the presentation is available at perma.cc/FD9F-9TJT.

That the Board hereby directs the ***immediate conclusion to the use of Native American imagery as the symbol of the University of Illinois*** and its intercollegiate athletics along with the related regalia, logo, and the names "Chief Illiniwek" and "Chief," and the Board hereby directs the Chancellor of the Urbana-Champaign campus to manage the final disposition of these matters and report the decisions back to the Board and in so doing to remain in compliance with the NCAA policy,

Board Meeting Minutes from March 13, 2007, perma.cc/5PYS-KUUU (emphasis added); *see also* Sharita Forrest, *Board Takes Final Vote, Retires Chief Illiniwek*, ILL. NEWS BUREAU (Mar. 15, 2007), perma.cc/XS89-66H7 (reporting on the resolution).

14.     The University's abandonment of Chief Illiniwek as a mascot and its actualized cessation of use of any related imagery, including the Chief Illiniwek design, was and is well-recognized by the public, including members of the legal community. *See* Daniel McClurg, *Locker Room Politics: The Role of Sports Leagues in Shaping (Anti-)social Legislation*, 17 VA. SPORTS & ENT. L.J. 82, 87 (2017) ("[T]he University of Illinois refused to change its mascot from 'Chief Illiniwek' until it was not permitted to host the 2006 NCAA Tennis Championships. Thus, the NCAA policy effectively eliminated the use of discriminatory imagery aimed at Native Americans by its member institutions."); Laura Sigler, *The Saga Continues: The Redskins, Blackhorse, and the Future of Native American Trademarks in Sports*, 62 WAYNE L. REV. 73, 103 (2016) ("Illinois' Chief Illiniwek fell victim to the ban, and he was officially retired in 2007."); Nathaniel T. Noda, *Perpetuating Cultures: What Fan-Based Activities Can Teach Us About Intangible Cultural Property*, 44 CREIGHTON L. REV. 429, 437–38 (2011) ("The NCAA ultimately agreed with the latter group, ruling Chief Illiniwek 'an offensive use of Native American imagery,' and imposed sanctions on the University of Illinois that led to the university's retirement of the mascot."); Adam Epstein & Bridget Niland, *Exploring Ethical Issues and Examples by Using Sport*, 13 ATLANTIC L.J. 19, 44 (2011) ("The University of Illinois at Urbana-Champaign abandoned its use of *Chief Illiniwek* after the NCAA rejected its 2006 appeal that the mascot was neither *hostile* nor

*abusive.*"); Kristen A. Carpenter et al., *In Defense of Property*, 118 YALE L.J. 1022, 1106 (2009) ("One of the most marked examples was the decision of the University of Illinois to discontinue its use of Chief Illiniwek, the mascot for the Illinois Illini."); Spencer D. Kelly, *What's in A Name: The Controversy Surrounding the NCAA's Ban on College Nicknames and Mascots*, 5 WILLAMETTE SPORTS L.J. 17, 30 (2008) ("After careful consideration the school decided to retire Chief Illiniwek."); André Douglas Pond Cummings & Seth E. Harper, *Wide Right: Why the NCAA's Policy on the American Indian Mascot Issue Misses the Mark*, 9 U. MD. L.J. RACE, RELIGION, GENDER & CLASS 135, 174 (2009) ("[T]he NCAA required that the university not only retire Chief Illiniwek, but eliminate its logo which contained an elaborate portrait of a Native American chief in feathered headdress within an orange and blue circle.").

15.     Documented statements by University officials further evidence the abandonment of the Chief Illiniwek design. *See, e.g.*, Craig Chamberlain, *Chief Illiniwek Performs Last Dance Amid Continued Controversy*, ILL. NEWS BUREAU (Mar. 1, 2007), perma.cc/4V5V-MKRC (citing an announcement to retire the Chief Illiniwek design by the University's then-chair Lawrence C. Eppley"); Sharita Forrest, *UI Retains Trademark Rights to Chief Illiniwek Imagery*, ILL. NEWS BUREAU (Apr. 5, 2007), perma.cc/PZQ8-QEF8 ("Eppley's announcement of the decision to retire the symbol immediately made the UI eligible to host postseason events, but its continued removal from the sanction list would be provisional upon its **not using the name Chief Illiniwek and the related Native American imagery**, the NCAA said in a Feb. 15 letter." (emphasis added)); Jim Meadows, *UIUC Chancellor: Chief Illiniwek's Retirement is Permanent*, ILL. PUB. RADIO (Feb. 26, 2013), perma.cc/3DL6-F9DD (quoting the University's then-Chancellor: "The symbol of Chief Illiniwek has been part of our past ... but it is not coming back"); *University of Illinois Leader Says Mascot Panel Will Not Be Picking Chief Illiniwek Replacement*, CAPITAL GAZETTE (Nov. 30,

