**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTH DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | Case No. 21-cv-06546 |
| Plaintiff, | |
| v. | |
| VINTAGE BRAND, LLC, | Hon. John R. Blakey |
| Defendant. | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S SECOND MOTION TO STRIKE CERTAIN**
**AFFIRMATIVE DEFENSES PURSUANT TO FED. R. CIV. P. 12(f)**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL FRAMEWORK ..................................................................................... 3

III.    ARGUMENT ...................................................................................................... 4

        A.      Certain of Vintage Brand's Defenses Should be Stricken Because they
                Lack Legal and Factual Support ............................................................... 4

                1.      Vintage Brand's Aesthetic Functionality Defense Should Be
                        Stricken (Third Affirmative Defense)........................................... 4

                        a.      Vintage Brand's Defensive Application of Aesthetic
                                Functionality is Not Cognizable in the Seventh Circuit ............... 4

                        b.      Vintage Brand Has Not Plausibly Pled Defensive Aesthetic
                                Functionality ................................................................... 6

                2.      Vintage Brand's Public Domain Defense Should Be Stricken
                        (Ninth Affirmative Defense)........................................................ 6

                3.      Vintage Brand's First Amendment Affirmative Defense Should Be
                        Stricken (Tenth Affirmative Defense) ......................................... 9

        B.      Certain of Vintage Brand's Run-of-the-Mill Defenses Lack Factual
                Support and Fail Under *Iqbal/Twombly*................................................ 12

                1.      Vintage Brand's Laches Affirmative Defense Should Be Stricken
                        (First Affirmative Defense)........................................................ 12

                2.      Vintage Brand's Acquiescence Affirmative Defense Should Be
                        Stricken (Second Affirmative Defense)....................................... 13

                3.      Vintage Brand's Failure to Mitigate Damages Affirmative Defense
                        Should Be Stricken (Seventh Affirmative Defense)............................ 15

IV.     CONCLUSION................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adidas Am., Inc. v. TRB Acquisitions LLC*,
   3:15-cv-21, 2018 WL 10335661 (D. Ore. Dec. 13, 2018).....................................................5, 6

*Alpha Tau Omega Fraternity, Inc. v. Pure Country, Inc.*,
   No. IP 01-1054-C, 2004 WL 3391781 (S.D. Ind. Oct. 26, 2004)............................................6

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
   805 F. Supp. 2d 503, 513–14 (N.D. Ill. 2011) .......................................................................13

*Bell v. Taylor*,
   827 F.3d 699 (7th Cir. 2016) ....................................................................................................3

*Brunswick Corp. v. Spinit Reel Co.*,
   832 F.2d 513, 518 (10th Cir. 1987) ..........................................................................................5

*Chattanoga Mfg., Inc. v. Nike, Inc.*,
   301 F.3d 789, 792–93 (7th Cir. 2002) ...............................................................................12, 13

*Cohn v. Taco Bell Corp.*,
   No. 92 C 5852, 1995 WL 493453 (N.D. Ill. Aug. 16, 1995)..................................................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)...............................................................................................................7, 8, 9

*Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*,
   No. 11 C 8224, 2012 WL 2953188, * 3 (N.D. Ill. July 19, 2012) .........................................10

*Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*,
   707 F.3d 869 (7th Cir. 2013) ..................................................................................................10

*Flexible Steel Lacing Co. v. Conveyer Accessories, Inc.*,
   955 F.3d 632 (7th Cir. 2020) ....................................................................................................4

*Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*,
   No. 99 C 8237, 2000 WL 1222043 (N.D. Ill. Aug. 22, 2000)................................................15

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*,
   883 F.2d 1286 (7th Cir. 1989) ..............................................................................................3, 4

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F. 3d 813 (7th Cir. 1999) .................................................................................................12

ii

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
   821 F.3d 935 (7th Cir. 2016) ............................................................13

*Janssen v. BRI Holding, LLC*,
   16-cv-10098, 2017 WL 2080424 (N.D. Ill. May 15, 2017) (Blakey, J.) .............................3, 4

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
   386 F. Supp. 926 (N.D. Ill. 2019) ........................................................5

*Nissan Motor Co. v. BMW (US) Holding Corp.*,
   2002 WL 31426654, at *2 (N.D. Ill. Oct. 28, 2002).......................................12

