**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

                     Plaintiff /
                     Counterclaim-Defendant,

     v.

VINTAGE BRAND, LLC,

                     Defendant /
                     Counterclaim-Plaintiff.

Case No. 1:21-cv-06546

The Honorable John R. Blakey

**DEFENDANT VINTAGE BRAND, LLC'S OPPOSITION TO PLAINTIFF'S
SECOND MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES
PURSUANT TO FED. R. CIV. P. 12(f)**

057538.023 \ 103182194v2

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................. 1

II. AUTHORITY AND ARGUMENT ..................................................................... 1

    A.    Vintage Brand's First Amendment Defense is Founded on Well-Established Law ............................................................................... 2

    B.    Vintage Brand's Ninth Affirmative Defense is Supported by the Constitutional Right to Reprint Public Domain Artwork as Decoration ................................................................................. 4

        1.    The Supreme Court's *Dastar* Decision Emphasizes the Right to Free Use of Creative Works in the Public Domain ...................... 5

        2.    The Primacy of the Public Domain Over Trademark Rights was Central to *Dastar* ............................................................... 6

        3.    Vintage Brand's Affirmative Defense is Appropriately Limited to the Decorative Use of Public Domain Creative Works ................................................................................. 8

    C.    Vintage Brand's Affirmative Defense of Aesthetic Functionality is Legally Sound and Sufficiently Pleaded ........................................... 9

    D.    Vintage Brand's Laches Affirmative Defense is Sufficiently Pleaded ...................................................................................... 13

    E.    Vintage Brand's Acquiescence Affirmative Defense is Sufficiently Pleaded ...................................................................................... 14

    F.    Vintage Brand's Affirmative Defense for Failure to Mitigate is Sufficiently Pleaded ..................................................................... 15

III. CONCLUSION ................................................................................................. 15

057538.023 \ 103182194v2

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Arlington Specialties, Inc. v. Urban Aid, Inc.*,
    847 F.3d 415 (7th Cir. 2017) ........................................................................................... 11, 12

*Bd. of Governors of Univ. of N. Carolina v. Helpingstine*,
    714 F. Supp. 167 (M.D.N.C. 1989) ...................................................................................... 12

*Bleistein v. Donaldson Lithographing Co.*,
    188 U.S. 239 (1903) ............................................................................................................... 3

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) ................................................................................................ 12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ............................................................................................................... 6

*Chattanoga Mfg., Inc. v. Nike, Inc.*,
    301 F.3d 789 (7th Cir. 2002) ................................................................................................ 14

*Culbert v. Hilti, Inc.*,
    2010 WL 3855233 ................................................................................................................. 2

*Dace v. Chicago Pub. Sch.*,
    2020 WL 1861671 (N.D. Ill. Mar. 18, 2020) ...................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .................................................................................................. 4, 5, 6, 7, 8, 9

*Dillinger, LLC v. Electronic Arts, Inc.*,
    2011 WL 2457678 (S.D.Ind. Jun. 16, 2011) ........................................................................ 4

*Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*,
    707 F.3d 869 (7th Cir. 2013) .................................................................................................. 9

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) ............................................................................................................... 6

*First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*,
    214 F. Supp. 3d 723 (S.D. Ill. 2016) ..................................................................................... 1

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    636 F.3d 1115 (9th Cir. 2011) ............................................................................................... 7

**Cases** (cont.)                                                                Page(s)

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    654 F.3d 958 (9th Cir. 2011) ....................................................................... 7

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    925 F. Supp. 2d 1067 (C.D. Cal. 2012) ................................................... 7, 11

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
    947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................... 2, 3, 4

*Fralick v. Cnty. of Dewitt*,
    2011 WL 5509226 (C.D. Ill. Nov. 10, 2011) .............................................. 1

*Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*,
    487 F. Supp. 3d 722 (N.D. Ill. 2020) ....................................................... 15

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wis. 2018) .................................................... 8

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*,
    883 F.2d 1286 (7th Cir. 1989) ............................................................. 2, 10

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F.3d 813 (7th Cir. 1999) .................................................................. 14

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
    821 F.3d 935 (7th Cir. 2016) .................................................................. 14

*In re Pro–Line*,
    28 U.S.P.Q.2d 1141 (TTAB 1993) ........................................................... 8

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912 (9th Cir. 1980) ............................................................. 10, 12

*Jay Franco & Sons, Inc. v. Franek*,
    615 F.3d 855 (7th Cir. 2010) .................................................................. 12

*Jedi's Garden Family Rest., Inc. v. Karuntzos*,
    1988 WL 71730 (N.D. Ill. June 28, 1988) ............................................... 15

*Lirtzman v. Spiegel, Inc.*,
    493 F. Supp. 1029 (N.D. Ill. 1980) ....................................................... 1, 2

