**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | Case No. 21-cv-06546 |
| Plaintiff, | |
| v. | |
| VINTAGE BRAND, LLC, | Hon. John R. Blakey |
| Defendant. | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPPORT OF ITS SECOND MOTION
TO STRIKE CERTAIN AFFIRMATIVE DEFENSES
PURSUANT TO FED. R. CIV. P. 12(f)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. LEGAL STANDARD ................................................................................................. 1

III. ARGUMENT ............................................................................................................. 2

    A. Certain of Vintage Brand's Defenses Should be Stricken Because they Lack Legal and Factual Support ........................................................................ 2

        1. Vintage Brand's First Amendment Affirmative Defense Should Be Stricken (Tenth Affirmative Defense) ........................................................ 2

        2. Vintage Brand's Public Domain Defense Should be Stricken (Ninth Affirmative Defenses) ......................................................................... 3

            a. *Dastar* Does Not Establish an Affirmative Defense to Trademark Infringement ................................................................ 4

            b. *Phoenix Entm't* Confirms that a Public Domain Affirmative Defense Does Not Exist ..................................................................... 5

            c. Vintage Brand's "Decorative Use" Arguments Relate to Likelihood of Confusion, Not an Affirmative Defense ................. 6

        3. Vintage Brand's Aesthetic Functionality Defense Should Be Stricken (Third Affirmative Defense) ........................................................ 7

            a. Vintage Brand Has Not Pleaded the Defense of Standard Aesthetic Functionality ................................................................... 7

            b. Defensive Aesthetic Functionality is Not Cognizable as an Affirmative Defense in the Seventh Circuit................................... 8

            c. Vintage Brand Has Not Plausibly Alleged Defensive Aesthetic Functionality .............................................................. 10

    B. Certain of Vintage Brand's Run-of-the-Mill Defenses Lack Factual Support and Fail Under *Iqbal/Twombly*................................................................... 12

        1. Vintage Brand's Laches Affirmative Defense Should Be Stricken (First Affirmative Defense)................................................................... 12

        2. Vintage Brand's Acquiescence Affirmative Defense Should Be Stricken (Second Affirmative Defense)..................................................... 13

        3. Vintage Brand's Failure to Mitigate Damages Affirmative Defense Should Be Stricken (Seventh Affirmative Defense)................................ 14

IV. CONCLUSION.......................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**

*Arlington Specialties, Inc. v. Urban Aid, Inc.*,
  847 F.3d 415 (7th Cir. 2017) ..................................................................8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................1, 10, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................1, 10, 12

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
  805 F. Supp. 2d 503 (N.D. Ill. 2011) ...................................................13

*Chao v. Linder*,
  421 F. Supp. 2d 1129 (N.D. Ill. 2006) .................................................2

*Chicago Bears Football Club, Inc. v. 12th Man/Tennessee LLC*,
  83 U.S.P.Q.2d 1073, 2007 WL 683778 (T.T.A.B. 2007) ......................11

*Cohn v. Taco Bell Corp.*,
  92 C 5852, 1995 WL 493453 (N.D. Ill. Aug. 16, 1995)................................14, 15

*Conopco v. Campbell Soup Co.*,
  95 F.3d 187 (2nd Cir. 1996)..................................................................13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003).................................................................. *passim*

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) .................................................................3

*Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*,
  646 F.3d 115 (9th Cir. 2011) .................................................................6

*Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*,
  654 F.3d 958 (9th Cir. 2011) .................................................................6

*Franklin Capital Corp. v. Baker & Tayler Enter., Inc.*,
  99 C 8237, 2000 WL 1222043 (N.D. Ill. Aug. 22, 2000)........................15

*Glen Flora Dental Center v. First Eagle Bank*,
  487 F. Supp. 3d 722 (N.D. Ill. 2020) .............................................14, 15

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) .................................................................3

6023694v18/14615-0143

*H-D USA v. SunFrog LLC*,
   311 F. Supp. 3d 1000 (E.D. Wisc. 2018) ................................................................6

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*,
   883 F.2d 1286 (7th Cir. 1989) ...............................................................................2

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F.3d 813 (7th Cir. 1999) ...........................................................................12, 13

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
   821 F.3d 935 (7th Cir. 2016) ...............................................................................14

*Janssen v. BRI Holding, LLC*,
   16-cv-10098, 2017 WL 2080424 (N.D. Ill. May 15, 2017) (Blakey, J.) ...................1

*Jay Franco & Sons, Inc. v. Franek*,
   615 F.3d 855 (7th Cir. 2010) .............................................................................8, 10

