IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,<br><br>Plaintiff / Counterclaim-Defendant,<br><br>v.<br><br>VINTAGE BRAND, LLC,<br><br>Defendant / Counterclaim-Plaintiff. | Case No. 1:21-cv-06546<br><br>The Honorable John R. Blakey |

**DEFENDANT VINTAGE BRAND, LLC'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Vintage Brand, LLC ("Vintage Brand") hereby submits the following Statement of Undisputed Material Facts pursuant to Northern District of Illinois Rule 56.1(a) in support of its Motion for Partial Summary Judgment on abandonment of the University of Illinois' "Chief" Logo.

**NCAA Pressure on the University**

1. Beginning in 2005, the National Collegiate Athletic Association ("NCAA") adopted a policy "prohibit[ing] NCAA colleges and universities from displaying hostile and abusive racial/ethnic/national origin mascots, nicknames or imagery" at the NCAA championships. (Appx. Ex. 1 at 2.)

2. The NCAA identified the University as one of 18 universities displaying prohibited Native American imagery. (*Id.* at 3.)

3. The University appealed the NCAA's decision, and the NCAA denied the appeal, thereby preventing the University from "host[ing] NCAA championship events." (Appx. Ex. 2 at 2.)

4. The University's men's tennis team was consequently prohibited from hosting the first round of the 2006 NCAA championships. (Appx. Ex. 3 at 2–4.)

**The University's Public Retirement of Chief Illiniwek**

5. In a meeting on March 13, 2007, the University approved the following resolution regarding "conclu[ding]" the "use of" the Chief Illiniwek design:

> *Therefore, Be It Resolved*:
> . . . .
> That the Board hereby directs the immediate conclusion to the use of Native American imagery as the symbol of the University of Illinois and its intercollegiate athletics along with the related regalia, logo, and the names "Chief Illiniwek" and "Chief," and the Board hereby directs the *Chancellor of the* Urbana-Champaign campus to manage *the* final disposition of these matters *and report the decisions back to the Board and* in so doing to remain in compliance with the NCAA policy.

(Appx. Ex. 4 at 8 (emphasis in original).)

6. In an announcement issued by the University and its licensee the Collegiate Licensing Company ("CLC") following this directive, on March 30, 2007, the school provided the following to "All University of Illinois at Urbana-Champaign Licensees":

1

> The Board of Trustees of the University of Illinois at Urbana-Champaign has recently made a decision to . . . eliminate or impose strict limitations on the use of Native American imagery as the symbol for the University of Illinois.
>
> Pursuant to the restricted program, CLC and the University will put retailers on notice that they may not order any additional merchandise featuring the Chief logo, or products featuring the terms "Chief" or "Chief Illiniwek" after Monday, April 16, 2007. Licensees are permitted to book orders for this merchandise up until April 16, 2007 at which point the 60-day merchandise depletion clause will begin in your CLC license agreement for the University.
>
> . . . . **Please note that no wholesale merchandise will be approved for sale or distribution beyond December 31, 2007, regardless of when it was ordered.**
>
> . . . .
>
> The University plans to maintain its trademark ownership rights in the Chief logo to support the logo's heritage in the University's history, and reserves the right to take necessary and appropriate action to accomplish this. Further, the University will continue to vigorously enforce against unauthorized use of the Chief logo or terms 'Chief Illiniwek' or 'Chief' now and in the future.

(Appx. Ex. 5 (ILL_VNTG_0012074).)

7. The University's discontinuation of Chief Illiniwek as a symbol and its cessation of use of any related imagery, including the Chief Illiniwek design, was and is well-recognized by the public. (Appx. Ex. 6 at 2 (reporting on the resolution and stating "It's official: Chief Illiniwek, the symbol of the athletic teams at the Urbana campus since 1926, will be retired").)