2018), perma.cc/8HZA-UVTD (quoting the University's current Chancellor: "We're saying very clearly that Chief Illiniwek is not coming back"); Julie Wurth, *2 UI Trustees Visited Peoria Tribe's New Chief*, THE NEWS-GAZETTE (June 27, 2019), perma.cc/D4SY-HGAS (quoting University spokesman Tom Hardy: "There's a recognition by trustees that the Chief tradition has ended; we're not going back there").

16.     By way of the foregoing conduct, the University formally, expressly, and publicly abandoned whatever trademark rights it may have had in the Chief Illiniwek design; such actualized abandonment was and is impressed upon the relevant consuming public, who understand that, as a consequence of such abandonment, the Chief Illiniwek design does not and cannot function as a symbol of the University as a source or sponsor of goods or services, or of the University's endorsement of or affiliation with the source of goods or services.

17.     In addition or in the alternative, the University has or had not used the Chief Illiniwek design in connection with the goods for which it is registered for a period exceeding three years and has or had no legitimate intent to resume use of the alleged mark in association with the goods for which it is registered in Class 025.

18.     Consequently, the Chief Illiniwek design that is the subject of the '024 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**COUNT II**
**Cancellation of Registration No. 2,232,024**
**(Fraudulent Procurement of 2009 Renewal)**

19.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

20.     On or about March 10, 2009, two years following the University's express abandonment of the Chief Illiniwek design, the University submitted a combined Section 8 and 9

Declaration of Use in Commerce and Application for Renewal of the '024 Registration. The declaration, which Walter K. Knorr, the  then-Comptroller, Vice President, and Chief Financial Officer of the University signed under oath, stated that the University is the owner of trademark rights in the Chief Illiniwek design and the Chief Illiniwek design is "in use in commerce on or in connection with the … goods or services listed in the existing registration"—*i.e.*, goods in Class 025.

21.     Such representations were false. On information and belief, the University and Mr. Knorr knew at the time the combined Section 8 and 9 Declaration was submitted that just two years prior it had expressly, formally, and publicly disclaimed whatever trademark rights it might have had in the Chief Illiniwek design, that it was not currently using the mark in commerce, that it could not validly claim any trademark rights in the Chief Illiniwek design, and that it could not renew a registration for the Chief Illiniwek design that the USPTO issued prior to said abandonment.

22.     Additionally, in support of the Section 8 and 9 Declaration, the University submitted as a purported specimen of use in commerce a pixelated, electronic mock-up of a t-shirt, which is shown below:



The pixelated Chief Illiniwek design appearing on this purported specimen of use in commerce is shown in greater detail below:

057538.023 \ 28822840v1



23.    The University, through Mr. Knorr, declared that the foregoing specimen was a genuine specimen "showing the mark as used in commerce on or in connection with" an item in Class 025.

24.    On information and belief, the University knew that the purported specimen of use in commerce submitted to the USPTO in connection with the 2009 renewal of the '024 Registration was an electronic mock-up of a product, and that such product did not, in fact, exist and had not been sold in U.S. commerce at the time the University executed the declaration of use.

25.    On information and belief, the University intentionally made these false statements in order to defraud the USPTO for the purpose of renewing the '024 Registration.

26.    The USPTO relied on the material misrepresentations made in the combined Section 8 and 9 Declaration when accepting the University's renewal of the '024 Registration on March 19, 2009.

27.    As a result of the University's fraudulent procurement of renewal of the '024 Registration, said Registration is subject to cancellation pursuant to Sections 14(3) and 33(b)(1) of the Lanham Act, 15 U.S.C. §§ 1064(3), 1115(b)(1).