*Ohio State Univ. v. Skreened Ltd.*,
   16 F. Supp. 3d 905 (S.D. Ohio 2014) ....................................................5

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
   No. 11 C 5177, 2012 WL 414803, at *4 (N.D. Ill. Feb. 8, 2012) ...........................8

*Pietrzycki v. Heights Tower Serv., Inc.*,
   No. 14-C-6546, 2015 WL 688510 (N.D. Ill. Feb. 17, 2015) ................................3

*Piper Aircraft Corp. v. Wag-Aero, Inc.*,
   741 F.2d 925, 934 (7th Cir. 1984) .....................................................14

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)......................................................9, 10, 11

*Sarkis' Café, Inc. v. Sarks in the Park, LLC*,
   55 F. Supp. 3d 1034 (N.D. Ill. 2014) ...................................................3

*Texas Tech Univ. v. Spiegelberg*,
   461 F. Supp. 2d 510 (N.D. Tex. 2006) ..................................................8

*Thermos Co. v. Igloo Prod. Corp.*,
   No. 93 C 5826, 1995 WL 842002 (N.D. Ill. Sept. 27, 1995)..............................4, 5

*Tober v. Graco Children's Prods., Inc.*,
   431 F.3d 572, 579 n. 9 (7th Cir. 2005) .................................................3

*Uncommon LLC v. Spigen Inc.*,
   15-C-10897, 2016 WL 3997597 (N.D. Ill. July 26, 2016) (Blakey, J.).................3, 4, 12

*Warner Bros. Entm't, Inc. v. X One X Prods.*,
   840 F.3d 971 (8th Cir. 2016) .........................................................8, 9

*WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*,
   989 F.3d 343, 351 (5th Cir. 2021) ....................................................8, 9

iii

**Other Authorities**

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*,
    § 7:82 (5th Ed. 2022) ........................................................................................................5

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*,
    § 31:12 (5th Ed. 2022) ......................................................................................................13

Fed. R. Civ. P. Rule 12(b)(6) .........................................................................................................3

Fed. R. Civ. P. Rule 12(f) ...............................................................................................................3

United States Constitution; First Amendment ..........................................................................9, 10

## I.    INTRODUCTION

The University brought this action to stop Vintage Brand's rampant counterfeiting and trademark infringement. The Second Amended Complaint (i) identifies six federally-registered trademarks and four common law marks owned by the University; (ii) demonstrates use of these marks by the University and its licensees; and then (iii) demonstrates Vintage Brand's use of identical or substantially indistinguishable designs in Vintage Brand's online store. (*See generally* Second Am. Compl., Dkt. 38.)

For example, the Second Amended Complaint demonstrates that a consumer can click a link for "Illinois Fighting Illini" on the Vintage Brand website and thereby access a webpage offering unauthorized apparel and merchandise using University trademarks.



(Second Am. Compl. ¶ 34.)   The Second Amended Complaint provides images of a number of representative examples of infringing goods sold through the Vintage Brand websites. (*Id.* at ¶ 39.)

For its part, Vintage Brand does not dispute the majority of the factual allegations in the Second Amended Complaint. Indeed, Vintage Brand admits that the identified images were displayed on Vintage Brand's website and they "contain within them text or design elements to which the University claims trademark rights." (Def.'s Am. Answer and Aff. Defs. ¶¶ 34, 39, Dkt. 52.)

Having admitted the key facts, Vintage Brand attempts to clutter up this case through affirmative defenses and counterclaims. Vintage Brand initially raised twenty scattershot affirmative defenses. (*See generally* Def.'s Answer and Aff. Defs., Dkt. 46.) Following the University's initial motion to strike, Vintage Brand amended its affirmative defenses, providing some additional detail regarding its defenses and reducing the number of them to eleven. (*See generally* Def.'s Am. Answer and Aff. Defs., Dkt. 52.)