*LTTB LLC v. Redbubble, Inc.*,
    840 Fed. Appx. 148 (9th Cir. 2021) ........................................................ 10

**Cases** (cont.)                                                                                   Page(s)

*Nat'l Acceptance Co. of Am. v. Regal Products, Inc.*,
 155 F.R.D. 631 (E.D. Wis. 1994) ........................................................................ 2

*Packman v. Chicago Tribune Co.*,
 267 F.3d 628 (7th Cir. 2001) .............................................................................. 4

*Phoenix Entm't Partners v. Rumsey*,
 829 F.3d 817 (7th Cir. 2016) .............................................................................. 7

*Qualitex Co. v. Jacobson Products Co., Inc.*,
 514 U.S. 159 (1995) ...................................................................................... 11, 12

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989) ............................................................................ 2, 3

*Schiappa v. CharityUSA.com, LLC*,
 2017 WL 2210274 (S.D. Fla. May 18, 2017) ................................................... 11

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
 845 F.3d 1246 (9th Cir. 2017) ............................................................................ 5

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
 137 S. Ct. 1002 (2017) ....................................................................................... 3

*Sullivan v. Bickler*,
 360 F. Supp. 3d 778 (N.D. Ill. 2019) ................................................................. 3

*Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*,
 676 F.2d 1079 (5th Cir. 1982) .......................................................................... 10

*Talbot v. Robert Matthews Distrib. Co.*,
 961 F.2d 654 (7th Cir. 1992) .............................................................................. 1

*TMT N. Am., Inc. v. Magic Touch GmbH*,
 124 F.3d 876 (7th Cir. 1997) ............................................................................ 14

*Top Tobacco, L.P. v. Good Times USA, LLC*,
 2017 WL 395698 (N.D. Ill. Jan. 30, 2017) ................................................ 13, 14

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
 532 U.S. 23 (2001) ....................................................................................... 9, 12

*United States v. Walerko Tool & Eng'g Corp.*,
 784 F. Supp. 1385 (N.D. Ind. 1992) .................................................................. 2

**Cases** (cont.)                                                                                             **Page(s)**

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ................................................................. 3

*Univ. of Pittsburgh v. Champion Products, Inc.*,
   566 F. Supp. 711 (W.D. Pa. 1983) ........................................................ 11

*Warner Bros. Entm't, Inc. v. X One X*,
   840 F.3d 971 (8th Cir. 2016) .............................................................. 8, 9

**Statutes**

15 U.S.C. § 1115(b)(4) ......................................................................... 4

15 U.S.C. § 1125(a)(1)(A) .................................................................... 5

**Rules**

Fed. R. Civ. P. 12(f) ........................................................ 1, 2, 4, 9, 10, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................ 3

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed., June 2022 update) ..... 2, 3, 8, 8

Wright & Miller, Federal Practice and Procedure (3d ed., April 2022 update) ............... 2

Stacey L. Dogan & Mark A. Lemley, *The Merchandising Right: Fragile Theory or* Fait
Accompli?,
   54 Emory L.J. 461 (2005) ................................................................. 13

Ruth L. Okediji, *Through the Years: The Supreme Court and the Copyright Clause*,
   30 Wm. Mitchell L. Rev. 1633 (2004) .................................................. 6

Christopher Sprigman, *Indirect Enforcement of the Intellectual Property Clause*,
   30 Colum. J.L. & Arts 565 (2007) ....................................................... 6

057538.023 \ 103182194v2

## I.  INTRODUCTION

Defendant and Counterclaim-Plaintiff Vintage Brand, LLC ("Vintage Brand") respectfully requests that the Court deny The Board of Trustees of the University of Illinois's (the "University") Second Motion to Strike Certain Affirmative Defenses Pursuant to Federal Rule of Civil Procedure 12(f), ECF 55. As a threshold matter, disputed issues of law implicating nuanced trademark issues and complex constitutional questions are not appropriate for adjudication on a Rule 12(f) motion.[1] That said, even if the Court is inclined to consider the merits of these legal issues at this prefatory stage of the proceedings, the University's Motion should be denied because the defenses at issue are each supported by law and sufficiently pleaded. Finally, to the extent the Court grants the University's motion, Vintage Brand respectfully requests leave to further amend its pleading.

## II.  AUTHORITY AND ARGUMENT

Whether to strike material under Rule 12(f) is a matter of discretion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992); *see also* Fed. R. Civ. P. 12(f) ("The court *may* strike from a pleading an insufficient defense …." (emphasis added)). However, a motion to strike should be denied "unless the language in the pleading at issue both has no possible relation to the controversy and is clearly prejudicial." *Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1031 (N.D. Ill. 1980); *see also Fralick v. Cnty. of Dewitt*, 2011 WL 5509226, at *1 (C.D. Ill. Nov. 10, 2011) ("The Court is particularly reluctant to strike affirmative defenses because the assertion of an affirmative defense does not prejudice a plaintiff.").