*LLTB LLC v. Redbubble, Inc.*,
   840 Fed. Appx. 148 (9th Cir. 2021) ........................................................................9

*Ohio State University v. Skreened Ltd.*,
   16 F. Supp. 3d 905 (S.D. Ohio 2014) ...................................................................11

*Phoenix Entm't Partners v. Rumsey*,
   829 F.3d 817 (7th Cir. 2016) .............................................................................3, 5

*Piper Aircraft Corp. v. Wag-Aero, Inc.*,
   741 F.2d 925 (7th Cir. 1984) ...............................................................................14

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
   514 U.S. 159 (1995) ..............................................................................................9

*Sarkis' Café, Inc. v. Sarks in the Park, LLC*,
   55 F. Supp. 3d 1034 (N.D. Ill. 2014) .....................................................................2

*Savannah College of Art and Design, Inc. v. Sportswear, Inc.*,
   983 F.3d 1273 (11th Cir. 2020) ...........................................................................11

*Schiappa v. CharityUSA.com LLC*,
   16-cv-81617, 2017 WL 2210274 (S.D. Fla. May 18, 2017) ....................................9

*Seneca Ins. Co. v. Celli Trucking Co.*,
   19-cv-08241, 2020 WL 7241064 (N.D. Ill. Dec. 9, 2020) .......................................2

*Texas Tech University v. Spiegelberg*,
   461 F. Supp. 2d 510 (N.D. Tex. 2006) .................................................................11

*Univ. of Kansas v. Sinks*,
    644 F. Supp. 2d 1287 (D. Kan. 2008), amended in part (July 28, 2009)................................11

*University of Alabama Bd. of Trustees v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) ........................................................................................2, 3

*Warner Bros. Entm't, Inc. v. X One X Prods.*,
    840 F.3d 971 (8th Cir. 2016) ..........................................................................................4, 6, 7

**Statutes**

Lanham Act § 43(a), 15 U.S.C. § 1125(a) ........................................................................................4

**Other Authorities**

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*, § 7:82
    (5th Ed. 2022) ..................................................................................................................9

*McCarthy on Trademarks and Unfair Competition*, §27:78 (5th Ed. June 2021) ..........................4

Rule 12(b)(6).......................................................................................................................................2

Rule 12(f) ..........................................................................................................................................10

iv

## I.        INTRODUCTION

Vintage Brand was required to plead sufficient *facts* – not bald assertions, not conclusions masquerading as facts, not threadbare recitals of the elements – to allow the court to draw the reasonable inference that each of its defenses applies. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 556 (2007)). The relevant facts are admitted. Vintage Brand (i) takes designs it did not create and which include or consist entirely of University Marks, (ii) applies them to shirts and other products; and (iii) sells them via an e-commerce website.  Dkt. 52, Answer at ¶¶ 30-36. And Vintage Brand's products look strikingly similar to authorized products sold by the University's licensees.

 

Authorized T-Shirt Dkt. 52, ¶ 21          Vintage Brand T-Shirt Dkt. 52, ¶ 35

Vintage Brand's affirmative defenses merely cloak these facts in flowery language tailored to fit each defense.  But self-serving, conclusory descriptions cannot substitute for factual allegations.  None of the challenged affirmative defenses meet the facial plausibility standard.

## II.       LEGAL STANDARD

Affirmative defenses that do not meet the "'plausibility' pleading standard" set forth in *Twombly* and *Iqbal* should be stricken. *See e.g. Janssen v. BRI Holding, LLC*, 16-cv-10098, 2017 WL 2080424, at *4 (N.D. Ill. May 15, 2017) (Blakey, J.). Vintage Brand attempts to skirt the plausibility requirement by suggesting a weaker pleading standard, citing multiple pre-*Iqbal* and *Twombly* cases. Dkt. 58 at 1-2.  But courts in the Seventh Circuit have long had authority to "strike affirmative defenses that are conclusory, vague, and unsupported" or which add "unnecessary

clutter" to the case. *See Seneca Ins. Co. v. Celli Trucking Co.*, 19-cv-08241, 2020 WL 7241064, at *1 (N.D. Ill. Dec. 9, 2020) (citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

Vintage Brand suggests that a court should never take up a question of law in addressing a motion to strike. Dkt. 58 at 1-2. That cannot be right. An affirmative defense "must withstand a Rule 12(b)(6) challenge" to defeat a motion to strike. *See e.g., Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014). Further, district courts will strike insufficient pleadings "where the parties disagree only on the legal implications to be drawn from uncontroverted facts, or where questions of law are involved." *Chao v. Linder*, 421 F. Supp. 2d 1129, 1137 (N.D. Ill. 2006) (granting in part motion to strike).