8. Documented statements by University officials publicized the University's intent to permanently discontinue use of the Chief Illiniwek design:

   a. Appx. Ex. 7 at 2–3 (citing an announcement regarding the retirement of the Chief Illiniwek design by the then-chair of the University's Board of Trustees, Lawrence C. Eppley);

   b. Appx. Ex. 8 at 3–4 ("Eppley's announcement of the decision to retire the symbol immediately made the UI eligible to host postseason events, but its continued removal from the sanction list would be provisional upon its *not using the name*

2

   *Chief Illiniwek and the related Native American imagery*, the NCAA said in a Feb. 15 letter." (emphasis added));

  c. Appx. Ex. 9 at 2 (quoting the University's then-Chancellor Phyllis Wise: "The symbol of Chief Illiniwek has been part of our past . . . but it is not coming back");

  d. Appx. Ex. 10 at 2 (quoting the University Chancellor Robert Jones: "We're saying very clearly that Chief Illiniwek is not coming back");

  e. Appx. Ex. 11 at 3 (quoting University spokesman Tom Hardy: "There's a recognition by trustees that the Chief tradition has ended; we're not going back there");

  f. Appx. Ex. 12 at 9 (University Chancellor Robert Jones' statements: "I've been working five years of my life to try and move us beyond the 89-year legacy of Chief Illiniwek"; and "I can tell you Native imagery and the way it's been perpetuated at this university is antithetical to our goals, our visions and what we think is fundamentally right");

  g. Appx. Ex. 13 at 5 (Chancellor Jones statement: "We've been very, very clear that those kinds of images [e.g., Chief Illiniwek] are not part of this university," and "it's time for us to move on from this[.]").

9. The University publicly announced a Commission on Native Imagery with the goal of "healing" and "establishing new traditions," which convened in 2018. (Appx. Ex. 13 at 4; Appx. Ex. 14 at 1–2.).

10. The current "brand identity" of the University does not include the Chief Logo. (Appx. Ex. 15 (ILL-VNTG_0000360–87) (brand identity guidelines not referencing the Chief

3

Logo).)

11. The University's current "primary identity" is the orange "'I' Logo" and "secondary identity" is the "Victory Badge." (*Id.*)

### Vintage Brand Website Disclaimers Regarding the University

12. Vintage Brand operates an online retail store through which it offers customers apparel, wall art, coasters, and other blank merchandise that can be customized with historic artistic images reproduced from vintage sports memorabilia. (Declaration of Chad Hartvigson ¶ 2.)

13. Vintage Brand acquired historic, public domain University memorabilia from collectors, including decals, matchbooks and buttons, and offered digitalized images drawn from those objects for decorative printing on apparel and other goods. (*Id.* ¶ 3.)

14. On Vintage Brand website pages where the Chief Logo appears, Vintage Brand provides the following background:

> Chief Illiniwek was the symbol of the University of Illinois, from October 30, 1926 to February 21, 2007. Chief Illiniwek was portrayed by a student to represent the Illiniwek, the state's namesake, although the regalia worn was from the Sioux. *The University of Illinois retired Chief Illiniwek in 2007*[.]

(Appx. Ex. 16 at VINTAGE_ILLINOIS_000120 (emphasis added).)

15. There are three distinct, prominent disclaimers on Vintage Brand's website regarding Vintage Brand and the University: (1) "Vintage Brand[ ] [is] not affiliated with or sponsored by Illinois Fighting Illini"; (2) "Vintage Brand® and its products are not affiliated with, licensed, sponsored, or endorsed by any college, university, professional team, league, event or licensing entity"; (3) "Our products are not affiliated with, licensed, sponsored, or endorsed by any college, team, league, event or licensing entity." (*Id.* at VINTAGE_ILLINOIS_000120–21.)

4

**University Files Lawsuit Against Vintage Brand**

16. The University initiated this lawsuit on December 7, 2021, bringing claims against Vintage Brand for, among other things, infringement of the Chief Logo. (ECF 1, 25, 35, 65.)

17. Vintage Brand answered the University's complaint and brought counterclaims of its own, including for cancellation of the Chief Logo registration, No. 2,232,024, based on Vintage Brand's sincere belief that the University abandoned this mark in 2007. (ECF 46 at 46, 52 at 46.)

18. The University denied those claims, stating that it only "ceased use of the 'Chief Illiniwek' character at University athletic competitions, where the 'Chief Illiniwek' character' herein refers to a natural person being dressed in a particular type of outfit performing at University athletic competitions." (ECF 56 at 6–7.)

19. The University denied the remaining allegations regarding its abandonment of the use of the Chief Logo as a mark. (*Id.* at 7–8.)

**The University's Trademark Maintenance Program**

20. Since fact discovery has commenced, the University has produced records regarding a licensing program for the Chief Logo that was initiated after the Board's March 13, 2007 resolution. (Declaration of Theresa Wang ¶ 2.)