**COUNT III**
**Cancellation of Registration No. 2,232,024**
**(Fraudulent Procurement of 2019 Renewal)**

28.    Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

057538.023 \ 28822840v1

29.     On or about March 7, 2019, the University submitted a combined Section 8 and 9 Declaration of Use in Commerce and Application for Renewal of the '024 Registration. The declaration was signed under oath by Avijit Ghosh, the University's then-Comptroller, and Nathan Hoffman, the then-Director of the University's Office of Technology Management.

30.     The declaration states that the University is the owner of trademark rights in the Chief Illiniwek design. This representation was false. On information and belief, the University knew at the time it submitted the combined Section 8 and 9 Declaration that it was not currently using the mark in commerce, that it had expressly, formally, and publicly disclaimed whatever trademark rights it might have had in the Chief Illiniwek design, that it could not validly claim any trademark rights in the Chief Illiniwek design, and that it could not renew a registration for the Chief Illiniwek design that the USPTO issued prior to said abandonment.

31.     On information and belief, the University intentionally made this false statement in order to defraud the USPTO for the purpose of renewing the '024 Registration.

32.     The USPTO relied on the material misrepresentations made in the combined Section 8 and 9 Declaration when accepting the University's renewal of the '024 Registration on April 12, 2019.

33.     As a result of the University's fraudulent procurement of renewal of the '024 Registration, said Registration is subject to cancellation pursuant to Sections 14(3) and 33(b)(1) of the Lanham Act, 15 U.S.C. §§ 1064(3), 1115(b)(1).

### COUNT IV
### Cancellation of Registration No. 2,232,024
### (Abandonment: Merely Ornamental / Failure to Function)

34.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

35.    The University's printing, if any, of the Chief Illiniwek design on the described Class 025 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the Chief Illiniwek design appears on any of the registered goods in Class 025, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and/or other merchandise, and does not serve to identify the University as the source of the goods.

36.    For example, below is the Chief Illiniwek design as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO in connection with the 2019 renewal of the '024 Registration. On information and belief, consumers perceive such printing of the Chief Illiniwek design, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



37.    The overall commercial impression of the Chief Illiniwek design is purely ornamental or merely a decorative feature as to goods in Class 025; the Chief Illiniwek design does not identify or distinguish the University's goods from those of others and, therefore, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '024 Registration is subject to cancellation on that basis.

38.    In addition and in the alternative, the Chief Illiniwek design has solely been used in a purely decorative and merely ornamental manner for a period exceeding three years and the

University has no intent to resume use of the Chief Illiniwek design in a source-identifying manner, if any such use ever occurred. Consequently, the Chief Illiniwek design that is the subject of the '024 Registration has been abandoned by way of merely ornamental use and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**COUNT V**
**Cancellation of Registration No. 3,692,259**
**(Abandonment: Nonuse)**

39. Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

40. The University obtained the '259 Registration for the below stylized ILLINOIS design by filing Application Serial No. 77/695,312 on March 19, 2009. The USPTO issued the '259 Registration on October 6, 2009.



41. As of the date of this pleading, the '259 Registration covers the following goods in Class 025: Clothing, namely, adult and children's jackets, and vests, men's shirts, sport shirts, ties, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts.

42. The '259 Registration also covers the following goods in Class 028: Basketballs, foam basketballs, footballs, foam footballs, stuffed toys, animals, dolls, golf bags, golf head covers, golf balls, Christmas tree ornaments, and Christmas stockings.

43. The '259 Registration previously covered educational services in Class 041. However, the University expressly abandoned that portion of the '259 Registration when it submitted a combined Section 8 and 15 Declaration of Use and Incontestability on October 5, 2015.

44. On information and belief, the University has never used the design shown in the '259 Registration as a trademark or indication of source for any goods, but if such use had ever occurred, the University ceased printing and ceased using the alleged mark shown in the '259 Registration for a period exceeding three years and had no intent to resume use of such alleged mark as a public identifier, or as an indicator of origin, for the goods described in the '259 Registration.

45. Consequently, the alleged mark that is the subject of the '259 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

## COUNT VI
### Cancellation of Registration No. 3,692,259
### (Abandonment: Merely Ornamental / Failure to Function)

46. Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

47. The University's printing, if any, of the design shown in the '259 Registration on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '259 Registration appears on any of the registered goods in Class 025 and Class 028, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

56

48.     For example, below is the alleged mark that is the subject of the '259 Registration as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the design shown in the '259 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



49.     The overall commercial impression of the design shown in the '259 Registration is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the design shown in the '259 Registration does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '259 Registration is subject to cancellation on that basis.