Despite Vintage Brand's amendments, certain of its affirmative defenses remain deficient as a matter of law and should be stricken. *First*, several of Vintage Brand's affirmative defenses appear to raise legal issues that are not cognizable within the Seventh Circuit and, even if assumed to be legally valid, are not applicable on the facts. If not stricken, Vintage Brand's defensive aesthetic functionality, public domain, and First Amendment defenses will significantly broaden the scope of discovery and interject needless complexity and expense into this otherwise straightforward infringement and counterfeiting case. *Second*, a number of Vintage Brand's affirmative defenses are typical, oft-used legal defenses – estoppel by acquiescence, estoppel by laches, and failure to mitigate damages – which lack any factual basis in this case. Vintage Brand has failed to plausibly plead these defenses on its second attempt. They should be stricken with prejudice.

## II.    LEGAL FRAMEWORK

An affirmative defense is a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's…claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)). In other words, an affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a prima facie case." *Tober v. Graco Children's Prods*., *Inc*., 431 F.3d 572, 579 n. 9 (7th Cir. 2005). In contrast, a defense which is merely "an attack on [p]laintiff's *prima facie* claim" is a negative defense, not an affirmative defense. *Pietrzycki v. Heights Tower Serv., Inc*., No. 14-C-6546, 2015 WL 688510, at *2 (N.D. Ill. Feb. 17, 2015) (internal citation omitted).

Federal Rule of Civil Procedure 12(f) instructs that the Court should "strike from a pleading an insufficient defense or any redundant, impertinent, or scandalous matter." Motions to strike are generally disfavored, so affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). But a motion that seeks to remove "unnecessary clutter" may granted. *See Uncommon LLC v. Spigen Inc.*, 15-C-10897, 2016 WL 3997597, *2 (N.D. Ill. July 26, 2016) (Blakey, J.) (citing *Heller*, 883 F.2d at 1294).

To survive a motion to strike, an affirmative defense must satisfy a three-part test: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge. *Sarkis' Café, Inc. v. Sarks in the Park, LLC,* 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014). With respect to the second factor, the majority of district courts in the Seventh Circuit, including this Court, apply the *Twombly-Iqbal* "plausibility" pleading standard to affirmative defenses. *See Janssen v. BRI Holding, LLC*, 16-cv-10098, 2017 WL

3

2080424, at *4 (N.D. Ill. May 15, 2017) (Blakey, J.). But "[a]t the very least, affirmative defenses must pass the pre-*Twombly* standard, where 'bare bones conclusory allegations,' bereft of factual context, are not sufficient to pass a motion to dismiss." *Uncommon LLC*, 2016 WL 3997597, at *2 (quoting *Heller*, 883 F.2d at 1295). This is true in part because affirmative defenses "serve as a platform for discovery, which could be very costly." *See Janssen*, 2017 WL 2080424, at *4. It is important "that plaintiffs are given fair notice of the basis for each defense to allow them to litigate the defenses as they would any other issue." *Id.*

## III.   ARGUMENT

### A.   Certain of Vintage Brand's Defenses Should be Stricken Because they Lack Legal and Factual Support

#### 1.   Vintage Brand's Aesthetic Functionality Defense Should Be Stricken (Third Affirmative Defense)

Vintage Brand's Third Affirmative Defense should be stricken because (i) the defense of defensive aesthetic functionality is not cognizable in the Seventh Circuit, and, in any event, (ii) Vintage Brand has failed to plausibly plead that its inability to use the University's trademarks would put Vintage Brand at a "significant ***non-reputation-related*** disadvantage."

##### a.   Vintage Brand's Defensive Application of Aesthetic Functionality is Not Cognizable in the Seventh Circuit

The Seventh Circuit considers the issue of aesthetic functionality in the context of validity, specifically, in certain cases involving asserted trade dress in the appearance of product packaging or product configuration.  In such cases, courts may inquire as to "whether exclusive use of the feature would place competitors at a "'significant non-reputation-related disadvantage.'" *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 644 (7th Cir. 2020). If so, the asserted feature is considered functional and is thus ineligible for trademark protection.  *Id.*

Vintage Brand is not asserting aesthetic functionality to challenge the validity of the

University's marks. Quite the opposite. The defense is that *Vintage Brand's use* of the University marks in connection with *Vintage Brand's* products is functional and therefore not infringing, assuming that the marks are valid and that the otherwise-infringing use is likely to cause confusion. This defensive application of the aesthetic functionality has been recognized in the Ninth Circuit. *See Adidas Am., Inc. v. TRB Acquisitions LLC,* 3:15-cv-21, 2018 WL 10335661, at *4–5 (D. Ore. Dec. 13, 2018) (setting forth defensive aesthetic functionality test).