"It is well-established … that a disputed issue of law should not be decided on a Rule 12(f) motion." *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, 214 F. Supp. 3d 723, 726

---

[1] Vintage Brand also respectfully requests that the Court strike the motion for the University's failure to comply with the Court's meet-and-confer requirement. Declaration of Theresa H. Wang.

(S.D. Ill. 2016) (collecting cases)[2]; *see also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("Ordinarily, defenses will not be struck … if they present questions *of law* or fact." (emphasis added)). This rule is particularly apt here because, as set forth below, Vintage Brand's Tenth Affirmative Defense (First Amendment protection), Ninth Affirmative Defense (ornamental use of public domain artwork), and Third Affirmative Defense (aesthetic functionality) each raise substantial, disputed legal issues warranting further development and appropriate presentation beyond the strict confines of a Rule 12(f) motion. Striking these defenses at this stage in the proceedings would be improper and needlessly curtail the parties' genuine dispute over the applicability of these legal doctrines.

## A.    Vintage Brand's First Amendment Defense is Founded on Well-Established Law

The University's argument in support of striking Vintage Brand's First Amendment defense is borderline frivolous. ***First***, the University contends that the First Amendment defense articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), has not been and should not be adopted by the Seventh Circuit.[3] ECF 55 at 9-10. However, "[t]he Second Circuit's *Rogers* balancing test is now widely used by almost all courts." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:144.50 (5th ed., June 2022 update) ("MCCARTHY"). Indeed, in one reported decision, a district court in the Seventh Circuit celebrated *Rogers* as "one of the beacons used to navigate the murky boundary between trademark law and the First Amendment." *Fortres Grand*

---

[2]  *See also, e.g.*, *Lirtzman*, 493 F. Supp. at 1031 (reasoning that an affirmative defense should not be stricken "if it fairly presents a question of law or fact which the court ought to hear"); *Nat'l Acceptance Co. of Am. v. Regal Products, Inc.*, 155 F.R.D. 631, 636 (E.D. Wis. 1994) (denying motion to strike "[b]ecause a question of law exist[ed] as to the availability of" the affirmative defense); *Culbert v. Hilti, Inc.*, 2010 WL 3855233, at*1 (N.D. Ill. 2010) ("When presented with a motion to strike a defense as insufficient, a court must examine whether the challenged defenses raise substantial questions of law or fact. If they do, the motion is not meritorious."); *United States v. Walerko Tool & Eng'g Corp.*, 784 F. Supp. 1385, 1387 (N.D. Ind. 1992) ("A motion to strike should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law."); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1381 n.36 (3d ed., April 2022 update) (collecting cases).

[3]  A Rule 12(f) motion is emphatically the improper vehicle to adjudicate the issue of whether the Seventh Circuit should adopt the *Rogers* First Amendment defense. *See* Note 2 and accompanying text, *supra*.

*Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 931 (N.D. Ind. 2013).

**Second**, the University argues that the *Rogers* test applies only to titles of artistic works. ECF 55 at 10 & n.2. But "courts have expanded [the *Rogers*] balancing test to encompass use of a mark in the title or content of all works of artistic expression." MCCARTHY § 31:144.50; *see also Fortres Grand Corp.*, 947 F. Supp. 2d at 931 (collecting cases).

**Third**, the University contends it is "implausible" that Vintage Brand's printing of public domain art related to, among other things, meaningful historic events is "artistically relevant," the first prong of the *Rogers* test. ECF 55 at 11. The Supreme Court has counseled that lawyers and judges should not be arbiters of what is, and what is not, art. *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits."); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1015 (2017) (same). As such, *Rogers'* artistic relevance prong is a "purposely low threshold which is satisfied unless the use 'has no artistic relevance to the underlying work whatsoever.'" *Fortres Grand Corp.*, 947 F. Supp. 2d at 932 (quoting *Rogers*, 875 F.2d at 999).

Far surpassing this minimal standard, Vintage Brand alleges that the public domain works of art are used "in a creative effort to preserve and make available meaningful historic imagery." ECF 52 at 43; *see also Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278–79 (11th Cir. 2012) (applying *Rogers* to immunize defendant's use of university trademarks in connection with "paintings, prints, and calendars"). In any event, whether Vintage Brand's reprinting of historic artwork is "artistically relevant" is a question of fact that cannot be decided at this preliminary stage of proceedings. *See Sullivan v. Bickler*, 360 F. Supp. 3d 778, 786 (N.D. Ill. 2019) (denying Rule 12(b)(6) motion because issue of artistical relevance was factual).