## III.   ARGUMENT

### A.   <u>Certain of Vintage Brand's Defenses Should be Stricken Because they Lack Legal and Factual Support</u>

#### 1.   **Vintage Brand's First Amendment Affirmative Defense Should Be Stricken (Tenth Affirmative Defense)**

Vintage Brand fails to plead facts sufficient to make a First Amendment defense plausible. First, the pleading itself confirms that Vintage Brand's infringement is not protected by the First Amendment. Where *Rogers* relates to the use of a trademark in the title of a film, Vintage Brand is alleged to sell apparel and other memorabilia displaying the University's trademarks. In fact, Vintage Brand admits the allegations relating to the www.vintagebrand.com e-commerce website, which offers t-shirts and other items bearing the University's marks for sale. *See e.g.* Dkt. 52 at ¶¶ 34-35. What Vintage Brand attempts to pass off as "art" is merely slavish copying of University trademarks (and other pre-existing works that contain University trademarks) onto apparel and other merchandise. *Id.* at 43 ("applying historic works of art … to various products").

As such, Vintage Brand's reliance on *University of Alabama Bd. of Trustees v. New Life*

*Art, Inc.* is misplaced because that case involved original paintings—typical "embodiments of artistic expression." 683 F.3d 1266, 1279-80 (11th Cir. 2012). Other cases Vintage Brand relies on do not address the sale of products bearing slavish copies of trademarks.[1]

In addition, Vintage Brand fails to plead facts supporting its other conclusion based on the second prong of the *Rogers* test, that its merchandise is not "explicitly misleading." A proponent of a defense is required to provide more than bare recitations of the legal elements comprising the defense. Vintage Brand's conclusory and unsupported conclusion cannot stand, particularly given that Vintage Brand admits to selling shirts that look exceedingly similar to those of University licensees. *See supra,* Page 1 (images of authorized and unauthorized designs); *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018) ("In some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself."); *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) ("[W]here the defendant's expressive work consist[s] of the mark and not much else," it, by itself, may be "explicitly misleading.") (citations omitted).

### 2. Vintage Brand's Public Domain Defense Should be Stricken (Ninth Affirmative Defenses)

Vintage Brand's opposition does not cite *any* case or authority that finds "decorative use of public domain creative works" to be an affirmative defense to trademark infringement. That is because there is no "decorative use of public domain creative works" defense. Vintage Brand's pleading is "premised" on a flawed reading of the U.S. Supreme Court's decision *Dastar*, a misrepresentation of the Seventh Circuit's opinion in *Phoenix Entm't*, and a misunderstanding or

---

[1] The Court need not delve into a metaphysical debate about "what is, and what is not, art" to resolve this dispute. Vintage Brand's apparel and merchandise display designs that are admittedly copied from other sources, including designs substantially indistinguishable from the University's trademarks in a manner nearly identical to the University's authorized licensees. *See supra,* Page 1 (images of authorized and unauthorized designs).

misrepresentation of the role affirmative defenses play in litigation. At most, Vintage Brand's claim that its merchandise reprints images from items in the public domain is relevant to likelihood of confusion, an element of the *prima facie* case for trademark infringement. But the facts as pled do not give rise to an affirmative defense.

### a. *Dastar* Does Not Establish an Affirmative Defense to Trademark Infringement

The Supreme Court's decision in *Dastar* stands for the principle that the Lanham Act, which governs trademark law, should not be applied to claims traditionally occupied by copyright law. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). This issue is narrowly framed at the outset of the opinion: "In this case, we are asked to decide whether § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prevents the ***unaccredited copying*** of a work." *Id.* at 25 (emphasis added). It does not. "The right to copy, and to copy without attribution, once a copyright has expired" is governed by the law of copyright. *Id.* at 33.

As set forth in the University's Motion, the Supreme Court's opinion in *Dastar* "did not create or recognize a 'federal right to reproduce, make minor enhancements to, and print and distribute public domain artwork or decoration on merchandise.'" Dkt 55 at 8 (quoting Dkt. 52 at 43). Instead, *Dastar* makes clear that the Lanham Act cannot be used to make "disguised copyright claim[s]." *See Warner Bros. Entm't, Inc. v. X One X Prods.*, 840 F.3d 971, 980 (8th Cir. 2016). The University's claim is not for wrongful attribution of a work or any other backdoor copyright case, but is a traditional case of trademark infringement. Vintage Brand is alleged to sell apparel and merchandise bearing University marks in a manner likely to cause confusion. *See McCarthy on Trademarks and Unfair Competition*, §27:78 (5th Ed. June 2021) ("[I]t is clear that *Dastar* does not impact traditional claims of trademark and trade dress infringement.").