21. The University and CLC released the following FAQs to the University's "[m]ore than 400" licensees, accompanying a CLC memo issued on March 30, 2007:

> Q: Why are you restricting the production of Chief merchandise?
>
> A: The University of Illinois Board of Trustees issued a directive to discontinue use of "the use of Native American imagery as the symbol of the University of Illinois and its intercollegiate athletics along with related regalia, logo, and the names Chief Illiniwek and Chief."
> . . . .

5

> Q: What will happen to the logo?
>
> A: The campus is evaluating options that allow us to maintain trademark rights to the logo while implementing the Board's directive to "end the use of Native American imagery as the symbol of the University of Illinois." Premature abandonment of trademarks effectively places them in the public domain and removes the control a university has to regulate their use. This has, in some instances, resulted in use of the abandoned marks by third parties who produce and sell products bearing the marks, while leaving the university/owner without legal recourse. Our best course in meeting the Board's directive is to maintain trademark rights to the logo, rather than abandon it.
>
> Q: What's your process for deciding what to do with the logo?
>
> A: We are discussing options with a range of constituents for final disposition of the logo and word marks, as well as Chief symbols and regalia. To protect our trademark rights to the logo and wordmarks, we will work within the confines of trademark law.

(Appx. Ex. 18 (ILL-VNTG_0012073, 0000729–30).)

22. The University and the CLC created a "special licensing program under the College Vault umbrella for the verbiage 'Chief,' 'Chief Illiniwek,' and the Chief Illiniwek logo [to] enable CLC to track Chief Illiniwek royalties separately from Illinois' standard royalties." (Appx. Ex. 17 at ILL-VNTG_0000722.)

23. As of December 10, 2018, there were around eight vendors licensed under this special program, compared to the "[m]ore than 400" licensees referenced in the University and CLC's March 30, 2007 FAQs. (Appx. Ex. 18 at ILL-VNTG_0000730 (referring to the University has having "[m]ore than 400" licensees); Appx. Ex. 19 (ILL-VNTG_0008224) (evidencing that in 2018 there were only around 8 licensed vendors).)

24. As of February 14, 2019, the University had only "a few national licensees" and told a license applicant that the University was "not adding additional vendors," and if the vendor were "mainly just interested in producing Chief merchandise that will not be approved." (Appx. Ex. 20 at ILL-VNTG_0008218.)

6

25. This special licensing program includes "guidelines" for licensees, which includes prohibiting any sales in brick and mortar stores. (Appx. Ex. 17 at ILL-VNTG_0000722 ("Licensees will only be authorized to sell Chief Illiniwek merchandise to retailers to sell through online stores."); *see also* Appx. Ex. 21 (ILL-VNTG_0012077) (stating that "part of the requirement" for participating in the limited licensing program "is that the product must only be sold online."); Appx. Ex. 22 at ILL-VNTG_0012100 (directing licensee's removal of any in-store merchandise displaying the Chief Logo); Appx. Ex. 23 at ILL-VNTG_0012080 (explaining that the program allows licensees "to sell their merchandise online" only)).

26. A University representative shared the following rationale for this prohibition: "by only being online it allows everybody to have access to the merchandise but also restricts the products from being sold in the campus community." (Appx. Ex. 21 (ILL-VNTG_0012077).)

27. A University representative acknowledged that online sales only might be difficult for its licensees to implement, but they noted that the Chief Logo is "just a REALLY sensitive topic with our University, and it's very complex with a lot of history around the Chief Illiniwek logo and Native American imagery." (Appx. Ex. 24 at ILL-VNTG_0012078.)

28. The University rejected an idea proposed by the on-campus bookstore to install a computer kiosk to assist with ordering Chief Logo merchandise online, citing fear of "more drastic negative implications" if the kiosk were allowed. (Appx. Ex. 25 (ILL-VNTG_0012082).)

29. Noting that some people on campus would "prefer that the Chief product isn't promoted at all," the University confirmed that installation of a dedicated computer for these sales would "probably [be] crossing the line." (*Id.*)

30. The University does not license any local companies to print the Chief Logo, and it does not allow students or groups affiliated with the school to display the mark either. (Appx.

7

Ex. 26 (ILL-VNTG_0012095).)