50.     In addition and in the alternative, the design shown in the '259 Registration has solely been used in a purely decorative and merely ornamental manner for a period exceeding three years and the University has no intent to resume use of the design shown in the '259 Registration in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in the '259 Registration has been abandoned by way of merely ornamental use and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**COUNT VII**
**<u>Cancellation of Registration No. 1,836,231</u>**
**(Abandonment: Nonuse)**

51.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

52.     The University obtained the '231 Registration for the below design by filing Application Serial No. 74/298,176 on July 27, 1992. The USPTO issued the '231 Registration on May 10, 1994.



53.     As of the date of this pleading, the '231 Registration covers the following goods in Class 025: Shirts.

54.     The '231 Registration previously covered additional goods in Class 025. However, the University expressly abandoned that portion of the '231 Registration when it submitted a combined Section 8 and 15 Declaration of Use and Application for Renewal on October 28, 2014.

55.     On information and belief, the University has never used the design shown in the '231 Registration as a trademark or indication of source for any goods or service, but if such use had ever occurred, the University ceased printing and ceased using the alleged mark shown in the '231 Registration for a period exceeding three years and had no intent to resume use of such alleged mark as a public identifier, or as an indicator of origin, for the goods described in the '231 Registration.

56.     Consequently, the alleged mark that is the subject of the '231 Registration has been abandoned and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

58

**COUNT VIII**
**Cancellation of Registration No. 1,836,231**
**(Abandonment: Merely Ornamental / Failure to Function)**

57.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

58.     The University's printing, if any, of the design shown in the '231 Registration on the described Class 025 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '231 Registration appears on the registered goods in Class 025, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel, and does not serve to identify the University as the source of the apparel.

59.     For example, below is the alleged mark that is the subject of the '231 Registration as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the design shown in the '231 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



60.     The overall commercial impression of the design shown in the '231 Registration is purely ornamental or merely a decorative feature as to goods in Class 025; the design shown in the

'231 Registration does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '231 Registration is subject to cancellation on that basis.

61.     In addition and in the alternative, the design shown in the '231 Registration has solely been used in a purely decorative and merely ornamental manner for a period exceeding three years and the University has no intent to resume use of the design shown in the '231 Registration in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in the '231 Registration has been abandoned by way of merely ornamental use and, therefore, said registration is subject to cancellation pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

## COUNT IX
### Partial Cancellation of Registration No. 2,230,527
### (Abandonment: Merely Ornamental / Failure to Function)

62.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

63.     The University obtained the '527 Registration for the alleged mark FIGHTING ILLINI by filing Application Serial No. 75/415,478 on January 8, 1998. The USPTO issued the '527 Registration on March 9, 1999.

64.     As of the date of this pleading, the '527 Registration covers the following goods in Class 025: Clothing, namely, aprons, adult and children's jackets, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands.

057538.023 \ 28822840v1

65.   The '527 Registration also covers the following goods in Class 028: basketballs, foam basketballs, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings.

66.   The '527 Registration also covers the following services in Class 041: Educational services, namely, conducting collegiate athletic exhibitions and games.

67.   The University's printing, if any, of the alleged mark FIGHTING ILLINI on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the alleged mark FIGHTING ILLINI appears on any of the registered goods in Class 025 and Class 028, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

68.   For example, below is the alleged mark FIGHTING ILLINI as shown in a merely ornamental and non-source-indicative manner on purported specimens of use the University submitted to the USPTO. On information and belief, consumers perceive such printing of the alleged mark FIGHTING ILLINI, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



69.     The overall commercial impression of the alleged mark FIGHTING ILLINI is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the alleged mark FIGHTING ILLINI does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '527 Registration is subject to cancellation with respect to Class 025 and Class 028 on that basis.