But commentators and courts have roundly criticized defensive applications of aesthetic functionality as ill-advised and, indeed, superfluous to the likelihood of infringement analysis. As the leading trademark commentator explained:

> The theory of defensive aesthetic functionality is the wrong approach to solve problems that arise when a trademark is used by defendant in an arguably "decorative" sense, such as on T-shirts, tote bags and baseball caps. In such cases the question is the familiar but difficult one of whether there is a likelihood of confusion as to source, sponsorship, affiliation or connection. No notions of "defensive aesthetic functionality" are proper to serve as a convenient escape from directly facing the question of likelihood of confusion.

J. Thomas McCarthy, 6 McCarthy on Trademarks and Unfair Competition, § 7:82 (5th Ed. 2022).

Nor has the defensive use of aesthetic functionality found purchase outside of the Ninth Circuit. *See e.g.*, *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 919–20 (S.D. Ohio 2014) (stating that aesthetic functionality "is potentially relevant only in the context of trade dress infringement, which is simply not the context here."); *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 487-888 (5th Cir. 2008) (restating "long-settled view rejecting recognition of aesthetic functionality"); *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513, 518 (10th Cir. 1987) (rejecting Ninth Circuit's application of defensive aesthetic functionality). The University is unaware of any cases in the Seventh Circuit which apply aesthetic functionality defensively, and at least one district court has stated its belief that "the Seventh

Circuit would not likely accept" this notion. *See Alpha Tau Omega Fraternity, Inc. v. Pure Country, Inc.*, No. IP 01-1054-C, 2004 WL 3391781, at * 6 (S.D. Ind. Oct. 26, 2004).

      **b.**      **Vintage Brand Has Not Plausibly Pled Defensive Aesthetic Functionality**

Even if defensive aesthetic functionality is cognizable in this Circuit, Vintage Brand has failed to plead a plausible basis from which a fact-finder could conclude that its inability to use the University's marks would put Vintage Brand at a "significant **non-reputation-related** disadvantage" that is legally protected—a fundamental element of a defensive aesthetic functionality claim. *See Adidas Am.*, 2018 WL 10335661, at *4–5. Indeed, on virtually identical facts, the Fifth Circuit held that, even assuming defensive aesthetic functionality to be a valid defense, selling game day apparel seeks to "take advantage of the University's reputation" and is not a legitimate advantage to which an alleged infringer is entitled:

> The Court in *Qualitex* stressed that the focus of functionality is "legitimate (non-trademark-related) competition." But here any demand for Smack's t-shirts is inextricably tied to the Universities' trademarks themselves… ***Smack's alleged competitive disadvantage in the ability to sell game day apparel relates solely to an inability to take advantage of the Universities' reputation and the public's desired association with the Universities that its shirts create.*** This is not an advantage to which it is entitled under the rubric of legitimate competition.

*Smack Apparel Co.*, 550 F.3d at 488 (emphasis added). As in *Smack Apparel*—Vintage Brand is plainly using the University's marks in a way that profits off of the University's reputation, which is not permitted as a matter of law, even under a defensive aesthetic functionality framework. *Id*. And Vintage Brand has not alleged any other sort of non-reputation-related disadvantage here. (*See* Def.'s Am. Answer and Affirm. Defs. p. 42, Dkt. 52.)

      **2.**      **Vintage Brand's Public Domain Defense Should Be Stricken (Ninth Affirmative Defense)**

Vintage Brand's Ninth Affirmative Defense should be stricken because it fails to give fair notice to the University of the legal and factual bases for the defense. The defense states, in its

6

entirety:

> The University's claims are premised on Defendant's alleged reprinting of historic, public domain artwork appearing on tangible vintage memorabilia owned by Defendant. Some of this public domain artwork contains embedded within it text and designs to which the University claims current trademark rights. The University's claims are barred and/or limited to the extent they would interfere with Defendant's federal right to reproduce, make minor enhancements to, and print and distribute public domain artwork as ornamentation or decoration on merchandise.