057538.023 \ 103182194v2

**Fourth**, the University also attempts to adjudicate the second prong of the *Rogers* test by arguing that "Vintage Brand's conclusory assertion that the use is 'not explicitly misleading' is implausible." ECF 55 at 11. However, "[t]o be 'explicitly misleading,' the defendant's work *must make some affirmative statement of the plaintiff's sponsorship or endorsement*, beyond the mere use of plaintiff's name or other characteristic." *Fortres Grand Corp.*, 947 F. Supp. 2d at 932 (quoting *Dillinger, LLC v. Electronic Arts, Inc.*, 2011 WL 2457678, at *6 (S.D.Ind. Jun. 16, 2011)) (emphasis added). The University contends the website header "Illinois Fighting Illini Vintage Designs" suggests an "association" between the products and the university. ECF 55 at 11 (citing ECF 38 ¶ 34-35). This is not an affirmative statement of the University's "sponsorship or endorsement" of the products. To the contrary, Vintage Brand's website contains a clear disclaimer immediately following the complained-of header: "Vintage designs not affiliated with, licensed, or sponsored by any college, team or league." ECF 38 ¶ 34.[4]

**B.** **Vintage Brand's Ninth Affirmative Defense is Supported by the Constitutional Right to Reprint Public Domain Artwork as Decoration**

Vintage Brand alleged in support of its Ninth Affirmative Defense that it owns "tangible vintage memorabilia" containing "historic, public domain artwork," to which it "make[s] minor enhancements" and, thereafter, prints the public domain artwork "as ornamentation or decoration on merchandise." ECF 52 at 43. This defense is properly pled and solidly premised on the U.S. Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.* that common law or statutory trademark rights cannot be used to limit or restrict the public's constitutional right to copy and use creative works in the public domain.[5] 539 U.S. 23 (2003). This is particularly true

---

[4] Additionally, Vintage Brand's website header is a quintessential example of a fair-use descriptor and, therefore, not actionable. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001); 15 U.S.C. § 1115(b)(4); *see also* ECF 52 at 42 (Vintage Brand's Fifth Affirmative Defense is for fair use description).

[5] This constitutional issue should not be decided on a Rule 12(f) motion. *See* Note 2 and accompanying text, *supra*.

057538.023 \ 103182194v2

where, as here, the alleged infringer's printing of public domain creative works is ornamental or decorative, rather than traditional, source-identifying trademark usage (such as text or a design appearing on a hangtag).

Vintage Brand's affirmative defense is supported by the plain language of *Dastar*. The University's attempt to minimize the Supreme Court's focus on the public domain is contrary to subsequent interpretations of that decision. Further, Vintage Brand's Ninth Affirmative Defense is limited to display and printing of public domain art that is primarily decorative or ornamental, balancing the right to use these works against trademark law's goal of abating consumer confusion.

### 1. The Supreme Court's *Dastar* Decision Emphasizes the Right to Free Use of Creative Works in the Public Domain

In *Dastar*, the defendant "took a creative work in the public domain—[a] television series—copied it, made modifications (arguably minor) and produced its very own series of videotapes." *Id.* at 31. In response, Twentieth Century Fox brought a Lanham Act claim[6] to preclude the use of the public domain work because the video series contained Fox's alleged trademark. But the Supreme Court gave primacy to the public domain, as embodied in the Patent and Copyright Clause:

> The right to copy, and to copy without attribution, once a copyright has expired, like the right to make an article whose patent has expired—including the right to make it in precisely the shape it carried when patented—passes to the public. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying. The rights of a patentee or copyright holder are part of a carefully crafted bargain, under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. Thus, in construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright.

---

[6] While the Court in *Dastar* interpreted the language of Section 43(a) of the Lanham Act—specifically, 15 U.S.C. § 1125(a)(1)(A)—the same rule applies in cases of infringement of registered marks under Section 32 of the Lanham Act, despite that section's less specific language. *See, e.g.*, *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249–50 (9th Cir. 2017) (applying the rule of *Dastar* to registered trademarks).

*Dastar*, 539 U.S. at 33–34 (internal quotation marks and citations omitted). Therefore, the Supreme Court held that the Lanham Act claim was not colorable; "[t]o hold otherwise would be akin to finding that [the Lanham Act] created a species of perpetual patent and copyright, which Congress may not do." *Id.* at 37 (citing *Eldred v. Ashcroft*, 537 U.S. 186, 208 (2003)).

Here, the University is lodging various trademark claims to prevent Vintage Brand's decorative reprinting of historic, public domain works of art. For example, the University is attempting to leverage its alleged trademark rights in the plain text FIGHTING ILLINI (U.S. Reg. No. 2,230,527) to preclude Vintage Brand's reprinting of public domain creative works containing embedded within them a highly stylized version of that text:



ECF 38 ¶ 47. With these claims, the University hopes to enjoy the non-existent rights the *Dastar* opinion specifically cautioned against: "a species of mutant copyright law that limits *the public's federal right* to 'copy and to use' expired copyrights." *Id.* at 34 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989)) (emphasis added).