Vintage Brand's arguments attempt to turn *Dastar* on its head. Contrary to Vintage Brand's

6023694v18/14615-0143

assertion, *Dastar* does not analyze a Lanham Act claim as pertaining to Fox's registered marks. The only Lanham Act issue *Dastar* addresses is Fox's reverse passing off claim based on misattribution of authorship of the copied television series. *Dastar*, 539 U.S. at 27, 31-35. Vintage Brand takes out of context and reproduces (in block) a statement concerning copyright and patent expiration. Dkt. 58 at 5. The Supreme Court discussed expired copyrights and patents to **distinguish** them from the area of trademark law. The effect was not to "give primacy to the public domain" and establish a public-domain-based affirmative defense, but to "caution against **the misuse or over-extension of trademark**" rights into areas governed by copyright law.

        b.       **Phoenix Entm't Confirms that a Public Domain Affirmative Defense Does Not Exist**

Vintage Brand's reliance on *Phoenix Entm't* is misplaced. That case, like *Dastar* itself, involved an attempt to apply the Lanham Act to facts giving rise to a copyright claim, namely the unauthorized reproduction of sound recordings and video. *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 824 (7th Cir. 2016). The Lanham Act claims failed in that case because plaintiff did not "plausibly allege[] *consumer confusion as to the source of any tangible good* sold in the marketplace." *Id.* at 819 (emphasis added); *see also id.* at 830. Contrary to Vintage Brand's assertion, *Phoenix Entm't* did not "affirm" *Dastar*'s "emphasis on the public domain." Dkt. 58 at 6-7. To the contrary, *Phoenix Entm't* confirms that, for a Lanham Act claim to lie, there must be consumer confusion as to the source or sponsorship of the goods sold in the marketplace. *Id.* at 829. The decision contains an extensive discussion of cases that distinguish between permissible, incidental trademark use and use that gives rise to confusion as to source, sponsorship or approval. *Id.* at 829-30. This distinction is critical here, as Vintage Brand's novel affirmative defense would

5

bar relief even upon a finding of likelihood of confusion.[2]

**c.**      **Vintage Brand's "Decorative Use" Arguments Relate to Likelihood of Confusion, Not an Affirmative Defense**

The opposition's final section makes clear that Vintage Brand is not advocating for a bright line rule against infringement through reproduction of public domain images, but clarifies that its asserted defense is "appropriately limited to decorative use of public domain creative works." *See* Dkt. 58 at 8. But in explaining why such limitation is relevant, Vintage Brand confirms that its public domain arguments relate to the *prima facie* element of likelihood of confusion, not an affirmative defense.

For example, Vintage Brand argues that "in circumstances where text or design is used as decoration, 'confusion is highly unlikely.'" Dkt. 58 at 8. But this public domain defense would bar relief even if confusion was found to be likely. Moreover, the case upon which Vintage Brand relies rejects the proposition that a defendant's use of a mark as "ornamental use" serves as a "Get Out of Jail Free" card or an affirmative defense. *H-D USA v. SunFrog LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wisc. 2018). Instead, the case confirms that whether a defendant's use was trademark use or ornamental use is only an "***aspect of the likelihood of confusion requirement for infringement***." *Id.* (emphasis added).

Vintage Brand uses this same "ornamental use" argument in an attempt to distinguish the Eighth Circuit's decision in *Warner Bros. v. X One X Prods*, 840 F.3d 971, 980 (8th Cir. 2016). As set forth in the Motion, the *Warner Bros.* decision found that *Dastar* did not apply to trademark infringement allegations where the infringing products "employ[ed] iconic film characters' picture

---

[2] The Court should disregard Vintage Brand's citation to discussion of *Dastar* in the ***withdrawn and superseded opinion*** in *Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*, 646 F.3d 115 (9th Cir. 2011). The subsequent opinion does not discuss *Dastar* at all, but is instead focused on the Ninth Circuit's unique "defensive aesthetic functionality" doctrine. *See generally Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958 (9th Cir. 2011).

6

to associate the products with Warner's films, not to copy the film itself." *See* Dkt. 55 at 9 (citing 840 F.3d at 980). Vintage Brand's argument – that it "is reprinting public domain art in a decorative manner for the sake of recreating historic art itself" –does not invoke *Dastar*, which is about the *nature of the alleged confusion*. Regardless of how Vintage Brand seeks to characterize its mission, the University's traditional trademark infringement case is not barred by *Dastar*. Dkt. 55 at 8 (collecting cases).