31. The University polices the physical presence of goods bearing the Chief Logo. Appx. Ex. 22 at ILL-VNTG_0012100 (directing licensee's removal of any in-store merchandise displaying the Chief Logo); Appx. Ex. 27 (ILL-VNTG_0012071, 0000653–54) (asking CLC to address a licensee's sale of Chief Logo merchandise in-store and "make sure that this doesn't happen again"); Appx. Ex. 28 at ILL-VNTG_0012096 (asking CLC to address a licensee's sale of Chief Logo merchandise and "remind them that should this happen often, it could be a reason for us to cancel" the license).)

32. The University swiftly responds when there is notice of any physical presence of goods bearing the Chief Logo in any brick and mortar stores. (Appx. Ex. 28 at ILL-VNTG_0012096 (email reflecting follow-up the day after being notified about in-store Chief Logo merchandise).)

33. The University "only issue[s] Chief licenses to groups that hold the retailers accountable for selling Chief merchandise online only." (Appx. Ex. 22 at ILL-VNTG_0012100.)

34. The University considers it a "serious issue" when goods bearing the Chief Logo are sold in-store. (Appx. Ex. 27 at ILL-VNTG_0012071.)

35. Nike, a University licensee, inquired of the University whether it had "answers to why" the University had "moved away" from Chief Illini because as "we continue to move away from Chief Illini, I wanted to make sure all the ts were crossed and Is were dotted." (Appx. Ex. 29 at ILL-VNTG_0012098.)

36. The University responded: "We don't really plan to touch this issue at all. We haven't used the Chief logo since 2007 except for the College Vault licensing program . . ." (*Id.*)

37. The University, in describing to a licensee the purpose of requiring online sales

only, explained that:

> The policy since the beginning [in 2007] was put in place so that it is in compliance with NCAA rules that prohibits universities from associating with Native American imagery with their varsity teams. There's a lot of background and history, but essentially by only being online it allows everybody to have access to the merchandise but also restricts the products from being sold in the campus community. In addition, we really only approve limited product categories[.]

(Appx. Ex. 21 (ILL-VNTG_0012077).)

38. The University prohibits the sale of apparel bearing the Chief Logo on its official online stores such as < Fightingillini.com >. (Appx. Ex. 30 (ILL-VNTG_0000791–92).)

39. The University directed a licensee not to promote a page with "Chief references and gear . . . on the school site [Fightingillini.com]," but stated that "Fanatics.com can sell Chief items." (Appx. Ex. 31 (ILL-VNTG_0012091).)

40. The University directed that "Chief related" products be left off a holiday-themed promotion with one of its licensees. (Appx. Ex. 32 at ILL-VNTG_0012084–85.)

41. A University licensee announced on Facebook: "Chief stuff can be ready in as little as 5 minutes [for pickup after an order is placed]. We just aren't allowed to let you purchase in the store. The inventory is in the store already." (Appx. Ex. 33 (ILL-VNTG_0012083, 0002013–15).)

**Minimal University Sales of Chief Logo Goods**

42. In response to an email from a University community member reporting the sale of Chief Logo merchandise, and his concern that the University "end the use of a racist caricature as a symbol of our institution," the University summarized that the "amount of Chief items produced is actually down":

> Here is some year-to-date information regarding overall Chief merchandise sales as compared to total sales of licensed products. Note that the amount of Chief items produced is actually down slightly from a year ago.

9

> July 2016 – April 2017 3,621 Chief units produced (out of 815,000 total) $7,100 royalties from Chief items out of $1.1 million
> July 2015 – April 2016 3,947 Chief units produced (out of 1,000,000 total) $7,900 royalties from Chief items out of $1.5 million

(Appx. Ex. 34 (ILL-VNTG_0012075–76).)

43. A royalty summary for apparel and items decorated with the Chief Logo show that the total licensing revenue for this mark has historically been between 0.002%–0.6% from 2008–2017, ranging from $39 to $9,300 annually, compared to $1.2–2.1 million for the rest of the University's licensing activities. (Appx. Ex. 35 (ILL-VNTG_0012092–94, 0009174).)

44. In one email to a news outlet, the University reported that from 2009–2012, gross royalties generated on Chief Logo-emblazoned apparel totaled between $1,670–$6,039. (Appx. Ex. 36 at ILL-VNTG_0007062.)