70.     In addition and in the alternative, the alleged mark FIGHTING ILLINI has solely been used in a purely decorative and merely ornamental manner with respect to goods in Class 025 and Class 028 for a period exceeding three years and the University has no intent to resume use of the alleged mark FIGHTING ILLINI in a source-identifying manner, if any such use ever occurred. Consequently, the alleged mark FIGHTING ILLINI has been abandoned by way of merely ornamental use and, therefore, the '527 Registration is subject to cancellation with respect to Class 025 and Class 028 pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**COUNT X**
**Partial Cancellation of Registration No. 2,315,363**
**(Abandonment: Merely Ornamental / Failure to Function)**

71.     Vintage Brand repeats and realleges all of the foregoing allegations as if repeated verbatim herein.

72.     The University obtained the '363 Registration for the below stylized "I" design by filing Application Serial No. 75/415,479 on January 8, 1998. The USPTO issued the '363 Registration on February 8, 2000.

73. As of the date of this pleading, the '363 Registration covers the following goods in Class 025: Clothing, namely, aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and men's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wristbands and sweatbands.

74. The '363 Registration also covers the following goods in Class 028: Toy flying discs, basketballs, foam basketballs, footballs, foam footballs, stuffed toys animals, dolls, golf bags, golf head covers, golf balls, Christmas ornaments, and Christmas stockings.

75. The '363 Registration also covers the following services in Class 041: Educational services, namely, conducting collegiate athletic exhibitions and games.

76. The University's printing, if any, of the design shown in the '363 Registration on the described Class 025 and Class 028 goods does not function to identify the University's goods nor distinguish them from goods offered by others. Rather, to the extent the design shown in the '363 Registration appears on any of the registered goods in Class 025 and Class 028, it is used and would be perceived by the relevant class of consumers as mere decoration, printed large on the front of apparel and other merchandise, and does not serve to identify the University as the source of the goods.

77. For example, below is the design shown in the '363 Registration as shown in a merely ornamental and non-source-indicative manner on purported examples of use the University pleaded in its operative Complaint. ECF 38 ¶ 20. On information and belief, consumers perceive

such printing of the design shown in the '363 Registration, if any such printing in fact occurs, to be merely a decorative feature of the goods and not an indicator of the source of the goods.



78.    The overall commercial impression of the design shown in the '363 Registration is purely ornamental or merely a decorative feature as to goods in Class 025 and Class 028; the design shown in the '363 Registration does not identify or distinguish the University's goods from those of others and, as such, does not function as a trademark as required by Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, 1127. Therefore, the '363 Registration is subject to cancellation with respect to Class 025 and Class 028 on that basis.

79.    In addition and in the alternative, the design shown in the '363 Registration has solely been used in a purely decorative and merely ornamental manner with respect to goods in Class 025 and Class 028 for a period exceeding three years and the University has no intent to resume use of the design shown in the '363 Registration in a source-identifying manner, if any such use ever occurred. Consequently, the design shown in the '363 Registration has been abandoned by way of merely ornamental use and, therefore, the '363 Registration is subject to cancellation with respect to Class 025 and Class 028  pursuant to Sections 14(3) and 45 of the Lanham Act, 15 U.S.C. § 1064(3), 1127.

**RELIEF REQUESTED**

WHEREFORE, having fully responded to the University's Corrected Second Amended Complaint and having asserted its Counterclaims, Vintage Brand prays that the Court:

A.      Dismiss the University's claims against Vintage Brand with prejudice;

B.      Exercise its authority under Section 37 of the Lanham Act, 15 U.S.C. § 1119, and Order the Commissioner of the United States Patent and Trademark Office to cancel U.S. Federal Trademark Registration Nos. 2,232,024, 3,692,259, and 1,836,231 each in their entirety and to cancel U.S. Federal Trademark Registration Nos. 2,230,527 and 2,315,363 in part, with respect to International Class 025 and Class 028;

C.      Award Vintage Brand its costs and attorneys' fees incurred in this lawsuit pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); and

D.      Grant Vintage Brand such other and further relief as the Court may deem just and proper.

DATED: May 27, 2022.

Respectfully submitted,

/s/ Theresa H. Wang
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Leslie C. Vander Griend (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
E-mail: theresa.wang@stokeslaw.com
E-mail: joshua.harms@stokeslaw.com
E-mail: leslie.vandergriend@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP

057538.023 \ 28822840v1

122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
E-mail: rboonstra@htlaw.com
E-mail: tpostma@htlaw.com

Attorneys for Defendant Vintage Brand, LLC

66