(Def.'s Am. Answer and Affirm. Defs. p. 43, Dkt. 52.) The Ninth Affirmative Defense suggests a bright line rule, giving Vintage Brand *per se* immunity from trademark infringement if the complained-of use reproduces public domain images. But this is not a recognized defense to the University's trademark infringement claims, neither in the Seventh Circuit nor elsewhere.

Although far from clear, the Ninth Affirmative Defense appears to be an expansive misreading of the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* is far from analogous to the present case. Where Vintage Brand is alleged to, and admits to, having sold apparel (e.g., t-shirts and hats) and merchandise (e.g., water bottles and mugs) emblazoned with University trademarks, *Dastar* involved a Lanham Act claim based on defendant's reselling of an original, out-of-copyright, television series without attribution to the authors of the creative video content. *Id.* at 25–27. In *Dastar*, plaintiff Fox held a copyright in an original television series. *Id*. at 25–26. Fox did not renew its copyright in the series. *Id.* Dastar purchased the tapes of the original television series, copied them, made minor changes, and created new packaging for the videos. *Id.* at 26–27. Dastar then manufactured and sold the videos as its own product, without reference to the original television series or its authors. *Id.* at 27. Among other claims, Fox alleged Dastar violated section 43(a) of the Lanham Act based on Dastar's sale of videos "without proper credit" to the original television series. *Id.* Upon review, the Supreme Court held that because the term "origin" in Section 43(a) of the Lanham

Act refers to the source of tangible goods, not the author of creative content embodied therein, the Lanham Act could not be used to bring a claim concerning misattribution of authorship. *Id.* at 37.

*Dastar* did not create or recognize a "federal right to reproduce, make minor enhancements to, and print and distribute public domain artwork as ornamentation or decoration on merchandise." (See Def.'s Am. Answer and Affirm. Defs. p. 43, Dkt. 52.) Rather, to the extent *Dastar*'s holding relates to out-of-copyright works, it made clear that intellectual property owners could not use "the Lanham Act as a ***back-door perpetual copyright*** for works in the public domain." *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *4 (N.D. Ill. Feb. 8, 2012) (holding plaintiff could not state a claim for trademark infringement under the Lanham Act for incorporating poems, without authorship attribution, into its new products) (emphasis added).

Fox's claim failed not because the works were in the public domain but because, although it asserted a claim under the Lanham Act, it was actually making a "disguised copyright claim[]." *Warner Bros. Entm't, Inc. v. X One X Prods.,* 840 F.3d 971, 980 (8th Cir. 2016) (describing trademark infringement claims barred under *Dastar* as "disguised copyright claims"); *see also WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 351 (5th Cir. 2021) (characterizing the Fox's claim in *Dastar* as being akin to plagiarism, which is not cognizable under the Lanham Act).

As the Second Amended Complaint makes clear, unlike the plaintiffs in *Dastar* and *Personal Keepsakes*, the University's lawsuit does not seek to remedy a failure to attribute authorship of the creative embodiments in Vintage Brand's merchandise and is not a backdoor copyright claim. Instead, this is a straightforward trademark infringement and counterfeiting case

8

concerned with "protecting the genuineness of its brand." *See WickFire, L.L.C.*, 989 F.3d at 351.

That *Dastar* is inapplicable to the present case is clearly explained by the Eighth Circuit's opinion in *Warner Bros.* In that case, plaintiff Warner Bros. asserted registered and common law trademarks in, among other things, images of characters from certain films and used those character images for trademark purposes on a host of consumer goods for many years. 840 F.3d at 980. Defendants obtained restored versions of movie posters and lobby cards for the films, extracted images of the famous characters, and licensed these images for use on various consumer products, including apparel. *Id.* at 975. The Court held Warner Bros.'s trademark infringement claims did not run afoul of *Dastar* because the character images were not "communications, concepts, or ideas that the consumer goods embody." *Id.* at 980. Rather, the infringing products "employ[ed] iconic film characters' pictures **to associate the products with Warner's films, not to copy the film itself.**" *Id.* (emphasis added).