### 2. The Primacy of the Public Domain Over Trademark Rights was Central to *Dastar*

The University attempts to limit the significance of *Dastar* by arguing that the Supreme Court's decision was based solely on the type of trademark claim asserted by Fox rather than the primacy of the public domain over trademark rights.[7] *E.g.*, ECF 55 at 8. But the Seventh Circuit

---

[7] Commentators disagree with the University's strained reading of *Dastar*. For example, renowned intellectual property law expert Professor Ruth Okediji views the *Dastar* decision as "affirm[ing] a vision of the public domain as a resource for completely unconditional access to, and use of, expired copyrighted works." Ruth L. Okediji, *Through the Years: The Supreme Court and the Copyright Clause*, 30 WM. MITCHELL L. REV. 1633, 1636 (2004). Similarly, Professor Christopher Sprigman dissected the Court's *Dastar* opinion, finding that the constitutional

has affirmed *Dastar*'s emphasis on the public domain:

> Cinematic films, for example, typically display the mark of the studio that made the film in the opening and/or closing credits—think of Metro-Goldwyn-Mayer Studios' roaring lion. When the copyright on such a creative work expires, *enabling any member of the public to copy and use the work without license*, it is not a trademark violation simply to display the work without first deleting the mark that was inserted into its content.

*Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 829 (7th Cir. 2016) (emphasis added).

Moreover, in 2011, the Ninth Circuit held that an alleged infringer's use of Betty Boop could not be trademark infringement because the character had fallen into the public domain:

> [E]ven if Fleischer owns trademarks in Betty Boop, it cannot assert a trademark infringement action against A.V.E.L.A. Given that A.V.E.L.A.'s use of Betty Boop is functional and aesthetic, *and because ruling in Fleischer's favor would prevent the Betty Boop character from ever entering the public domain*, Fleischer's infringement claim is barred by *Job's Daughters* and *Dastar*.

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 636 F.3d 1115, 1125, *opinion withdrawn and superseded on denial of reh'g*, 654 F.3d 958 (9th Cir. 2011) (emphasis added). Apt here, the Ninth Circuit reasoned that *Dastar* prevented the plaintiff from relying on trademark rights to preclude the ornamental or decorative use of the public domain Betty Boop character.[8]

---

prohibition against limiting the public domain was critical to the holding: "*Dastar*'s purposive interpretation of the Lanham Act was driven by constitutional principles—specifically, a conception of the public domain that issues from the Intellectual Property Clause injunction directing that the federal copyright be for 'limited times.'" Christopher Sprigman, *Indirect Enforcement of the Intellectual Property Clause*, 30 COLUM. J.L. & ARTS 565, 584 (2007). Even the *McCarthy* treatise—which errs on an overexpansive view of trademark rights—identified the public domain as the Supreme Court's rationale in issuing the *Dastar* decision:

> Because the Fox Crusade television series that defendant Dastar copied, re-worked and sold had fallen out of copyright, Dastar could legitimately claim one of the key rights implicit in Copyright law: the right of anyone to copy and commercialize works that are out of Copyright—works that are in the public domain.

MCCARTHY § 27:78.

[8]  The Ninth Circuit's well-reasoned original opinion is instructive as to the application of *Dastar*. When superseding the original opinion, the Ninth Circuit did not declare that its analysis was incorrect. Rather, it avoided the issue altogether, finding that the Betty Boop character design was not protectable as a trademark and remanding to the district court to determine the scope, if any, of plaintiff's trademark rights in the words "Betty Boop." *Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., 654 F.3d 958, 968 (9th Cir. 2011). On remand, the Central District of California held that the alleged infringer's use of Betty Boop was not actionable under the doctrine of defensive aesthetic functionality. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., 925 F. Supp. 2d 1067, 1074-75 (C.D. Cal. 2012).

3. **Vintage Brand's Affirmative Defense is Appropriately Limited to the Decorative Use of Public Domain Creative Works**

The University contends that Vintage Brand's Ninth Affirmative defense "suggests a bright line rule, giving Vintage Brand *per se* immunity from trademark infringement if the complained-of use reproduces public domain images." ECF 55 at 7. That is incorrect. Rather, this Affirmative Defense is premised on using public domain creative works as ornamentation or decoration. ECF 52 at 43 (referencing Vintage Brand's "federal right to … print and distribute public domain artwork *as ornamentation or decoration* on merchandise" (emphasis added)). Where a text or design is used as ornamentation or decoration (*e.g.*, placed large, on the front-center of a t-shirt), it is less likely to be perceived by the consuming public as a source-identifying trademark. *See In re Pro–Line*, 28 U.S.P.Q.2d 1141, 1142 (TTAB 1993) ("Where ... an alleged mark serves as part of the aesthetic ornamentation of the goods, the size, location, dominance and significance of the alleged mark as applied to the goods are all factors which figure prominently in the determination of whether it also serves as an indication of origin."). As such, in circumstances where text or a design is used as decoration, "confusion is highly unlikely." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wis. 2018) (quoting MCCARTHY § 3:3 (5th ed. 2018)). Moreover, such ornamental or decorative use of creative works is a quintessential example of a right protected by the public domain—display and use of art for aesthetic purposes.