### 3. Vintage Brand's Aesthetic Functionality Defense Should Be Stricken (Third Affirmative Defense)

Vintage Brand's two-sentence affirmative defense actually raises two distinct defenses purportedly based on the doctrine of aesthetic functionality. First, Vintage Brand attempts to assert what is referred to as "offensive" aesthetic functionality by alleging that the *University's marks are unprotectable* because consumers are motivated to purchase licensed goods because of their aesthetic appeal. However, the facts alleged are insufficient to render plausible a defense of "offensive" aesthetic functionality.

Second, the opposition asserts that *Vintage Brand's use* of the University marks in connection with *Vintage Brand*'s products is functional and therefore non-infringing, even assuming the marks are valid and the use is likely to cause confusion. This argument is referred to as "defensive" aesthetic functionality and has not been recognized in the Seventh Circuit. Moreover, even assuming that "defensive" aesthetic functionality is valid, Vintage Brand has failed to allege facts sufficient to make it plausible. On virtually identical facts, the Fifth Circuit found in *Smack Apparel* that "defensive" aesthetic functionality does not apply to the sale of collegiate-branded apparel.

### a. Vintage Brand Has Not Pleaded the Defense of Standard Aesthetic Functionality

In the Seventh Circuit, a standard aesthetic functionality defense is "offensive," in that it considers whether concerns of aesthetic functionality render trade dress to be unprotectable. If

exclusive use of a design element of product configuration or packaging "would put competitors at a significant non-reputation-related disadvantage," then the element is not protectable. *See Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 419 (7th Cir. 2017).

Vintage Brand fails to plead facts sufficient to render the defense plausible. First, the University is unaware of any Seventh Circuit case applying aesthetic functionality outside of the context of trade dress, which is not applicable here. Second, Vintage Brand's pleading does not identify which asserted marks it contends are invalid. Third, the allegation that consumers are motivated to purchase licensed goods "because of their aesthetic appeal" does not, itself, raise a factual issue regarding the marks' protectability. "[T]rademark law would be a cruel joke if it limited companies to tepid or repugnant brands that discourage customers from buying the marked wares." *See Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 860 (7th Cir. 2010). To plead aesthetic functionality, Vintage Brand would have to identify specific element(s) of the marks that are so aesthetically pleasing as to be unprotectable or that effectively monopolize "basic element[s] of design (shape, material, color, and so forth)." *Id.* Such allegations are absent.[3]

### b. Defensive Aesthetic Functionality is Not Cognizable as an Affirmative Defense in the Seventh Circuit

Vintage Brand has not meaningfully addressed the University's argument that "defensive" aesthetic functionality is not cognizable in the Seventh Circuit. *See* Dkt. 55 at 4-6. Instead, the opposition rests on misstatements regarding the application of the doctrine, citations to inapposite case law, and flawed policy arguments in lieu of any authority.

Vintage Brand argues that "defensive aesthetic functionality has been ***routinely applied*** by

---

[3] The Court should not allow Vintage Brand to amend its pleading with respect to aesthetic functionality. Aesthetic functionality was addressed in detail in the University's first motion to strike. Dkt. 49 at 6-7. Vintage Brand chose to amend its pleading without providing sufficient clarity or facts. Further amendment would be futile given the facts of this case.

*myriad* courts…" Dkt. 58 at 10 (emphasis added).  In support of this misrepresentation, Vintage Brand cites a recent, unpublished Ninth Circuit opinion (the only circuit that applies the doctrine),[4] four cases from the 1980s, and *Schiappa v. CharityUSA.com LLC*: a reasonably recent, but inapposite case.  *Schiappa* does not apply defensive aesthetic functionality as an affirmative defense—it "incorporat[es] defensive aesthetic into the likelihood-of-confusion analysis." Dkt. 58 at 11 (citing *Schiappa v. CharityUSA.com LLC*, 16-cv-81617, 2017 WL 2210274, at * 7 (S.D. Fla. May 18, 2017)).  But treating aesthetic functionality as *relevant to one factor* of the likelihood of confusion test is not at all the same as recognizing it as an affirmative defense which assumes all elements of a claim are met. *See* J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*, § 7:82 (5th Ed. 2022) (explaining that an affirmative defense of defensive functionality is the "wrong approach" and that the right approach is to determine whether there is a likelihood of confusion).