45. In that same email chain, the University reported that from 2009–2012, gross licensing royalties were approximately $1.9 million to $2.1. (*Id.*)

### Lack of Public Awareness Regarding Chief Logo Licensing

46. The University's campus community is generally unaware that it still licenses the mark, and campus community members have criticized the University upon discovering Chief Logo merchandise, as demonstrated by the following examples:

   a. Amanda Teresa Rodriguez emailed the "Native American House" at the University and reported American Eagle's sale of Chief Logo merchandise, which she described in the following way: "Not only is the content discriminatory, I am almost certain that it is not legal." (Appx. Ex. 37 (ILL-VNTG_0000656));

   b. Ms. Rodriguez was a University student. (Appx. Ex. 38 at 54 (reflecting that

10

       Ms. Rodriguez graduated in 2019));[1]

   c. Chad Kahl emailed "Identity Standards" at the University and reported Rivals.com's sale of Chief Logo merchandise, and stated he was "pretty sure that Chief merchandise is no longer allowed." (Appx. Ex. 23 at ILL-VNTG_0012081);

   d. When Mr. Kahl learned about the continued licensing of the Chief Logo, he asked, "How is the Chief Illiniwek College Vault Program not a way to circumvent the retirement of the Chief?" (*Id.* at ILL-VNTG_0012080);

   e. Mr. Kahl is an Associate Dean at the University's Milner Library and a former student of the University. (Appx. Ex. 39 at 2);

   f. University alumnus Jeff Lale emailed "Public Affairs" at the University and reported Fanatics' selling of Chief Logo merchandise, and stated, "From what I understood, the University doesn't allow the use of this trademark on shirts, etc, so I was very surprised / upset to see such a legitimate store selling one." (Appx. Ex. 40 (ILL-VNTG_0012087–88));

   g. A community member provided customer feedback to a University licensee that "[f]or the University of Illinois apparel – we have stopped using the logo of the 'Chief' which you have on many of your products. It has been banned from the NCAA due to its racist and harmful nature . . . . It is a harmful image to many students on *my* campus." (Appx. Ex. 41 at ILL-VNTG_0012090 (emphasis added));

---

[1] The URL where this PDF was obtained is https://commencement.illinois.edu/wp-content/themes/illinois-commencement/assets/documents/commencement-program-2020.pdf. The PDF was downloaded on 10/26/2022.

    h. University employee Lori Davis emailed "licensing" at the University to report that "I ran across these tee shirts . . . thought I'd forward to you since my understanding is that companies can't use the Chief symbol (unless you give permission which I hope you don't!")). (Appx. Ex. 42 (ILL-VNTG_0008311));

    i. University professor Gabriel Solis emailed the Illinois Chancellor to "bring the usage of Chief Illiniwek branding for commercial purposes to your attention," noting that "these images were deemed 'hostile and abusive' by the NCAA, and were retired by the university some time ago." (Appx. Ex. 34 at ILL-VNTG_0012075.)

47. In response to criticism from campus community members (see above), the University refers to the limited nature of the licensing, as demonstrated by the following examples:

    a. The University states that the College Vault licensing program is "for several trademarks that are no longer current representations of our institution, but are part of its history." (Appx. Ex. 23 at ILL-VNTG_0012080);

    b. The University states that the College Vault licensing program is "only open to a limited number of national licensees and merchandise may only be sold online." (Appx. Ex. 40 at ILL-VNTG_0012087);

    c. The University states "the amount of Chief items produced is actually down slightly from a year ago" and compares the Chief item royalty numbers to the much larger total sales of licensed products. (Appx. Ex. 34 at ILL-VNTG_12075.)

//

//

DATED this 8th day of November, 2022.

/s/ *Theresa H. Wang*
Theresa H. Wang (*pro hac vice*)
Joshua D. Harms (*pro hac vice*)
Leslie C. Vander Griend (*pro hac vice*)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Email: theresa.wang@stokeslaw.com
Email: joshua.harms@stokeslaw.com
Email: leslie.vandergriend@stokeslaw.com

Richard D. Boonstra (No. 6185045)
Todd Postma (No. 6339529)
HOOGENDOORN & TALBOT LLP
122 South Michigan Avenue, Suite 1220
Chicago, Illinois 60603
Tel: (312) 786-2250
Email: rboonstra@htlaw.com
Email: tpostma@htlaw.com

*Attorneys for Defendant Vintage Brand, LLC*