Vintage Brand's Answer concedes use of "text or design elements to which the University claims trademark rights." (Def.'s Am. Answer and Aff. Defs. ¶¶ 34–36, 39, 47–51.) Even assuming, for example, the '024 mark or '353 mark (or substantially indistinguishable design) reproduced on Vintage Brand's goods (*see id.* at ¶¶ 49 and 51) were in fact lifted from public-domain works, this is the same excuse raised and rejected in *Warner Bros.* and does not give rise to an affirmative defense to the University's trademark infringement and counterfeiting claims.

### 3. Vintage Brand's First Amendment Affirmative Defense Should Be Stricken (Tenth Affirmative Defense)

Vintage Brand raises a First Amendment defense which appears to be based on the Second Circuit's two-part test for infringement based on the unauthorized use of a trademark in an expressive or artistic work. *See Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989).

Although other circuits have adopted the *Rogers* test, the Seventh Circuit has yet to do so.

*See. e.g.*, *Sullivan v. Bickler*, 360 F. Supp. 3d 778, 786 (N.D. Ill. 2019).[1] But even assuming *Rogers* is good law in the Seventh Circuit, it simply does not apply to the facts of this case. As a court in this District explained, under the *Rogers* test, "with respect to *titles* of artistic works, the title must be explicitly misleading and devoid of any artistic relevance to the work in order for the Lanham Act to bar its use." *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, No. 11 C 8224, 2012 WL 2953188, * 3 (N.D. Ill. July 19, 2012), *aff'd*, 707 F.3d 869 (7th Cir. 2013) (internal quotation marks and citation omitted) (emphasis in original).[2]

*Rogers* analyzed whether the use of the film title "Ginger & Fred" infringed the trademark or publicity rights of Ginger Rogers, who was well known in part for her roles in films in which she co-starred with Fred Astaire. 875 F.2d at 996. The film was about the reunion of two retired fictional Italian cabaret performers, who, at the high point of their careers, imitated Rogers and Astaire. Applying the aforementioned test, the court found that the title "surpass[ed] the minimum threshold of artistic relevance to the film's content" and that there was no evidence that the title would mislead consumers as to Ginger Rogers' sponsorship or endorsement of the film where "the title is entirely truthful as to its content in referring to the film's fictional protagonists who are known to their Italian audience as 'Ginger and Fred'" and where the title had "an ironic meaning that is relevant to the film's content." *Id.* at 1001.[3]

---

[1]     In one case, the Seventh Circuit suggested reasons not to adopt the test, noting "*Rogers* treated that doctrine as an application of the first amendment rather than the Lanham Act, and courts should avoid unnecessary constitutional adjudication." *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869 (7th Cir. 2013).

[2]     Other than omitting the "with respect to titles of artistic works" language, Vintage Brand's Tenth Affirmative Defense parrots the Rogers test. (*See* Def.'s Am. Answer and Affirm. Defs. p. 43, Dkt. 52 ("artistically relevant to the vintage-themed art" and "not explicitly misleading").)

[3]     Similarly, the *Eastland Music* case in this District involved the use of the title "50/50" for a film, which was artistically relevant (because a main character stated early in the film that he had a 50/50 chance of surviving cancer) and not misleading based upon a review of the movie and packaging.

Even assuming *Rogers* were to be adopted in the Seventh Circuit, Vintage Brand fails to plausibly plead facts which would implicate *Rogers*. Indeed, the facts that Vintage Brand recites seemingly have no connection to a *Rogers* analysis:

> Defendant's website allows consumers to customize and create vintage-themed works by applying historic works of art – some of which embed text and designs to which the University claims current trademark rights – to various products, including but not limited to canvases, magnets, and posters. Defendant allows consumers to customize products with such images in a creative effort to preserve and make available meaningful historic imagery.

(*See* Def.'s Am. Answer and Affirm. Defs. p. 43, Dkt. 52.)

Assuming these facts to be true, Vintage Brand's *Rogers* defense is implausible. The allegation that Defendant's use of the University's marks is "artistically relevant" is purely conclusory and, in fact, inconsistent with Vintage Brand's admissions. Vintage Brand is not making "vintage-themed art"; it is slavishly copying University marks onto t-shirts, hats, magnets, etc. Vintage Brand contributes nothing but a blank canvas or other blank medium on which to display the University's marks.