Finally, the University's attempt to analogize *Warner Bros. Entm't, Inc. v. X One X Prods.*, 840 F.3d 971 (8th Cir. 2016), to the present case is misguided. ECF 55 at 8-9. First, in that case, plaintiff Warner Bros. maintained copyright protection over the source material for its alleged trademarks. *Id.* at 975. Therefore, the Eighth Circuit's cursory discussion of *Dastar* is limited to two paragraphs, in which the public domain issue is not discussed. *Id*. at 979–80. Nonetheless, the Eighth Circuit upheld a telling exception to the final injunction: "the reproduction of publicity

057538.023 \ 103182194v2

materials in the public domain in their entirety and without alteration." *Id.* at 982. Second, the Eighth Circuit adopted the district court's factual determination that the defendant was using pictures of film characters for the discrete purpose of associating the products with the films. *Id.* at 980. Here, Vintage Brand is reprinting public domain art in a decorative manner for the sake of recreating the historic art itself. A finding of fact to the contrary would be inappropriate at this early stage of proceedings.

In short, *Dastar* establishes an affirmative defense to trademark infringement claims that would encroach upon or limit "the public's federal right to 'copy and to use' expired copyrights." *Dastar*, 539 U.S. at 34 (citation omitted). Nonetheless and for purposes of this procedural posture, the Court need not, and should not, consider the merits of this significant constitutional question. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) ("courts should avoid unnecessary constitutional adjudication"); *see also* Note 2 and accompanying text, *supra*. Rather, Vintage Brand should be afforded the opportunity to develop this defense during discovery and present it in a more appropriate context.

**C.** **Vintage Brand's Affirmative Defense of Aesthetic Functionality is Legally Sound and Sufficiently Pleaded**

The University's motion with respect to Vintage Brand's Third Affirmative Defense of aesthetic functionality should be denied on numerous grounds. Aesthetic functionality provides a defense to a claim of trademark infringement based on aesthetic product features where "exclusive use [of those features] would put competitors at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32–33 (2001).

Initially, the University's argument is premised on an incorrect assumption concerning the scope of Vintage Brand's aesthetic functionality Affirmative Defense; specifically, that the defense is based on "*Vintage Brand's use* of the University marks in connection with *Vintage*

057538.023 \ 103182194v2

*Brand's* products." ECF 55 at 5 (emphasis in original). Vintage Brand's pleading reads as follows:

> On information and belief, consumers purchase goods decorated with the text and designs shown in the Complaint purely because of their aesthetic appeal rather than any source-identifying function of the text and designs.

ECF 52 at 42. The plain language of this Affirmative Defense includes both the University's printing of the texts and designs it alleges are trademarks—*i.e.*, "offensive" or "affirmative" aesthetic functionality—as well as Vintage Brand's alleged printing of same—*i.e.*, "defensive" aesthetic functionality.[9] By unliterally limiting the scope of Vintage Brand's Third Affirmative Defense, the University's argument is confined to discussion of "defensive" aesthetic functionality, a doctrine that is recognized in the Ninth Circuit—where Vintage Brand is located—but has neither been accepted nor rejected in the Seventh Circuit.[10]

On the merits, defensive aesthetic functionality has been routinely applied by myriad courts to protect against overreaching trademark owners. *See, e.g.*, *LTTB LLC v. Redbubble, Inc*., 840 Fed. Appx. 148, 150–51 (9th Cir. 2021) (holding that the doctrine of aesthetic functionality precluded Lanham Act claims where evidence showed that consumers did not "buy LTTB's goods because they identify LTTB as the source" but, rather, "because they want goods bearing the" alleged mark); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980) (applying aesthetic functionality as a complete defense, finding that "the name and emblem are functional aesthetic components of the jewelry, in that they are being merchandised on the basis of their intrinsic value, not as a designation of origin or sponsorship."); *Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*, 676 F.2d 1079, 1084 (5th Cir. 1982) (reaching

---

[9]  The University will argue in reply that Vintage Brand's pleading fails to put it on notice. However, the scope of this defense is readily apparent from the language of the pleading. ECF 52 at 42. If the Court strikes this defense, Vintage Brand respectfully requests leave to amend. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("Defenses are pleadings, and as such, leave to amend is freely granted as justice requires.").

[10]  This issue should not be adjudicated by way of a Rule 12(f) motion. *See* Note 2 and accompanying text, *supra*.