In addition, Vintage Brand's policy discussion misses the mark.  The assertion that aesthetic functionality "does not implicate concerns regarding consumer confusion as to source" betrays a misunderstanding of the role affirmative defenses play in litigation. Dkt. 58 at 11. Defensive aesthetic functionality "runs afoul of the dual aims of trademark law" in that it fails to protect against consumer confusion. *See* Dkt. 58 at 11. A defensive aesthetic functionality defense would excuse Vintage Brand's conduct *even though Vintage Brand's use is likely to cause confusion*. *See* Dkt. 55 at 5. Moreover, the policy argument relies on two cases that discuss standard—not defensive—aesthetic functionality. *See* Dkt. 58 at 11 (citing *Qualitex Co. v.*

---

[4] The Ninth Circuit decision in *LTTB* involved a use of a pun "Lettuce Turnip The Beet" in connection with apparel products. Dkt. 58 at 10 (citing *LLTB LLC v. Redbubble, Inc.*, 840 Fed. Appx. 148, 150-151 (9th Cir. 2021). The opinion itself is "is ambiguous and unclear as to whether the court was holding that the plaintiff's mark was invalid as being 'functional' or whether it was valid, but that it was defendant's accused use that was 'functional.'"  J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition*, § 7:82 (5th Ed. 2022).

*Jacobson Prods. Co.*, *Inc.*, 514 U.S. 159 (1995) and *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415 (7th Cir. 2017)). The University's Motion does not contest the policy justification for finding trade dress in circular beach towels, for example, to be unprotectable.  However, neither case would justify a doctrine that excuses use of a valid trademark in a confusing manner.

### c.  Vintage Brand Has Not Plausibly Alleged Defensive Aesthetic Functionality

Even assuming the defense is cognizable, Vintage Brand has not pleaded *facts* that, if assumed to be true, would "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  Contrary to Vintage Brand's assertions, the University is not attempting to "litigate the merits" of its defense, but merely addressing the absence of factual support for it.  For example, Vintage Brand alleges that "preclusion of Defendant's ornamental application of the text and designs described in the Complaint to merchandise would ***put Defendant at a significant non-reputation-related disadvantage***."  Dkt. 52 at 42 (emphasis added).  This is not an allegation of fact but the type of "bald assertion[]" or "threadbare recital[] of the elements" that is insufficient under *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).[5]

Moreover, Vintage Brand has not given the Court any reason to depart from the Fifth Circuit's decision in *Smack Apparel*, which soundly rejected application of defensive aesthetic functionality "on virtually identical facts" to this case. *See* Dkt. 55 at 6.  *Smack Apparel* characterized the defendant's alleged "significant non-reputation-related disadvantage" as being precluded from selling "game day apparel [that] relates solely to an ***inability to take advantage of***

---

[5] Vintage Brand argues that challenging its bare-bones defense is improper under Rule 12(f) because "functionality is a factual question." Dkt. 58 at 12 (citing *Arlington Specialties*, 847 F.3d at 419–20).  But Vintage Brand conveniently omits the full quote which states that functionality "can often be decided as a matter of law, as in this case." *Id*. (citing *Jay Franco & Sons*, 615 F.3d at 856–57).

*the Universities' reputation* and the public's desired association with the Universities that its shirts create." *Smack Apparel Co.*, 550 F.3d at 488 (emphasis added).

Notably, the opposition does not attempt to distinguish *Smack Apparel* on the facts or identify a different "significant non-reputation-related disadvantage" for this Court to consider. *See* Dkt. 56 at 12-13. Moreover, Vintage Brand's attempt at discrediting *Smack Apparel* depends on unsupported hyperbole. The opposition argues that *Smack Apparel* has been "widely criticized" but cites no evidence of such criticism. Similarly, the argument that "[n]umerous other authorities expressly or implicitly reject the *Smack Apparel* holding" is belied by the fact that this statement is only supported by citations to authorities that pre-date the *Smack Apparel* decision.

Vintage Brand's own attempt to explain the alleged flaw in *Smack Apparel*'s analysis concedes that its complained-of disadvantage is, in fact, reputation-related:

> [The *Smack Apparel* case] applies *a fundamentally overbroad view of what type of 'reputation' is relevant to this inquiry*. It reasoned that the public's mere 'association' of the alleged marks with the plaintiff is the type of reputation-related advantage to which the trademark owner is exclusively entitled.