Further, Vintage Brand's conclusory assertion that the use is "not explicitly misleading" is implausible. Regardless of how the t-shirts, memorabilia, and other merchandise are created, Vintage Brand sells them on a website with the header "Illinois Fighting Illini Vintage Designs," explicitly suggesting a association between the products and the University. (Def.'s Am. Answer and Aff. Defs. ¶¶ 34–35) (admitting how products are displayed on Vintage Brand website). Vintage Brand provides no facts which would allow a fact-finder to conclude that Vintage Brand's use was protected under the *Rogers* test.

**B.**     **Certain of Vintage Brand's Run-of-the-Mill Defenses Lack Factual Support and Fail Under *Iqbal/Twombly***

    **1.**     **Vintage Brand's Laches Affirmative Defense Should Be Stricken (First Affirmative Defense)**

Despite Vintage Brand's attempt to save this defense through its amendment, it is still nothing but a "'bare bones conclusory allegation[],' bereft of factual context [and is] not sufficient to pass a motion to dismiss" even under pre-*Twombly/Iqbal* pleading standards. *Uncommon LLC*, 2016 WL 3997597, at *2. For "laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792–93 (7th Cir. 2002) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999)). Vintage has not pled sufficient facts to plausibly establish the requisite elements of "inexcusable delay" or "prejudice."

First, the allegation that the University allegedly knew of Vintage Brand's counterfeiting "for an unreasonably long period of time" or a "number of years" is not sufficient to state a claim. Instead, this is a bare bones conclusory allegation reciting the elements of laches that suspiciously fails to reveal just how long this supposed "number of years" is. This is fatal to a laches defense, for courts routinely reject laches defenses in trademark cases brought within "three years" of plaintiff's knowledge of the infringement. *Chattanoga Mfg.*, 301 F.3d at 793. Indeed, even before *Twombly*, courts in this district have rejected laches defenses at the 12(b)(6) stage when the suit was brought within that three-year period. *See, e.g., Nissan Motor Co. v. BMW (US) Holding Corp.*, 2002 WL 31426654, at *2 (N.D. Ill. Oct. 28, 2002) (rejecting laches defense at 12(b)(6) stage when plaintiff brought suit one year after learning of the infringement). By failing to set forth the duration of Vintage Brand's use (let alone the University's knowledge of that use), Vintage

Brand seeks evade the application of that case law, which would require this defense to be stricken.

Second, Vintage Brand has not alleged facts showing how it has been "prejudiced." *See Chattanoga* Mfg., 301 F.3d at 793. "The cases are legion to the effect that mere delay, without resulting injury to the defendant, is not sufficient to prevent relief for infringement." J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*, § 31:12 (5th Ed. 2022). But far from pleading prejudice – e.g., by pleading marketing expenditures, plant expansions, or other investments related to the University's marks –Vintage Brand simply states that it "has been prejudiced as it has conducted such open and transparent business for a number of years prior to the University's belated decision to initiate litigation." (Def.'s Answer and Affirm. Defs. p. 41, Dkt. 52.) This is the utter absence of prejudice.

### 2. Vintage Brand's Acquiescence Affirmative Defense Should Be Stricken (Second Affirmative Defense)

By amending its acquiescence defense in an attempt to provide further factual support, Vintage Brand simply made clear that it has no acquiescence defense, and that what is calls "acquiescence" is merely an alleged abandonment defense in false clothing.

To plausibly state an acquiescence defense, a defendant must plead that "the owner of the mark has, through his words or conduct, conveyed his consent to the defendant's use of the mark." *Hyson USA, Inc. v. Hyson 2U, Ltd*., 821 F.3d 935, 940 (7th Cir. 2016). As a "personal" defense, acquiescence therefore requires the alleged "words or conduct" to be specifically directed at the defendant as opposed to the world at large. *See id.* (describing acquiescence as "where the trademark owner, by affirmative word or deed, ***conveys its implied consent to another***"); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 513–14 (N.D. Ill. 2011) (finding acquiescence given plaintiff's statements to defendant prior to commencement of litigation) (stating that "[a]ctive consent [for acquiescence purposes] is implied by conduct on the

13

plaintiff's part that amounts **to an assurance to the defendant**, express or implied, that the plaintiff would not assert his trademark rights **against the defendant**") (emphasis added).