057538.023 \ 103182194v2

the same result as *Job's Daughters* while not mentioning the doctrine of aesthetic functionality—
"[consumers] purchased the items bearing the Rainbow mark for the value of items bearing the
Rainbow mark themselves, to show membership and status within the organization"); *Fleischer
Studios, Inc.*, 925 F. Supp. 2d at 1075; *Univ. of Pittsburgh v. Champion Products, Inc.*, 566 F.
Supp. 711, 716 (W.D. Pa. 1983); *see also Schiappa v. CharityUSA.com, LLC*, 2017 WL 2210274,
at *7 (S.D. Fla. May 18, 2017) (incorporating defensive aesthetic functionality into the likelihood-
of-confusion analysis).

The policy rationale for defensive aesthetic functionality is sound. ***First***, it does not run
afoul of the dual aims of trademark law: (1) to protect consumers from confusion regarding the
source of goods; and (2) to "assure a producer that it (and not an imitating competitor) will reap
the financial, *reputation-related rewards* associated with a desirable product." *Qualitex Co. v.
Jacobson Products Co., Inc.*, 514 U.S. 159, 164 (1995) (emphasis added). Because aesthetic
functionality is limited to situations in which a consumer purchases an item bearing a design for
the sake of the design itself—not because of any source-indicative or reputation-related feature of
the design—it does not implicate concerns regarding consumer confusion as to source or
reputation-related rewards. ***Second***, the doctrine of defensive aesthetic functionality fosters fair
competition between businesses, driving down prices for consumers. *See Arlington Specialties,
Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017) (discussing the doctrine of functionality
and noting that trademark rights are a "potential threat to consumers" because they can "result in
a perpetual competitive advantage").

The University attempts to litigate the merits of Vintage Brand's Affirmative Defense,
arguing that "Vintage Brand has failed to plead a plausible basis" for a fact-finder to conclude its
inability to print historic public domain artwork would put it at a non-reputation-related

057538.023 \ 103182194v2

disadvantage. ECF 55 at 6. This argument is improper in a Rule 12(f) motion because "[f]unctionality is a factual question." *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 419 (7th Cir. 2017). Even if the Court considers the merits of this defense, the University's argument is not convincing and relies on a widely criticized Fifth Circuit decision, *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.*, 550 F.3d 465 (5th Cir. 2008). In that case the Fifth Circuit rejected the doctrine of aesthetic functionality wholesale, reasoning that the Supreme Court only addressed its support for aesthetic functionality in *dicta*. *Id.* at 487–88 (referencing *Qualitex*, 514 U.S. at 170, and *TrafFix*, 532 U.S. at 33); *contra Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010) (relying on *Qualitex* and *TrafFix* when discussing the affirmative defense of aesthetic functionality). Additionally, the Fifth Circuit's own *dicta* applies a fundamentally overbroad view of what type of "reputation" is relevant to this inquiry. It reasoned that the public's mere "association" of the alleged marks with the plaintiff is the type of reputation-related advantage to which a trademark owner is exclusively entitled. *Smack Apparel Co.*, 550 F.3d at 488.

Numerous other authorities expressly or implicitly reject the *Smack Apparel* holding. *Int'l Order of Job's Daughters*, 633 F.2d at 918 ("it would be naive to conclude that the name or emblem [of a school or team] is desired because consumers believe that the product somehow originated with or was sponsored by the organization the name or emblem signifies"); *Bd. of Governors of Univ. of N. Carolina v. Helpingstine*, 714 F. Supp. 167, 173 (M.D.N.C. 1989) ("[T]he court is skeptical that those individuals who purchase unlicensed tee-shirts bearing UNC–CH's marks care one way or the other whether the University sponsors or endorses such products or whether the products are officially licensed. Instead, as Defendants contend, it is equally likely that individuals buy the shirts to show their support for the University."); Stacey L. Dogan & Mark

A. Lemley, *The Merchandising Right: Fragile Theory or* Fait Accompli?, 54 EMORY L.J. 461, 504 (2005) ("When fans buy Harvard shirts [or] Chicago Cubs hats … they are doing so not because they believe that Harvard or the other trademark holders made or sponsored the goods, but because the trademark in this context serves an important communicative function for them.").

The University's position on defensive aesthetic functionality is misguided, finding precarious footing on only a few scattered district court decisions as well as the Fifth Circuit's dubious blanket refusal to adopt aesthetic functionality. Many other courts have applied defensive aesthetic functionality, and for good reason; the doctrine comports with the dual policy rationales of trademark law while also fostering fair competition, a boon to consumers. Nonetheless, at minimum the procedural posture of this case is not the vehicle to address these important, genuinely-disputed legal issues.