Dk.t 58 at 12. But in criticizing *Smack Apparel* for crediting the "wrong type" of reputation, Vintage Brand provides neither facts nor argument suggesting that it, in this case, is complaining of the "right type" of reputation-related disadvantage. At most, Vintage Brand cites cases that express skepticism that consumers 30 to 40 years ago would believe that a product containing a university logo would be sponsored by that university.[6] But, even if true, this presumed consumer perception only weighs against a likelihood of confusion, not the assertion that the inability to use

---

[6] In addition to *Smack Apparel*, modern cases from the 21st Century disagree emphatically with Defendant's cited cases. *See, e.g., Savannah College of Art and Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1287 (11th Cir. 2020); *Ohio State University v. Skreened Ltd.*, 16 F. Supp. 3d 905, 917 (S.D. Ohio 2014); *Texas Tech University v. Spiegelberg*, 461 F. Supp. 2d 510, 520, (N.D. Tex. 2006); *Chicago Bears Football Club, Inc. v. 12th Man/Tennessee LLC*, 83 U.S.P.Q.2d 1073, 2007 WL 683778 (T.T.A.B. 2007); *Univ. of Kansas v. Sinks*, 644 F. Supp. 2d 1287, 1305 (D. Kan. 2008), amended in part (July 28, 2009).

11

University marks puts Vintage Brand at a "significant, non-reputation-related disadvantage."

### B. Certain of Vintage Brand's Run-of-the-Mill Defenses Lack Factual Support and Fail Under *Iqbal/Twombly*

In its opposition brief, Vintage Brand doubles down on its steadfast refusal to provide *any* factual support for its laches, acquiescence and failure to mitigate defenses. But where, as in this Court, the pleading standards of *Twombly* and *Iqbal* apply to affirmative defenses, Vintage Brand cannot be permitted to gloss over factual support for the elements of each defense.

### 1. Vintage Brand's Laches Affirmative Defense Should Be Stricken (First Affirmative Defense)

Vintage Brand's opposition brief merely underscores the failure to allege facts supporting the elements of inexcusable delay and prejudice necessary to plead laches. First, Vintage Brand's assertion that the University knew of Vintage Brand's counterfeiting "for an unreasonable period of time" or a "number of years" are not well-pled factual allegations but "bald assertions" or "threadbare recitals of the elements" that are insufficient to state a defense. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (emphasis added).[7]

Second, the opposition brief confirms that the sole factual basis for its claim that Vintage Brand has been prejudiced is that "it has conducted such open and transparent business for a number of years prior" to the University filing suit. Dkt. 58 at 14. In other words, Vintage Brand's claims prejudice only in that it has been able to profit from unchecked sales of counterfeit products for an unstated period of time. This is unjust enrichment, not prejudice. For the purpose of laches, "**prejudice … ensues when a defendant has changed his position** in a way that would not have occurred if the plaintiff had not delayed." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824

---

[7] Vintage Brand's reticence to disclose its first date of sale of apparel and merchandise utilizing University Marks suggests strongly that Vintage Brand's first use was recent. But, to be clear, the University's motion rests on Vintage Brand's failure to plead facts which make its laches defense plausible and is not seeking an advisory opinion on unpled facts.

(7th Cir. 1999) (citing *Conopco v. Campbell Soup Co.*, 95 F.3d 187, 192 (2nd Cir. 1996)).

Vintage Brand's quotation of the *Hot Wax* decision is unavailing. In *Hot Wax*, the Seventh Circuit found that the prejudice element was met where the defendant had made substantial investments in product development and advertising during a decades-long period of delay.

> Hot Wax permitted Turtle Wax's ***advertising and development of its products*** to go unchecked for well over a ten- to twenty-year period of delay. During this time, Hox Wax sat idly by and chose not to challenge Turtle Wax's use of the term "wax" with respect to its products, and ***Turtle Wax invested significant amounts of time and money in product development and advertising.***

*Hot Wax*, 191 F. 3d at 824 (emphasis added). In contrast, the pleading lacks any factual allegations of a prejudicial change in position.

### 2. Vintage Brand's Acquiescence Affirmative Defense Should Be Stricken (Second Affirmative Defense)

Vintage Brand's single-paragraph opposition utterly fails to support its acquiescence defense. First, Vintage Brand's acquiescence claim relies entirely on facts, set forth in Vintage Brand's counterclaim for abandonment, relating to 2007 statements made by the University to the public regarding the character Chief Illiniwek and the use of Native American Imagery. But these statements (i) were not directed to Vintage Brand, (ii) do not relate to Vintage Brand's use of the University Marks, and (iii) predate Vintage Brand's business operations by well over a decade. Regardless of whether any statements made by the University give rise to an abandonment defense, they are insufficient to make a laches by acquiescence defense plausible.

As the University set forth in its Motion, acquiescence is a personal defense, requiring words or conduct specifically directed to the defendant, rather to the world at large. *See* Dkt. 55 at 13-14 (citing *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 513-14 (N.D. Ill. 2011) (stating that "[a]ctive consent [for acquiescence purposes] is implied by conduct on the part of plaintiff's part that amounts ***to an assurance to the defendant***, express or implied, that the

13

plaintiff would not assert his trademark rights *against the defendant.*") (emphasis added)). Neither Vintage Brand's pleadings nor its opposition points to any statement by the University *to Vintage Brand* that would "convey the trademark owner's *implied consent to the junior user's use* of his marks." *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (emphasis added). And Vintage Brand cites no authority which would find acquiescence based upon statements to the public-at-large not directed to the junior user's use.