Vintage Brand's amended pleading makes clear that there was no action or communication **from the University to Vintage Brand** which could have conveyed the requisite implicit consent to Vintage Brand's use of the mark. Instead, Vintage Brand relies exclusively on statements to the public at large:

> As set forth in the following Counterclaims, the University has actively represented to the public, including Defendant, that it abandoned the Chief Illiniwek design, which is the subject of Registration No. 2,232,024. As such, the University affirmatively informed all members of the public that it would take no steps to enforce any alleged "rights" in the Chief Illiniwek design. Defendant has reasonably relied on such public representations to its detriment; specifically, Defendant has been prejudiced as it has conducted the actions admitted in its Answer to the Complaint for a number of years while reasonably relying on the University's representations. Thus, the University's claims are barred and/or limited by the doctrine of acquiescence.

(Def.'s Answer and Affirm. Defs. pp. 41–42, Dkt. 52.)

In sum, although Vintage Brand has labeled this defense as "acquiescence," it is actually a defense that the University abandoned its rights in Chief Logo—which Vintage Brand has elsewhere asserted in its Sixth Affirmative Defense and Amended Counterclaim No. 1. (*See id.* at pp. 42. 46–50.)[4]

---

[4]     Further, Vintage Brand has failed to plead any facts that it relied upon any specific statement of the University to its detriment. "The doctrine of acquiescence is based on notions of reliance by the purported infringer." *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 934 (7th Cir. 1984). Not only is the failure to plead reliance fatal from an *Iqbal* standpoint, it is highly suggestive that the acquiescence theory is an ex post facto justification, given that (i) the relied-upon University statements regarding the Chief Logo are from 2007, well over a decade prior to Vintage Brand's use; (ii) the University's statements were addressed to the public at large, not Vintage Brand specifically; (iii) Vintage Brand does not state that it was aware of any specific statements prior to selling the infringing goods; and (iv) Vintage Brand's sales of infringing products was not limited to the Chief Logo but to a panoply of University marks which are outside the scope of the acquiescence defense pleaded.

14

### 3. Vintage Brand's Failure to Mitigate Damages Affirmative Defense Should Be Stricken (Seventh Affirmative Defense)

In asserting a mitigation defense, a defendant cannot rest on bare-bones pleadings, but instead must plead sufficient facts to place the plaintiff on notice of the basis of the defense. *See Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*, 2000 WL 1222043, at \*5 (N.D. Ill. Aug. 22, 2000) (dismissing one-sentence failure to mitigate defense because it lacked factual support); *see also Cohn v. Taco Bell Corp.*, 1995 WL 493453, at \*2 (N.D. Ill. Aug. 16, 1995) (concluding that party pleading mitigation must "provide enough facts to put Plaintiffs on notice of the course which Defendant contends Plaintiffs were legally required, but failed, to pursue.").

Vintage Brand does not state what the "unreasonably long period of time" is; it does not explain how the University "knowingly allowed profits to accrue"; and it does not plead how the University "fail[ed] to take any steps to reduce the amount of profit" Vintage Brand was accruing or the course of action the University was legally required to take before filing suit.[5] This is all fatal to Vintage Brand's mitigation of damages defense. *See Franklin Capital*, 2000 WL 1222043, at \*5; *Cohn*, 1995 WL 493453, at \*2.

## IV. CONCLUSION

Despite having a second bite at the apple, Vintage Brand has failed to plausibly plead entitlement to its Affirmative Defense Nos. 1–3, 7, and 9–10. For the foregoing reasons, the University requests that the Court strike these defenses with prejudice.

---

[5] In this regard, Vintage Brand's "failure to mitigate" defense is really nothing more than an attempt to plead laches without showing prejudice resulting from the delay. The gist of both of these defenses is that Vintage Brand has been able to profit from its infringing sales for an unstated amount of time.

Dated: June 17, 2022

Respectfully submitted,

THE BOARD OF TRUSTEES FOR THE
UNIVERSITY OF ILLINOIS

By: */s/ Jeffrey J. Catalano*
    One of Its Attorneys

Jeffrey J. Catalano
Andrew L. Goldstein
D. Richard Self
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312.360.6000

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June, 2022, that the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification to all ECF registrants that are counsel of record for this matter.

By: */s/ Jeffrey J. Catalano*

17