**D.    Vintage Brand's Laches Affirmative Defense is Sufficiently Pleaded**

The University contends that Vintage Brand "has not pled sufficient facts to plausibly establish the requisite elements of 'inexcusable delay' or 'prejudice'" in support of its First Affirmative Defense of laches. ECF 55 at 12. However, an "argument that [Vintage Brand] cannot show unreasonable delay or prejudice relates to the merits of the affirmative defense," not whether it is properly raised. *Top Tobacco, L.P. v. Good Times USA, LLC*, 2017 WL 395698, at *3 (N.D. Ill. Jan. 30, 2017). In *Top Tobacco*, the court denied a motion to strike a laches defense where the plaintiff made arguments nearly identical to the University's here, even though the affirmative defense was far more conclusory than Vintage Brand's pleading. *Id.* at *2 ("Upon information and belief, Plaintiffs knew and were aware of [Defendant's] use of the 4 K's mark … long prior to filing [the complaint]."). Here, too, the University's attempt to attack the merits of Vintage Brand's affirmative defense is unavailing at this early stage of the proceedings.

Vintage Brand is not required to specify the precise period of delay to plead "inexcusable

delay." The University's argument to the contrary is perplexingly premised on the three-year limitation period applicable to trademark infringement claims. ECF 55 at 12. But laches is not governed one way or the other by the statutory limitation period—it requires specific factual findings related to any delay and resulting prejudice.[11]

Vintage Brand also sufficiently pleaded the "prejudice" element of laches by alleging "it has conducted such open and transparent business for a number of years prior to the University's belated decision to initiate litigation." ECF 52 at 41. The Seventh Circuit has reasoned that prejudice will arise where, "[h]ad [the plaintiff] successfully pressed its claims in a timely manner, [the defendant] could have invested its time and money in other areas." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999). As such, this defense is properly pled and supported by sufficient allegations.

## E.   Vintage Brand's Acquiescence Affirmative Defense is Sufficiently Pleaded

The University seeks to strike Vintage Brand's Second Affirmative Defense for acquiescence on the grounds that it is based on statements the University made to the public rather than statements made only to Vintage Brand. ECF 55 at 13-14. However, acquiescence merely requires "an '*affirmative* word or deed' that conveys the trademark owner's implied consent to the junior user's use of his marks." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (quoting *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997)) (emphasis in original). Vintage Brand has sufficiently pleaded the University's affirmative statements necessary to support the defense at this stage of the proceedings, and it is a question of fact whether the University's "conduct expressly or impliedly assured [Vintage Brand] that [the

---

[11] A delay longer than the applicable limitation period may create a rebuttable presumption of laches. *See Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002). However, a delay less than the applicable limitation period does not create a presumption *against* a finding of laches. *See Top Tobacco, L.P.*, 2017 WL 395698, at *3 (six or seven month delay).

University] would not assert its trademark rights." *Jedi's Garden Family Rest., Inc. v. Karuntzos*, 1988 WL 71730, at *1 (N.D. Ill. June 28, 1988).

**F.    Vintage Brand's Affirmative Defense for Failure to Mitigate is Sufficiently Pleaded**

When requesting that the Court strike Vintage Brand's Seventh Affirmative Defense for failure to mitigate, the University contends that the pleading amounts to no more than a one-sentence, conclusory allegation. ECF 55 at 15. "[C]ourts 'typically permit a conclusory failure to mitigate damages affirmative defense' because defendants only learn of facts relating to plaintiffs' mitigation efforts over the course of discovery." *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 737 (N.D. Ill. 2020) (quoting *Dace v. Chicago Pub. Sch.*, 2020 WL 1861671, at *7 (N.D. Ill. Mar. 18, 2020)). Vintage Brand provided more detail than is required at this initial stage of proceedings. ECF 52 at 42-43. The University's demand that Vintage Brand provide specific information—such as the precise time period and the basis for the University's knowledge of Vintage Brand—is unfounded; "[t]he law does not require [Vintage Brand] to plead with any more specificity at this stage of the case." *Glen Flora Dental Ctr., Ltd.*, 487 F. Supp. 3d at 737.

### III.  CONCLUSION

As set forth above, the University's Motion is procedurally improper at least as to Vintage Brand's Tenth Affirmative Defense (First Amendment protection), Ninth Affirmative Defense (ornamental use of public domain artwork), and Third Affirmative Defense (aesthetic functionality). And even if the Court were to consider the merits of these disputed legal issues, the University's Motion should be denied because the defenses at issue are each supported by law and sufficiently pleaded. To the extent the Court grants the University's motion, Vintage Brand respectfully requests leave to further amend its pleading.

DATED this 8th day of July, 2022.

/s/ Theresa H. Wang
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Leslie C. Vander Griend (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Email: theresa.wang@stokeslaw.com
Email: joshua.harms@stokeslaw.com
Email: leslie.vandergriend@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP
122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
Email: rboonstra@htlaw.com
Email: tpostma@htlaw.com

*Attorneys for Defendant Vintage Brand, LLC*

16                                        057538.023 \ 103182194v2