Further, Vintage Brand is wrong when it argues that "it is a question of fact whether the University's 'conduct expressly or impliedly assured [Vintage Brand] that [the University] would not assert its trademark rights.'" Dkt. 58 at 14-15. Vintage Brand has the burden of alleging *facts*, which taken as true, make plausible the conclusory allegation that the University "assured Vintage Brand that the University would not assert its trademark rights." Vintage Brand has not even pled that it was actually aware of any of the University's statements at the time Vintage Brand began selling products bearing University marks, much less that Vintage Brand acted in reliance on any specific statements.[8] *See Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 934 (7th Cir. 1984) ("The doctrine of acquiescence is based on notions of reliance of the purported infringer.").

### 3. Vintage Brand's Failure to Mitigate Damages Affirmative Defense Should Be Stricken (Seventh Affirmative Defense)

The party pleading mitigation must "provide enough facts to put Plaintiffs on notice of the course which Defendant contends Plaintiffs were legally required, but failed, to pursue." *See* Dkt. 55 at 15 (quoting *Cohn v. Taco Bell Corp.*, 92 C 5852, 1995 WL 493453, at *2 (N.D. Ill. Aug. 16, 1995)). Neither Vintage Brand's pleading nor its opposition even suggest a course of action.

Vintage Brand's opposition relies solely on this Court's decision in *Glen Flora Dental*

---

[8] As noted in the Motion, Vintage Brand's failure to plead that it relied on any specific University statement suggests that acquiescence is an *ex post facto* justification. *See* Dkt. 55 at n.4.

*Center v. First Eagle Bank*, 487 F. Supp. 3d 722 (N.D. Ill. 2020), a case which involved very different facts than the present case. In *Glenn Flora Dental*, a number of dental practices alleged that their former managers conspired, with each other and a bank, to defraud the practice out of millions of dollars. *Id.* at 729-730. Plaintiffs moved to strike the "failure to mitigate" defense on two grounds, neither of which are present in this case.

Vintage Brand quotes *Glen Flora Dental* out of context to argue that "[C]ourts 'typically permit a conclusory failure to mitigate damages affirmative defense' because defendants only learn of facts relating to plaintiffs' mitigation efforts over the course of discovery." *See* Dkt. 58 at 15 (citations omitted). But the Court's statement is in support of its finding that defendants sufficiently plead "knowledge giving rise to the duty to mitigate by alleging that Plaintiffs possessed access to their accounts and knew of repeated and consistent irregularities occurring within those accounts." *Glen Flora Dental*, 487 F. Supp. at 737. The rationale does not extend to the case at bar, where the pleading deficiency is not a lack of detail regarding what the University knew or did but instead the ***failure to plead the course of conduct that the University should have taken*** to stop Vintage Brand's counterfeiting. *See Cohn*, 1995 WL 493453, at *2.

To be sure, courts have permitted a certain lack of precision in pleading failure to mitigate, given that the facts regarding what the plaintiff did or did not do are often unveiled in discovery. But this leniency does not extend to an utter failure to plead facts sufficient to put the plaintiff on notice of the basis of the defense. *See Franklin Capital Corp. v. Baker & Tayler Enter., Inc.*, 99 C 8237, 2000 WL 1222043, * 5 (N.D. Ill. Aug. 22, 2000) (striking failure to mitigate defense).

## IV. <u>CONCLUSION</u>

Despite having a second bite at the apple, Vintage Brand has failed to plausibly plead entitlement to its Affirmative Defense Nos. 1–3, 7, and 9–10. For the foregoing reasons, the University requests that the Court strike these affirmative defenses with prejudice.

Dated: July 15, 2022

Respectfully submitted,

THE BOARD OF TRUSTEES FOR THE
UNIVERSITY OF ILLINOIS

By: */s/ Jeffrey J. Catalano*           .
    One of Its Attorneys

Jeffrey J. Catalano
Andrew L. Goldstein
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312.360.6000

Sarah A. Gottlieb
Freeborn & Peters LLP
201 North Franklin Street
Suite 3500
Tampa, FL 33602
813.488.2920

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, 2022, that the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification to all ECF registrants that are counsel of record for this matter.

By: */s/ Jeffrey J. Catalano*

17

6023694v18/14615-0143